**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

USDC-GREENBELT
'22 MAR 21 AM9:28

Edward Siguel, 501 Crooked Creek Dr, Rockville, MD 20850)
Plaintiff,                                                    )

v.                                                           )          **Civil Case No**.

King Farm Citizens Assembly, Inc. ("**KFCA**")    )          ¦PWG 22CV0672
300 Saddle Ridge Cir, Rockville, MD 20850         )
*KFCA attorney* BURGESS, at REES BROOME PC)
7101 WISCONSIN AVE 1201, BETHESDA MD 20814)

Donald B Jackson, 508 Longhorn Crescent, Rockville, MD 20850)

Tracy L. Jackson, 508 Longhorn Crescent, Rockville, MD 20850)

Nancy Paul, 311 Creek Valley Lane, Rockville, MD 20850)

Susan Beckerman, 501 King Farm Blvd, #208, Rockville, MD 20850)

Christopher Leschack, 411 Deer Meadow Dr, Rockville, MD 20850)

Richard Ricciardi, 504 Saddle Ridge Lane, Rockville, MD 20850)

Matthew Roh, 511 Redland Blvd, Rockville, MD 20850)

Karen Sicard, 503 King Farm Blvd #206, Rockville, MD 20850)

Bennett Frank McCarthy Architects, Inc.                    )
2305 Eccleston St, Silver Spring, MD 20902)

Laurence Frank and Brandi Ruff,                            )
Home Address unknown, both work at KFCA            )
Defendants
Montgomery County, county for all parties

## COMPLAINT FOR VIOLATION OF HOUSING and other RIGHTS

NATURE OF THE ACTION. PRELIMINARY STATEMENT for Context.

1. Plaintiff/ aggrieved homeowner ("**Owner**") and the Home Owners' Association (**HOA**) King Farm Citizens Assembly, Inc. ("**KFCA**") disagree about the rights of a disabled Owner to modify his house exterior for full use and/or enjoyment, authorized by **Fair Housing Act and amendments, (FHA)**, v. authority of HOA to create rules restricting the appearance, use and enjoyment of Owner's house, and mandate the Owner spend time and labor to change his home appearance (aesthetics) to benefit **KFCA**, or else be punished. The parties disagree over alleged KFCA rights to enforce arbitrary aesthetics and demand unnecessary maintenance on exterior appearances, v. duty to allow modifications and provide accommodations to exterior appearances to better use and enjoy house. The parties dispute the elements of proof for each legal theory, their rights and obligations. Most of the relevant facts are not in dispute.

2. KFCA refuses Owner's requests for Reasonable Accommodation (**RA**) or Modifications (**RM**), or both (**RAM**) to not have a fake balcony/ columns and railings ("**columns**"), or have KFCA install and maintain them. Installing, inspecting, maintaining columns requires frequent, burdensome maintenance, physical and mental labor, which disabled Owner cannot provide, cause him substantial harm, e.g., pain, bleeding, muscular spasms.

3. Owner meets requirements of 24 CFR §100.203(a) which prohibits refusal of modification and §100.204(a) duty to make accommodations. Owner requested compliance with FHA, ADA (Am. Disabilities Act), e.g., RAM for alleged violations identified by KFCA, for moving a small horizontal shed onto his porch, building a small brick patio, necessary to walk over mud, and other modifications. KFCA refused.

4. Enforcement of KFCA rules has disparate adverse effects on disabled Owner (cause physical pain, bleeding, require substantial time that detracts from time needed for medical care, etc.), who cannot manage the complexity of multiple aesthetic maintenance (some

impractical), or oppose invalid KFCA restrictions on Owner's house. KFCA refused and/or did not respond appropriately to Owner's request for FHA or ADA compliance.

**Purpose and History of Housing Laws and disability anti-discrimination**

5. Older homeowners may want to age in place, design their homes to meet their needs, not those of the HOA architects or Trustees.[1] Eventually, disability impacts all of us.[2] See Owner's affidavit. HOA restrictions cause discriminatory impact/effect on disabled individuals. [3]

6. The COVID-19 public health crisis showed that institutionalization places people with disabilities at a heightened risk of serious illness. A huge proportion of COVID-19-related deaths occurred in retirement communities because individuals are too close to other susceptible individuals. Institutionalization of residents who can be served in their home communities is not only costly, but it is also deadly. A policy to allow owners to modify their homes to age in place saves governments and the elderly money, and prevents infections that have long term adverse consequences.

**COMPLAINT**

7. Aggrieved Plaintiff home owner ("**Owner**") brings this action for declaratory and injunctive relief, monetary damages, and penalties under the Fair Housing Act and Amendments, ("**FHA**"), 42 USC §3601 et seq, 42 USC §3602(i), §3613, and its regulations, and other applicable federal and state laws. Owner is over 18 years of age and a US citizen.

**JURISDICTION AND VENUE**

8. Court has jurisdiction over this action and may grant relief herein pursuant to 28 USC

---

[1] https://www.wsj.com/articles/aging-in-place-modern-retirement-homes-11614195939?mod=hp_listc_pos2.

[2] https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html#:~:text=61%20million%20adults%20in%20the,is%20highest%20in%20the%20South.

[3] Compelling HOAs to comply with FHA allows the disabled to modify their homes to minimize unnecessary maintenance, facilitate self-care, reduce costs, live better.

§1331; §3614(a); 28 USC§1343, 28 USC §2201-2202 (Creation of remedy, relief), federal and state laws, and supplemental jurisdiction, 28 USC§1367. Venue is in Montgomery County ("**MoCo**"), Maryland, under 28 USC§1391, where the claims, events, or omissions giving rise to the claims took place, Owner resides, and the Defendants worked or reside.

### DEFENDANTS; Organization of KFCA

9. The statements (averments) about defendants, including KFCA, are based on their representations. Owner/ Plaintiff disputes their accuracy and/or legitimacy (e.g., KFCA HOA may not be a legitimate entity because of failure to comply with corporate laws in MD).

10. Defendant KING FARM CITIZENS ASSEMBLY, INC. ("**KFCA**") is a corporation incorporated in MD. Its principal office at 300 Saddle Ridge Circle, Rockville, MD 20850. MD ID Number: D04642302. Formation/ Registration: 03/17/1997. Status: REVIVED. The Corporation was forfeited 10/7/1999; revived 4/20/2000. The filing history with business entities (public record) shows KFCA violated Maryland law by filing annual reports late. It is a Home Owners Association (**HOA**), subject to **FHA** and **ADA** (Americans with Disability Act).

11. KFCA has two parts: common areas, and homes, including hundreds of private Single-Family Homes (**SFH**), townhouses. KFCA has components (not separate legal entities): managers who supervise KFCA operations (usually employees); a Board of Trustees (**BoT**) with 5 members, a Board of Code Compliance (**BoCC**) which enforces rules; an Architectural design trust (**ADT**) and Architect that reviews change to the exterior of houses. KFCA appoints the persons of BoCC and ADT. Trustees and President are elected.

12. These Defendants during some of these events, resided in Rockville, MD 20850. Matthew Roh, a trustee; Richard Ricciardi, ricricciardiphoto@gmail.com, Trustee; Christopher E Leschack, leschack@hotmail.com, Trustee; Susan Beckerman, suebeckerman@verizon.net

or beckermansusan80@gmail.com, Trustee; Donald Barry Jackson, President and/or Trustee, dbjackso1@gmail.com; Tracy L. Jackson, Trustee; Nancy Paul, nancylpaul@gmail.com, past Trustee; Karen Sicard, email ADT@kingfarm.org. was part of the **ADT**.

Architect Laurence Frank works for Defendant Bennett Frank McCarthy Architects, Inc. (ADT@kingfarm.org). Its resident agent is LAURENCE FRANK; 8701 GEORGIA AVE.; SUITE 807; SILVER SPRING MD 20910 (from MD business records, March 19, 2022). The contract for Frank's services is between KFCA and Bennett Frank McCarthy Architects, Inc. Their principal place of business is at 2305 Eccleston Street, Silver Spring, MD 20902 see website, https://bfmarch.com/contact/. Frank made decisions on Owner's request for changes to his property by himself and/or as an employee and/or agent. ADT and Architect had authority to recommend or allow modifications requested by Owner, and rejected them.

13. Defendant Brandi Ruff was KFCA General Manager, deciding Owner's structural, landscape requests, mandated maintenance, and rejected modifications.

14. The addresses of Defendant Brandi Ruff and Architect Larry Frank are currently unknown to Owner. Both defendants refused to respond to requests for their addresses and the KFCA attorney refused to provide their addresses.

15. Defendants, named "**KFCA1**", are **persons** as defined by FHA, in their individual capacity, and/or as agents, ***while they worked with or for KFCA as agents and/or Trustees and/or President and/or members of the ADT and/or Community Architect and/or Manager***, participated in the events in dispute, at times known to them (Owner does not always know), since 2018 (unless stated otherwise) until present. They include the members of the Board of Trustees (**BoT**) between 2018 and present, Barry Jackson between 2019 and present, KFCA General Manager Brandi Ruff, Architect L. Frank, Nancy Paul, trustee until 2020.

16. Defendants KFCA1 report KFCA as their place of business, at Rockville, Montgomery County (**MoCo**), MD; used email addresses from kingfarm.org domain. The KFCA lawyers, and all defendants received or had access to complaints and letters/ emails from Owner.

17. Defendants provided KFCA business address as their physical mailing address. For many years, each defendant communicated many times with Owner via their KFCA email or mailings to their KFCA business address (which they received). Manager Ruff email = Brandi@kingfarm.org; or gm@kingfarm.org; Trustees email = trustees@kingfarm.org; President email = president@kingfarm.org; Architect and ADT = ADT@kingfarm.org.

18. Unless stated otherwise, all events or activities took place at the home of Owner or the geographic location of KFCA (many events took place virtually, via emails or electronic communications). The dates of events are in the exhibits (e.g., an email or letter). Discussion, maintenance, repairs, spread for weeks to months. Most are ongoing, daily disputes.

**Defendant KFCA, an HOA housing entity**

19. The **KFCA Charter** ("**Charter**") and Bylaws state the purpose and meaning of KFCA and its rules. **Community Codes** are Equity Resolutions and Administrative Resolutions adopted by the Board of Trustees (**BoT**) of the Assembly (another name for KFCA), which include rules for lots and living units. **Founding Documents** = Charter + the Articles of Incorporation + Bylaws of KFCA. **Governing documents** = Founding Documents + Community Codes.  Duties and authority of President, BoT, BoCC, ADT, are described in Founding Documents. **Codes** must be consistent with the Charter; they explain how to enforce KFCA rules and conduct business, e.g., how to apply for KFCA approvals.

20. The complaint refers to **KFCA Charter** ("**Charter**") Sections as rules or covenants or articles or restrictions. Housing laws refer to **rules, policies, practices, or services** (**RPPS**).

The KFCA governing documents refer to "activities in King Farm" (see KFCA rule §3-101). A Charter section, activity, decision, action, demand letter, or code, is herein considered a Rule, Policy, Practice, Service (herein named **RPPS**) used in federal housing laws.

21. KFCA prohibits changes to the exterior of private houses without KFCA approval.

**Plaintiff, aggrieved Owner**

22. Owner's home (= house) is a single-family home, a dwelling, includes the landscaped lot, with an outside porch with a flat roof, trees, flowers, plants, a large yard.  The house has reinforced floors, walls with noise insulation, commercial-grade wiring, study or work rooms to match the family's needs, thousands of books and research papers, timers for fans in bathrooms, multiple storage areas, special air filters, many independent circuits, etc.

*23.* Owner purchased his house after extensive research. Only houses available in KFCA met his requirements for substantial modifications, which cost over $200K. ***The explicit words of Charter sections to protect*** Owner ***from onerous maintenance were a substantial factor in decision to invest far more in KFCA property than other buyers of houses in KFCA. KFCA assured*** Owner ***that they would comply with disability anti-discrimination of public housing laws and would agree to reasonable modifications and accommodations.***

24. Owner's house has a front porch, which supports a flat roof. On this thin rubber-like flat roof, house had architectural barriers, decorative columns and railings ("**columns**", a.k.a. balustrade or fake balcony). These columns required onerous maintenance, because they pierced the roof, caused water leaks, damaged the roof. Owner removed columns, replaced damaged roof and infrastructure, but did not reinstall the columns due to the damage they would cause again. KFCA demands that Owner put the columns again, a demand frequently repeated, or face penalties and litigation.

25. The dispute involves a disabled, aggrieved Owner living at his home, a residential dwelling.  The residents of this home (father and children) are persons with disabilities within the meaning of 42 USC §3602(h) [4]. Defendants knew these issues. KFCA manager Ruff and KFCA attorney Philbin saw the child's special treatment with a pump, and asked about it.

26. 42 USC §3613(a)(1)(A) gives aggrieved person the choice of when and where to commence a civil action for FHA violations; 42 USC §3615 prohibits any law of a State, a political subdivision, that purports to require or permit any action that would interfere with those rights.

27. Owner's disability causes physical pain, muscular weakness, bladder blood, (which increase with movement), mental disruptions, reduced time for life activities, involves key organs, including kidney, bladder, prostate and Gastrointestinal tract. The disabilities require frequent daily treatment, which use several hours per day. Owner gets physically fatigued easily, has undesirable changes in heart rate, and adverse consequences to exertion.  See affidavit exhibit #O2 (see Exhibits Owner #Oi, attached, part of complaint).

28. Owner's disability and pain substantially interferes with his ability to sleep, perform physical tasks, and supervise contractors. The frequent pain and complex medical treatments are exhausting. Owner is tired during the day and needs frequent resting time.

29. **Compared with a healthy person**, Owner needs more time for health care (e.g., daily medical treatment) and for doing ordinary and KFCA demanded tasks, gets tired faster, has more pain, needs more time to sleep. Demands for time and labor have an adverse, discriminatory impact because Owner has less "**discretionary**" time and physical ability.

30. Owner is a physician with 40+ years-experience with disability. Patients with many

---

[4]  Owner uses the terms "disability" or "handicap." For purposes of the Act, the terms have the same meaning. See *Helen L. v. DiDario*, 46 F.3d 325, 330 n. 8 (3d Cir.)

conditions need substantial time to take care of their health or special needs. Owner's disability substantially limits major life activities like self-care (e.g., urinating), nutrition, regulating hydration and electrolytes, writing, moving, sleeping, using the phone, supervising contractors, etc. [5] He needs substantial time for health care, physical tasks and critical life activities, more time than a healthy person would. Owner has less discretionary time than healthy owners. [6]

31. Owner is substantially restricted to be at his home, designed for his needs. Owner needs access, multiple times per day, to a bathroom prepared for his medical needs (e.g., almost sterile, always available, nobody else uses it). For enjoyment, Owner goes outside the house, uses his yard to walk, amongst the plants, flowers, vegetables, and fruits. Reducing unnecessary tasks, minimizing unnecessary house maintenance, saving time, reducing movement, are necessary to ameliorate the adverse effects of his disabilities.

32. Owner uses and/or enjoys his house for growing vegetables, flowers, walking in his yard, studying, writing, thinking, eating, watching TV, caring for his children, working part-time as an independent researcher and scientist, etc. These activities require time and a well-controlled environment that is designed to meet his medical needs.

33. Owner conducts research to improve methods to diagnose and treat disease. This work is complex, applying physics and mathematics to the practice of medicine, and requires quiet,

---

[5] See https://www.hud.gov/program_offices/fair_housing_equal_opp/disability_overview; major life activities include walking, speaking, hearing, seeing, breathing, working, learning, performing manual tasks, and caring for oneself. Also include the operation of major bodily activities, the functions of the immune system, special sense organs and skin, normal cell growth, and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, musculoskeletal, and reproductive systems.

[6] Parents with children with special needs spend huge amounts of time daily to supervise meals, dressing, education, homework, frequent communications with teachers, etc. Owner with urinary obstruction using intermittent catheterization requires ½ hr. to 1hr to do what healthy men can do in 5 minutes (many times per day). Owner with intestinal disorders uses the bathroom frequently, requires specially prepared meals. Owner gets tired easily, requires more resting time, more time to complete tasks, prescription injections, daily changes in diet, monitoring of biomarkers, etc.

high concentration, low stress, little pain, adequate sleep. Example: Owner created a

differential equation to predict glucose levels and improve treatment of Type 1 diabetes (which

Owner used to improve treatment of patients in a hospital). Owner invented technology to

accurately measure fatty acids, found abnormal patterns in patients and research subject's

blood, recommended that nutritional guidelines and foods be changed to include more omega-

3s and fewer trans fats (which led to huge changes in food and nutrition guidelines worldwide).

34. Owner needs more time to supervise children with special needs and disability, provide

highly complex health care and behavior modification (e.g., supervise tasks multiple times per

day, how to do homework, how to eat, etc.), take care of major life activities.

35. Discriminatory effects are different for the disabled Owner than for healthy owners.

Example. KFCA requires that Owner maintain a fake balcony, cut plants to look like KFCA

wants them, not how Owner likes them, with frequent unnecessary cutting of flowers, etc. The

time and labor to comply with KFCA demands reduce the ability to perform major life

activities because owner has less stamina, less time than a healthy owner.

**Nature of disputes about house exterior**

36. KFCA has a list of "design guidelines" or "standards" for the exterior of a house

(structures) and landscape. In a large corner house with many plants like Owner's, there are

hundreds of parts that change weekly. KFCA does not allow changes without prior approval.

Owner must perform frequent, onerous maintenance to prevent changes to visual appearance.

Because paint, plants, etc., change shade, shape every day, deciding when a change is a

violation or not is subjective, arbitrary, decided by defendants according to their aesthetics. The

house aesthetics for Owner are different from the aesthetics of KFCA or its agents.

37. The KFCA "standards" or "guidelines" or RRPS are the same for all owners. However,

they have different effects on different owners because of their health, physical and mental abilities, location of their house (Owner's house faces strong winds that bring dust), size, whether they have mostly grass and a few bushes v. many plants with flowers, etc. KFCA RRPS harm Owner more because of his disability, children with special needs, large house with many plants (his choice to use and enjoy).

38. The dispute is not about common maintenance required in all houses by local government (e.g., periodically cut the lawn), or to prevent structural damage (e.g., caulking large cracks around windows), but about onerous unnecessary maintenance for aesthetics, such as frequent cutting plants to look nice and neat, frequent washing, painting fence, to cover minor changes in shade or dust (which occur again shortly after cleaning), which KFCA strongly enforces in Owner's house, and rejects reasonable modifications to Owner's house.

39. KFCA, Trustees, President, mandate that Owner make unnecessary aesthetic maintenance to his house to keep the exterior how KFCA likes it, such as kill flowers leaning, frequently prune plants and trees to look like KFCA likes them (even if destroys bird's nest or blooming or fruit), prohibit structural or landscape modifications without KFCA approval, etc. These requirements cost disabled Owner substantial physical and mental resources (e.g., time, labor, harm his health), reduce physical and mental resources he needs for health care, education of children with special needs, his life, etc. All modifications in his house are the way Owner likes them, which are reasonable, necessary for better, full use and/or enjoyment of his house, and cause no harm to others. Parties disagree on what KFCA requires to meet their subjective, arbitrary standards and design guidelines, and what Owner finds reasonable, necessary to use and/or enjoy his house.

40. KFCA alleges: (a) KFCA RRPS prohibits changes to house exteriors; (b) it is not KFCA

policy or practice or procedure to do the maintenance KFCA demands from Owner's house exterior. Owner requests the reasonable accommodation or less discriminatory RPPS that either KFCA waive in part its requirement of no changes, **or** that KFCA deem the changes are not violations (because changes occur every day, and what is or is not a violation is interpreted differently by KFCA, its agents, defendants, and Owner), **or** KFCA correct the alleged violations, which is authorized (or required) by KFCA Charter. Instead, KFCA chose to conduct hearings, impose fines or penalties, litigate against Owner.

41. KFCA conducts frequent inspections of private homes to take photos and find alleged violations of exterior appearances. During 2018 and 2019, KFCA conducted many inspections of Owner's home, took dozens of photos, and sent Owner notices of dozens to hundreds of subjective violations (depending on how one counts a violation), which KFCA demanded Owner correct by providing his time, money, labor to benefit KFCA.

42. Since at least 2019, Owner made the following requests to Defendants. Because of his disability, health and education problems of his children, and his needs for extensive medical treatment, and other reasons, Owner did not have enough time in life to take care of critical aspects of his life. Owner had restrictions in movement, was in frequent pain, frequently bleeding, and other medical issues. Owner needed to reduce physical activity and time devoted to KFCA demands to maintain the exterior of his house. Owner requested, either as RAM or as less discrimination action, or other compliance with FHA, ADA, KFCA Charter, that KFCA waive demands for aesthetic modifications that Owner did not want, or else KFCA do the maintenance required by KFCA.

**Statutory and Regulatory Provisions for FHA, modifications, accommodations**

43. 24 CFR §100.201 **Definitions**. **Dwelling** unit means a single unit of residence.

**Building** means a structure, facility or portion thereof that contains or serves one or more dwelling units. **Premises** means the interior or exterior spaces, parts, components or elements of a building, including individual dwelling units and the public and common use areas of a building. **Modification** means a change to the public or common use areas of a building or any change to a dwelling unit. Reasonable accommodation includes "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." [7]

44. "A "**reasonable accommodation**" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces. Since rules, policies, practices, and services may have a different effect on persons with disabilities than on other persons, ***treating persons with disabilities exactly the same as others will sometimes deny them an equal opportunity to use and enjoy a dwelling***." [bold/italics added] https://www.justice.gov/crt/us-department-housing-and-urban-development.

45. The FHA applies directly to HOAs. There are two different FHA "**modifications**."

Modifications (change) of a premise occupied by owner (e.g., house, including yard), paid by owner. See 24 CFR §100.203(a). Modifications NOT paid by owner, are treated like accommodations because they involve a change in RPPS. See 24 CFR §100.204(a). They have further requirements (e.g., equal opportunity) not required by 24 CFR §100.203(a).

46. **There are two types of KFCA modifications**. *Modifications required by KFCA*, for its benefit, unnecessary to Owner (cost time, labor, etc., such as aesthetic maintenance), and ***modifications needed by Owner***. Both require KFCA approval, or waive or modify its RPPS.

47. It is unlawful for KFCA and/or a person (e.g., KFCA President, Trustees, Architect) to "refuse to permit, at the expense of a handicapped person, **reasonable modifications** of existing premises, occupied or to be occupied by a handicapped person, if the proposed modifications may be necessary to afford the handicapped person full enjoyment of the premises of a dwelling." 24 CFR §100.203(a) (or FHA 42 USC §3604(f)(3)(A))

---

[7] *North Shore-Chicago Rehabilitation Inc. v. Village of Skokie*, 827 F. Supp. 497, 499 (N.D. Il. 1993), *Oxford House, Inc.v. Township of Cherry Hill*, 799 F. Supp. 450, 462 n.25 (D.N.J. 1992).

48. Correction of exterior changes, demanded by KFCA for aesthetic purposes, must be waived if they are reasonable modifications necessary by Owner to enjoy his home.

49. 24 CFR §100.204(a) makes it **unlawful** for a person and/or KFCA

"to refuse to make **reasonable accommodations** in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit."

50. A handicapped individual meets the requirements of §100.203(a) or §100.204(a) without proving the modification or accommodation ameliorates the handicap.

51. 42 USC §3602(f) "**Discriminatory housing practice**" ("**DHP**") means an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title. A covered entity violates the FHA when facially neutral rules, policy, practice, service ("**RPPS**") has an adverse discriminatory effect if it is not supported by a legally sufficient justification, or when the entity prohibits or denies an activity required by FHA, such as Reasonable Accommodation ("**RA**") and/or Modifications ("**RM**") (together "**RAM**"), or less discriminatory action.

52. Each activity or DHP at KFCA (e.g., installation of balcony or patio) involves different statutes or rules with different burden of proof, e.g., RAM, choose alternative with less discriminatory action, affirmative duty to reduce discrimination. KFCA must comply with all. **Example**: to allow Owner NOT to have a balcony, KFCA may allow the modification of no balcony on roof, or change a rule to remove requirement for a balcony because it harms Owner's roof, or waive the rule that requires no change (e.g., require keep balcony), or reduce discriminatory effects by not having a balcony or KFCA installs and maintains it.

53. 42 USC§3604(f)(2) makes it unlawful— " To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." 24 CFR §100.202. 24 CFR §100.65.

54. 24 CFR §100.70(b) makes it "unlawful, because of . . . handicap, . . .to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons." It prohibits "enacting or implementing land-use rules, ordinances, procedures, building codes, permitting rules, policies, or requirements that restrict or deny housing opportunities . . . to persons because of . . .handicap . . .". 24 CFR §100.70(d)(5). 24 CFR §100.65.

55. The ADA, 28 CFR §35.108(d)(3) regulations for disability, interpreted consistently in disability discrimination cases, state that "**the duration of time** it takes the individual to perform the major life activity"[8] is evidence the individual is substantially limited in a major life activity. Time a factor in disability [9] *It is* **RAM** *for KFCA to reduce the time required for maintenance demanded by KFCA, or waive it, or* reduce tasks or provide help with tasks.[10]

**KFCA founding documents (excerpts).** See Exhibits #O27

56. Charter states its purpose is to benefit the health and welfare of owners. It explicitly allows changes to aesthetics, architecture, and landscapes to benefit owners.

"the central purpose of this Community Charter is to beneficially protect and enhance the general health, safety and welfare of the Citizens of King Farm and to promote opportunities for enrichment of the quality of life of each Citizen of King Farm." (#O27 Charter, bylaws). "To satisfy the intents of the Community Plan that, in its conception, was directed towards the goals of protecting and enhancing the value of each Titleholder's financial investment in Real Property in King Farm.
To provide for each Citizen [e.g., Owners'], and all residents unique opportunities to enjoy a

---

[8] Reasonable accommodation may include: (ii) Job restructuring; part-time or modified work schedules. §1630.2(j)(4) Condition, manner, or duration - (i) . . . whether an individual is substantially limited in a major life activity, consider "the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity". (ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed". §35.108
[9] Substantially limits is defined as: "(ii) significantly restricted as to the condition, manner or **duration** under which an individual can perform a particular major life activity as compared to the average person in the general population." *Cato v. First Fed. Cmty. Bank*, 2009 U.S. Dist. LEXIS 103469, 14-15 (E.D. Tex. Nov. 5, 2009)
[10] Public schools and employers simplify job tasks, allow more time to complete tasks, change procedures to compensate for reduced time available to disabled, etc.  §1630.2(o)(2).

social environment that enriches personal and family life through Community congeniality and the operation of an overall spirit about King Farm that it is an especially emotionally and spiritually rewarding place to live."

. . .

"The primary purpose of the Assembly is to own and operate certain properties for the benefit of Titleholders and Citizens and to carry out the responsibilities established for the Assembly [another name for KFCA] in the Founding Documents."

"it is not the intent of this Community Charter . . . to preclude changes in design standards over time that respond to events that may not have been foreseeable at the time of drafting this Community Charter" Charter §4-101 King Farm Architectural Design Trust.

**Charter** §1-103 Community Plan. "(a) Purpose. The Community Plan is a dynamic and evolving plan for the development of King Farm. It is anticipated that the Community Plan and the Design Standards and Guidelines will be modified from time to time in order to optimally benefit from individualistic design expressions."

§2-102(a) Board of Trustees ("**BoT**"). "(8) To establish rules of procedure for the manner in which cases of alleged violations of the Governing Documents are processed.

"§2-102(c) Board of Code Compliance ("**BoCC**"). "The principle purposes and functions of the Board of Code Compliance shall be as follows . . .To investigate and render judgments on alleged violations of Community Codes", impose punitive measures, fines."

57. KFCA prohibits changes to house exteriors without prior approval. "**Charter** §3-102. Visual Changes to Exteriors of Real Property." "Changes in the visual appearance of the exteriors of structures and the Lots on which they are situated may not be made until approval has been secured in writing . . . ." (#O27 Charter, bylaws)

"**Charter** §3-104. Required Actions Upon Damage to Real Property. "In the event of damage to a Living Unit or other structure which is clearly visible from the exterior, the Titleholder of such Living Unit or other structure shall be obliged to repair or reconstruct the Living Unit or other structure in accordance with its appearance prior to such damage unless the King Farm Architectural Design Trust has agreed to the contrary. Should a Titleholder not conform to the provisions of this §3-104, the Board of Trustees is entitled to accomplish necessary repairs or reconstruction according to its best judgment, and levy an assessment upon the Titleholder for the costs involved." (#O27 Charter, bylaws)

**Charter** §3-107 Adverse Actions in Property Use. "No Titleholder or Citizen (or their respective invitees) shall take any action or fail to take an action that actually or tends to jeopardize property values or that otherwise might be detrimental to the Properties or to the well-being of Titleholders, Citizens or the Assembly."

"**Charter** §5-104 General Easements. The following easements and rights are hereby reserved and established, the exercise of which shall be subject to all relevant Public Laws. (c) Easement for Assembly to Meet its Responsibilities. A general easement is hereby created for the Assembly to enter Lots (but not Living Units) to take action appropriate to carrying out its

responsibilities as provided for in the Founding Documents."

**"Charter** §6-102 Control and Maintenance of Community Property and Real Property "The Assembly shall be exclusively responsible for the control and management of all Community Property which includes Real Property . . . as well as any property over which it has responsibilities by virtue of a lease, . . . or other contract, easement, or agreement."

58. **Charter** §2-102(a)(9) explicitly limits BoT authority to appeals by Members s aggrieved by a decision of the BOCC . . . on a matter in which such Member or Titleholder is the primary party."  (Exhibit #O27).

**"Bylaws**. §3-102 Powers and Duties of the Board of Trustees (g) Hear and make final determinations on appeals by Citizens from decisions of the Community Architect, the Board of Code Compliance, the King Farm Architectural Design Trust, or any other committee within the jurisdiction of the Assembly."

**59.** BoCC has **exclusive** authority to impose penalties, fines, ask Owner to install columns. KFCA founding documents do not authorize BoT or President to impose penalties or demand Owner install columns on his roof. BoT can sustain or reverse BoCC decisions adverse to owners, and cannot reverse decisions favorable to owner. Bylaws §3-102.

60. *KFCA/ T*rustees cannot demand Owner reinstall columns because such remedy is inconsistent and not in accordance with *§3-104 remedies. (*Charter §3-101, Bylaws §1-101).

61. KFCA Founding Documents, either authorize or require that KFCA do repairs or maintenance due to KFCA demands (e.g., install columns). Failure to do it violates FHA and the requested RAM, has adverse discriminatory effect, and violates KFCA fiduciary duty.

62. KFCA requires due process when enforcing community codes and Charter, including actions against owners for violations of exterior appearances. "The Board of Trustees shall establish due process procedures for dealing with alleged adverse actions." Charter §3-107.

### KFCA Discriminatory housing practice ("DHP")

63. These are some of KFCA demands, or services, or activities, or "**DHP**" with adverse impact/effects on Owner's disability. (1) Demands that Owner correct dozens of alleged

landscape and structural violations in 2019 (some overruled after KFCA administrative

hearings due to lack of evidence), and continue to comply with KFCA exterior rules about

those demands; (2) demands that Owner reinstall columns (fake balcony-like structure) on his

flat roof as they were when he first occupied the house (ongoing administrative procedures;

Owner permanently removed columns which were causing water leaks leading to structural

hazards and mold infiltration, KFCA rejected modification every day since 2019); (3) rejection

of Owner's proposed modifications such as trellis for plants, shed, putting storage furniture in

porch, patio; (4) In 2021, KFCA required Owner apply with alternative designs to install a fake

balcony (columns) on his roof. KFCA rejected Owner's requests for RAM or less

discriminatory RPPS, that KFCA allow modifications, such as no columns on roof, or instead,

planters with plants. Alternatively, KFCA put the fake balcony on Owner's roof; (5) for KFCA

alleged violations, either KFCA waive or KFCA correct them. [11]

64. Because of KFCA demands for the reinstallation of columns, which require frequent

inspections and maintenance (impractical to contract out), Owner is harmed (e.g., require time,

labor, cause pain, bleeding, etc.), suffers adverse discriminatory effect.  But for the KFCA

demand for columns, Owner would not have harm (no columns = no maintenance).

65. Because of substantial health conditions (disabilities), Owner cannot use and/or fully

enjoy his house like healthy residents. He does not have enough time, physical stamina, etc. To

better use and/or enjoy his house, he needs more time by eliminating unnecessary tasks (e.g.,

unnecessary maintenance mandated by KFCA which harms fragile, disabled Owner), and

---

[11]  The costs to KFCA of correcting the alleged exterior violations are a fraction of what it costs
to enforce the violations with litigation. Because KFCA has many contractors doing building and
landscape maintenance, the maintenance in owner's home costs little. In contrast, it cost a lot for
managers, architects, lawyers, to frequently inspect owner's home, take photos, prepare detailed
reports, send demand letters, schedule hearings, meetings of BoT, etc.

KFCA allow modifications that provide more use and/or enjoyment (e.g., satisfaction), e.g., use house to grow vegetables, flowers, or eat them, or smell flowers, changes that also reduce pain, bleeding, stress, facilitate sleep, etc., and ameliorate the adverse effect of disability. No columns both alleviate the adverse effects of disability (e.g., reduces pain, bleeding, etc.), and provides more time to use and/or enjoy the house.

66. KFCA RPPS (e.g., enforcement of alleged violations of exterior changes of Owner's house or rejection of Owner's modifications) are provision of services in connection with Owner's house. KFCA enforces its demands via extensive administrative procedures such as frequent house inspections, demand notices, hearings and litigation.

67. Each KFCA demand, rejection, administrative procedure, is a barrier like a curb too high. It requires time, labor, physical and mental resources, and reduces Owner's full use and/or enjoyment of his house as herein stated. Each RAM (e.g., changes in RPPS) requested or done by Owner is reasonable, necessary, effective for its intended purpose, imposes no undue financial, nor administrative, burdens on KFCA. It increases, is essential for, full use and/or enjoyment of Owner's home. It is essential to reduce the adverse effects of disability which substantially restrict Owner to his house, reduce his time, stamina, etc. The modifications do not harm anyone, are common in private houses in the US, do not alter the business of KFCA. KFCA rejected the RAM, and continues these rejections and prohibitions every day, with threats of administrative proceedings (e.g., litigation), financial penalties.

68. KFCA can ameliorate the adverse effects of its demands on Owner by KFCA complying with FHA, modifying RPPS to not make demands without legitimate justification in compliance with FHA and KFCA; correct allege violations (and justify how to share costs); provide detailed descriptions and contractor who can correct the violation and meets KFCA

requirements because many alleged violations are too vague or harmful to correct.

69. KFCA demands substantial changes to Owner's home exterior to comply with its arbitrary, capricious "standards". Experience proved that when Owner attempts to comply, its modifications or corrections do not meet KFCA standards or requirements. KFCA is not consistent with itself. The solution is for KFCA to write its vague descriptions of violations (e.g., be neat and nice) into specific requirements appropriate for a contract. When Owner uses his own contractors, the work is frequently not good enough.

70. Because all the work involves house exterior, KFCA inspects the property and determines what is a violation and how to correct it, KFCA has the knowledge to write the contract specifications. Because KFCA is in the business of maintaining a huge common area with similar requirements, KFCA routinely seeks bids and contacts contractors for these purposes and can easily and inexpensively obtain bids. Instead of ambiguous demands, KFCA can provide specific requirements for repairs, how to do it, and who can do them. There is no legitimate justification to deny these accommodations.

71. Among other, Owner requested, as least discriminatory action and reasonable accommodation, that KFCA write specifications (for its required changes) as terms of a contract, submit it to legitimate contractors, with insurance, workman's compensation, who guarantee no water leaks (nailing the columns causing water leaks is easy, the challenge is install the fake balcony without causing water leaks). Then agree that the work by these contractors meets KFCA requirements. KFCA rejected or never implemented these requests.

72. KFCA has a large staff that supervises maintenance of buildings, contractors, etc. Defendants can reduce discrimination by vote or recommend the following activities: (a) allow modification by Owner to remove columns; (b) as accommodation, waive KFCA RPPS or

enforcement so Owner does not put columns on his roof (c) for new application, waive or not ask Owner to install columns; (d) KFCA install and maintain the columns or other maintenance.  Similar for other KFCA demands.

**Owner was injured by discriminatory housing practices ("DHP")**

73. **Owner** was injured by discriminatory housing practices ("**DHP**") whereby each Defendant refused to allow him to modify the exterior of his house, or to provide accommodations, or otherwise comply with federal housing laws, which are reasonable, necessary, to better use and/or enjoy his house.

74. Defendant's **DHP include** demands in 2019 that Owner make dozens of unnecessary maintenance to his landscape and structures, and not satisfied with work Owner did, reject Owner's modifications, reject requests for modifications to columns and railings on his flat roof, refuses accommodation to change the appearance of his flat roof by either not installing a fake balcony or putting planters instead of a fake balcony. See, e.g., Exhibits #O5, #O6. #O7, #O8, Request compliance with FHA RAM §100.7 Sept 2019; #O10.

75. Defendants, during employment at KFCA (for employees or agents), or during the time of their activities as Architect or Trustees or President, or Managers, had the power or authority to stop or reduce DHP by not voting for KFCA demands, voting against them, voting for or approving RAM or the less discriminatory activities proposed by Owner, such as **not enforcing demands** that Owner correct alleged violations of his house exterior (or KFCA corrects them), or agree to Owner's modifications.

76. Each defendant participated in discrimination and/or refused FHA compliance by either directly rejecting Owner's requests, or by authorizing other defendants to reject Owner's requests, or by not using their power and/or authority to stop other defendants or KFCA from

rejecting Owner's requests, hold hearings, make demands, refuse RAM, etc.

77. The FHA and HUD regulations, e.g., 24 CFR §100.7, require each Defendant reduce discrimination, e.g., "take prompt action to correct and end a DHP" (§100.7(a)(1)(ii)). Each Defendant can, independently, decide not to require Owner install columns (or not penalize him for not putting columns), recommend same to KFCA, and allow RAM. Same for DHP.

78. KFCA RPPS and Charter are terms, conditions, or privileges of the sale of Owner's home, and/or services connected with his house, such as enforcing or waiving KFCA rules.

**KFCA must comply with public laws, FHA**

79. The governance and operation of KFCA, and its BoT must be

"in accordance with the provisions of the King Farm Community Charter (the "**Charter**") . . for the benefit of all Titleholders . . . having interest in Properties known as "King Farm."" Bylaws §1-101.
"Uses of Real Property and all activities in King Farm shall be subject to all relevant Public Laws and the Governing Documents . . ." ". . .the Assembly may enact into the Community Codes provisions and restrictions relating to the use of Real Property and all activities within the Properties, which are consistent with the Founding Documents . . ." **Charter** §3-101

80. Decisions by BoT, ADT, President, are limited by Charter §3-101 and Bylaws §1-101 that require all activities, decisions, rules (passed or interpreted or implemented by KFCA), to be consistent and in accordance with Charter and bylaws; and "Any Founding Document shall take precedence over Community Codes" (Charter §8-104(b)). If BoT could decide anything, buyers would not know what they are buying, and the Charter becomes irrelevant.

81. Ignoring Owner's disability is a violation of public law and fiduciary duty to comply with KFCA §3-101. When President or Trustees or their agents violate both public laws and their fiduciary duties, they violate their own Charter. Charter §3-104, §5-104 and §6-102 authorize or require KFCA to correct alleged violations of Charter.

82. Defendants, in their position as employees or agents or collaborating with KFCA,

participated in the decisions of the KFCA and/or voted to impose restrictions on Owner's use and enjoy of his house, or approve hearings, and/or require columns on roof, and/or voted, or imposed demands for Owner's labor, services, time, and/or filed complaints against Owner and/or did not take action to allow Owner to modify his house as he wanted and/or refused to reduce KFCA demands for alleged violations.

83. At times relevant to the complaint, Defendants reviewed issues, communicated with Owner, and made determinations regarding Owner's **RAM** requests. They created rights over Owner's property and demanded that Owner change the exterior of his house to meet their aesthetic benefits, without compensation, in violation of US Constitution.

84. Defendants required or agreed that all communications to them, including legal documents, be sent to their main office, and agreed to email delivery before, during and after the viral epidemic of 2020-22. During more than 12 months of extensive litigation with government entities and KFCA, all communications from Owner to Defendants or KFCA lawyer were via business email and/or mail to business address or via phone or zoom.

**About events, activities, use and/or enjoyment of Owner's house**

85. Owner criticized KFCA Management several times for poor management, improperly enforcing the Charter about exterior changes in his house and others, and not focusing on proper management of common areas and community assets.

**Structure of porch roof, handrails, columns, railings. See #O2, #O9, #O23,#O24, #O25**

86. Owner bought a large house because he needed the space for himself and his children. Only corner houses were available from the builders to buy with the features Owner needed. The other houses the builders could not modify them as required by Owner.

87. Owner's house has an open front porch. On the porch, 1st floor, are long, strong

columns that support a flat roof. Attached to the columns are handrails and railings

("**handrails**"). The flat roof has a wood infrastructure and a rubber like thin flat soft material. It

is not designed to be pierced. It had decorative architectural barriers, columns supporting

railings ("**columns**") nailed/screwed to the flat roof (AKA balustrade, or fake balcony);

columns are surrounded by caulk around their base to prevent water leaks. The columns have

no functional or structural purpose. There is no door or stair access to the roof.

88. The columns sit on the flat roof. Railings are long (over 30 ft), heavy; columns create

depressions around them on soft roof. After each rain, snow, strong winds, they accumulate

water. Columns required substantial maintenance (e.g., paint, remove ice, snow, water, caulk,

frequent painting). Snow and ice accumulated against the railings, creating a dam that

accumulated snow and water, which Owner had to remove quickly and with difficulty to

prevent water leaks (rubber roof is very brittle, so Owner had to carefully lift snow over

railings). Installation and maintenance required time and frequent physical labor, and caused

physical pain and organ damage to Owner (e.g., bleeding, etc.), which limits Owner's use

and/or enjoy his home. It worsens his disability and medical conditions. It is practically

impossible to find a contractor to perform maintenance each day promptly after winds or rain.

89. Columns have a square bottom, sitting on roof. There are 9 columns. Maintenance of

columns require inspection of the 4 sides, looking for practically invisible cracks or tiny

separations of caulk from floor or column. Inspection is difficult and time consuming. To check

for cracks or separation of caulk from roof, one must sit on the floor, carefully touch the caulk,

and see if it lifts or is sealed to the roof, or has hidden cracks. Two of the sides are under the

railings, one in front at the edge of the roof. Inspecting front of columns requires going up and

down a ladder 9 times, frequently during cold rain or snow. It is dangerous, risky, and difficult

to do. Each inspection requires several hours, and must be done frequently to prevent water leaks, usually weekly after each rain or strong winds.

90. Owner's house is in a corner without houses in front. Strong winds blow towards the house, causing the columns to move and enlarge holes supporting the columns, and break the caulk seals. The columns and roof were severely damaged by wind; water entered the infrastructure under the roof, damaging huge portions of the roof and causing structural damage, mold, rusty water, and a hazardous environment to the disabled people living there.

91. Owner removed columns to replace the roof and infrastructure. Owner did not replace columns because it is impossible to put nails/screws to hold columns without piercing the new roof and causing water leaks and damage. Owner interviewed contractors to replace columns over his porch. None of the contractors would guarantee their work to install the columns, because they had to pierce the new roof to attach the columns. See Exh #O9, #O23-25.

92. The KFCA Founding Documents allows modifications to benefit owners, or reduce harm to owners. Charter §4-101.  KFCA cannot create architectural standards that require time and physical labor to deter ownership by disabled individuals [12]. The house purchase agreement has no requirement that Owner's house must have fake balcony.

93. KFCA saw and reviewed the extensive roof damage (surface, infrastructure). KFCA approved that Owner replace the flat roof. KFCA demands that Owner install columns on his porch roof as they were. KFCA refuses to allow the modification of "no" columns or accommodation KFCA install and maintain (and bill Owner if appropriate).

94. The Charter or RPPS distinguishes between violations of KFCA, and different remedies

---

[12] If Persons (entities) could avoid FHA or ADA requirements by describing architectural barriers as beautiful aesthetics essential to the purpose and function of their business, then everybody would do it, and ADA and FHA would lose a chunk of their enforcement authority.

for different violations. Charter states that changes to the exterior of private homes without approval may violate KFCA rules. The exclusive remedy for violation of §3-102 and §3-104 is explicit in Charter sections, §3-104, §5-104, §6-102. For violations regarding columns damaged, Charter §3-104 provides that either Owner reinstalls columns, or KFCA waives requirement, or installs them and bills Owner. KFCA §5-104 and §6-102 give KFCA the exclusive authority to remedy violations and provides an easement to enter to remedy violations. If the Charter wanted a different remedy, it would have said so. KFCA cannot impose a different remedy because it would be **inconsistent** *or not in accordance with* **Charter §3-101 and Bylaws §1-101**.

95. §3-104, §5-104, §6-102, purposes are clear: not to harm owners, but get things fixed, consistent with purpose of KFCA, to benefit owners. If Owner cannot fix it, KFCA will do it. This saves considerable time and money in litigation, legal expenses, etc. Owner requested KFCA provide RAM consistent with KFCA Charter.

96. The violation or injury to KFCA is that Owner did not put back fake balcony on his porch roof, in violation of KFCA rules about exterior modifications, repairs. KFCA does not have and did not allege other justifications (e.g., harm or risk of harm to others).

97. KFCA DHPs are demands that Owner keep unchanged the exterior appearances, the aesthetics, to comply with KFCA rules, even when the maintenance does not benefit or harms the Owner and his family. Reinstalling the decorative columns would require frequent, onerous maintenance, which reduce use and/or enjoyment.

98. Charter §3-102, restricts visual changes in general, and §3-104 has specific restrictions for visual changes to damaged structures, and limits KFCA remedies to requesting or making the repairs. There is no authority for KFCA to demand Owner install columns.

**KFCA Charter sections or covenants or rules are not enforceable due to forfeiture**

99. The State of Maryland requires that corporations file an annual report describing property used in business, and pay an annual tax. Maryland keeps an electronic, online, data base of corporations. History of filings of annual reports and tax payments are at https://egov.maryland.gov/BusinessExpress/EntitySearch

100. KFCA is a Maryland corporation. It failed to file timely annual reports and was forfeited in 1999. Forfeiture means that the Corporation ceases to exist as a legal entity. The KFCA cannot enforce its alleged rights about private home exteriors. Those rights cease to exist, vest elsewhere during forfeiture, and are not reactivated by corporation revival.

101. The corporation **KFCA** holds the rights to enforce its Charter (Charter §1-101 and §2-101, Exh #O27, p. 6). According to KFCA §2-101, every Titleholder is vested with such rights and obligations of KFCA Charter. Enforcement of changes to exterior of private homes requires right to sue Owner, which is divested, lost, during forfeiture.

102. "MD Corp & Assn Code §3-512(2) (2019). **Effect of extension or revival; (2) divested.** (2) All the assets and rights of the corporation, *except those sold or those of which it was otherwise divested* while the charter was void, are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter."

103. While some contracts by the corporation while the charter was void are validated, *the rights divested while the charter was void are not restored.* Rights divested are lost forever. After the corporation was forfeited, the alleged rights to enforce appearance of private home exteriors upon lot owners, vested elsewhere and are not revived by corporation revival. Charter §3-102 and §3-104, authorize KFCA to require that Owners maintain the exterior appearance of their home. During forfeiture, KFCA lost those rights, they vested elsewhere.

104. Enforcing KFCA rights that vested elsewhere deprives Owner of valuable access to his property and property rights, without due process, a taking without compensation or

opportunity to oppose, in violation of the U.S. Constitution.

105. Revival, if valid, does not return to KFCA rights to enforce covenants against private homes. Maryland's Declaration of Rights and Constitution, and U.S. Constitution, prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights. Allowing KFCA to obtain rights to demand exterior changes on the homeowner after KFCA was in forfeiture and had no such rights (could not sue owners or enforce those rights, so they were lost), gives KFCA property rights over Owner's home without due process and compensation.

106. Owner requested copies of the records that are evidence and proof that KFCA complied with all requirements for elections and revival. KFCA could not find some of the records and did not produce them for inspection. Owner sent written requests for records, asking KFCA to number the records sequentially to prove that some required records do not exist. KFCA refused to provide all the records. Owner visited KFCA office, looked at the records available, and found no adequate records for several elections and for revival of the corporation. If KFCA cannot provide evidence of its election and revival requirements, it no longer has the authority to impose standards on homeowners.

**Purposes of KFCA, restrictions, requirements of founding documents**

107. The legitimate interests and purposes of KFCA are stated (and restricted) in KFCA Founding Documents. Every rule or activity created or enforced by KFCA, or its agents must comply with KFCA Founding Documents, and with public laws. Charter §3-101. KFCA founding documents allow or require KFCA to make the aesthetic repairs or maintenance or waive them to benefit Owner. See 24 CFR §100.500(c)(2), 24 CFR §100.500(b)(1), (i).

108. KFCA RPPS are arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate, nondiscriminatory, objective of KFCA; they conflict with the purpose of Charter to

benefit the Owner, and contrary to housing policy (to help disabled residents stay in their home). Legitimate, nondiscriminatory interests supporting the KFCA housing RPPS could be served in an equally effective manner, without imposing materially greater costs on Owners, or creating material burdens for KFCA, by a KFCA RPPS that has a less discriminatory effect. See 24 CFR §100.500(c)(3); §100.500(b)(1)(ii).

109. For every decision regarding exterior changes in a homeowner's property demanded by KFCA, KFCA must at least prove that it benefits the health, safety, and welfare of other citizens more than the Owner, or harms others (to comply with its Charter's purpose). KFCA never did this analysis regarding columns in owner's roof or any other KFCA demands.

**About Owner's Background and qualifications**

110. Since 2001, Owner owns a single-family-house, detached, in the HOA KFCA. It was difficult to buy a house that met Owner's and family special needs.

111. Owner, due to his health and children's health and special needs, spends most of his time at home. Owner had specific requirements for a house due to health needs for himself and family. He needed schools with special education programs, walking distance to a school bus, walking distance to a supermarket, capacity for large electrical loads for medical equipment, multiple freezers, computers, etc. It was impractical to find an old house to buy.  The only homes under construction that met Owner's criteria were in KFCA. KFCA had several houses yet to be built. One builder agreed to change specifications to match Owner's needs.

112. The house was built with stronger foundation, stronger floors (e.g., shorter distance between beams) and support, noise insulation inside walls, commercial wiring, multiple independent circuits, 2 dishwashers, bidet, extra storage and infrastructure (3 HVACs, large electrical entrance over 200 Amps, over 1,500 sq ft storage, etc.)  These changes are

impractical in an existing house. Many changes are unique to Owner's needs and do not increase property value. In 2022, it would cost over $500,000 to add them to an existing house; houses like Owner's sell for $1M+ more than Owner's house. Owner spent thousands of hours modifying house for his and family special needs with special features.

113. Owner hired two experienced inspectors to conduct independent inspections several times during construction. Friends, one an architect, who used to be in the business of building private homes, provided advice. The house was specially built to meet Owner's and children's special needs. One would need to tear a house apart to implement similar features on an existing home. Owner and children spend most of their time in their home. Owner wanted a large yard to grow flowers, vegetables, spend time in his yard. But not to labor most weeks complying with KFCA demands at the expense of his health and safety.

114. Owned read KFCA Governing Documents. He discussed them with the seller, management, and lot owners. While reviewing to buy, KFCA was accommodating. Owner was told reasonable and necessary modifications would be approved after the house was constructed, so he did not need to ask before construction. The columns and railings on roof looked brittle; Owner was told they could be removed. The Charter explicitly allowed it.

115. Owner understood that applications to exterior changes would be routinely approved unless the KFCA proved that they caused harm or posed a danger to the KFCA, or the public.

116. During the early years Owner lived, KFCA was accommodating. No substantial complaints about mulch, plants, etc. For example, he needed to build a fence. A neighbor complained it obstructed their view. The architect and KFCA allowed the building of a fence.

117. The contracts that the Owner signed that required him to comply with the Charter mandated by sellers of the house were contracts of adhesion. The Owner could not change the

terms, did not participate in the writing of the terms, and had zero input on their terms.

**Conflict between HOA demands for exterior changes and Owner's use and enjoyment**

118. Doing the maintenance frequently required by KFCA takes huge amounts of time, money, labor, risks the Owners physical safety and well-being, makes Owner sicker, and substantially interferes with the use and/or enjoyment of Owner's home. Owner can use his time, money, labor to take care of his health, his children's health, education, and welfare, read, write books, do medical research at his house, for which he needs good sleep, low stress, ability to concentrate to understand complex medical information.

119. Because of Owner's disability and children's special needs, Owner has more limited time in life for activities than healthy persons ("discretionary time"), due to the need for health care, the consequences of disease, supervision of children with special needs. He must eliminate unnecessary tasks to have enough time to take care of his life. Either spend time, money, labor, physical resources (e.g., physical movement, physiological changes to body) to use and enjoy his home, or spend it to keep his house looking the way demanded by KFCA.

120. These issues became more critical since Owner's health deteriorated substantially recently, with severe restrictions on movement and physical activity, and children's health and education needs increased, requiring substantial amounts of time every day.

**KFCA policy about protecting aesthetics conflicts with Charter and FHA**

121. During a Town Hall meeting March 31, 2021, KFCA Management and/or President Jackson stated (paraphrasing) that aesthetics of the community is important. Standards are the standards. We live in an HOA with HOA rules, and we have to abide by them.

122. King Farm is not a Japanese garden or historical architecture. The purpose of KFCA is NOT to maintain aesthetics or architecture, but to benefit Owners, protect their health and

welfare (see Charter purposes, Exh. #O27).

123. If KFCA is a legitimate entity and its Charter sections are enforceable, and KFCA has legitimate justification to enforce the way it wants about home exteriors, then Charter authorizes, and/or requires KFCA to enter Owner's property to remedy the alleged violations.

124.  With structural damages, Charter §3-104 authorizes KFCA to make repairs and bill Owner. Charter §5-104 provides an easement to enter Lots to carry out KFCA responsibilities to enforce Charter, and install columns.  Charter §6-102 gives KFCA exclusive authority to enter and maintain Owner's property that violates Charter (e.g., KFCA must install columns).

**KFCA demands for 2018-Present**

125. During 2018-2019, KFCA sent Owner notices of dozens of violations (e.g., changes), reinstall columns, etc., for violation of Charter §3-102 and §3-104 (not harm to others). Paraphrasing KFCA President, the rules are the rules, and they must be followed.

126. After 2018, Owner attended KFCA BoT meetings, and either spoke and/or submitted requests to KFCA for compliance with FHA, RAM under FHA (e.g., waive reinstall columns), and explained why BoT lacked authority to reverse BoCC. See #O6, #O7.

127. In 2019 KFCA demanded Owner wash, paint fence and structures, cut dozens of plants, trees, etc. Owner spent hundreds of hours correcting alleged violations. KFCA did not find them adequate, filed complaints, demanded hearings and administrative procedures to compel Owner to correct alleged violations. Manager Ruff inspected Owner's house frequently. She found the corrections did not meet her criteria. Owner complained about these matters to the BoT and President, who refused to change KFCA demands. See #O8, #O5.

128. KFCA Manager required that Owner repair, replace, paint **handrails**, columns on his front porch (these are different from columns and railings on the roof over the porch).  Between

2018 and 2019, KFCA demanded from Owner maintenance in over 100 areas (of yard, landscape, house exterior, painting of fence, columns, plants without dead branches (even a tiny one), no plants standing without support (e.g., kill all gladiolus and plants that leaned or required support), plants not touching walls of garage, plants not touching Owner's fence, zero weeds, plants must look neat, nice, plants not trimmed adequately, etc. Practically every aspect of Owner's house was allegedly in violation. Because most of these exterior changes occur weekly, Owner would need extensive frequent maintenance to comply with KFCA demands.

129. Because Owner did not maintain the exterior of his house as required by KFCA, KFCA filed a complaint with the BoCC in 2019. The BoCC had two extensive hearings in 2019. Manager presented her evidence about alleged violations, photos and her extensive testimony explaining the photos and why plants, bushes, etc., were not neat or nice or adequate to meet KFCA aesthetic demands for how Owner's house should look to benefit the KFCA.

130. KFCA Manager explained that Owner's house had columns on the flat roof, Owner removed and did not install them back again. KFCA wanted Owner to reinstall the columns the way they were, as required by Charter §3-104.

131. Owner presented evidence that the house looked nice to him, that he liked his house the way it was, not the way KFCA wanted it to look, that similar alleged violations existed in common areas and other houses. Owner has one of the nicest looking houses in the area. While many Owners keep mostly grass and a few plants, Owner has many plants, flowers, fruit trees. At his home there are bees, butterflies, birds. He has the flower milkweed, needed by Monarch butterflies. KFCA demanded Owner cut and remove a huge apple tree because it was leaning and required support, demanded Owner cut trees, plants, which eliminated bird nests.

132. After two hearings with substantial evidence, **BoCC** (KFCA administrative entity)

rejected and dismissed all KFCA Complaints due to lack of adequate evidence (2019). BoCC

decision, October 3, 2019, #O11.

> "Complainant [**KFCA**] did not provide sufficient evidence that replacement of the railings were required."

133. Thus, KFCA had no legitimate justification to make demands. The BoCC decision

proves that KFCA allowed Owner's changes (e.g., landscape as it was, no fake balcony on flat

roof, etc.), there are arbitrary, capricious decisions within KFCA about which exterior changes

are violations and which are tolerated, and how to apply them uniformly throughout KFCA.

**Management Appeal of BoCC decision on columns, BoT reversal**

134. After the BoCC decision, Manager wrote Nov 1, 2019, to the BoT appealing the BoCC

decision regarding the balcony alleging Owner violated **§3-104**. The letter states:

> "The BOCC dismissed the Complaint on two grounds. First, that the existing landscaping was not proven to be in violation of the current standards and guidelines. Second, that there was insufficient evidence presented that the replacement of the porch railings was required." (referring to the roof balcony). Exh. #O12

135. There is no record in minutes of BoT meetings that the BoT received the appeal,

accepted the appeal, made decisions to schedule a hearing on the Appeal, created due process

procedures, and informed Owner.

136. After about 1 hr. without hearing evidence, Trustees reversed BoCC (March, 2020)

alleging violation of **§3-104**. BoT demanded Owner reinstall columns.

137. This KFCA internal inconsistency interpreting Charter must be resolved to avoid

violations and reduce property restrictions. It means KFCA waives or installs balcony. Properly

interpreting Charter to prohibit management appeals of BoCC eliminates inconsistency.

138. Owner disputes the validity of KFCA rules, its enforcement, and its administrative

procedures. KFCA alleges it has the right to continue to enforce visual appearances (e.g., shape

of plants, no trellis, no shed).

139. The terms Member and Citizen are defined in Charter Appendix One to mean residents over 18 or Owners. Citizen = resident over 18; Member = Titleholder or Citizen. Ruff is a KFCA Manager; she is neither a Citizen nor Member of KFCA (does not live in King Farm).

140.  Charter and Bylaws allow only aggrieved residents over 18, or Owners (Members), to appeal a decision by BoCC. Management cannot appeal a decision against Management. Charter does not authorize Manager Ruff to appeal a BoCC decision.

141. AR#4 is an administrative resolution passed by the BoT, a Community Code, to create procedures to evaluate violations of rules, and mandate corrections by owners. Codes and, consequently, AR#4, must be consistent with and in accordance with Charter and Bylaws. To be consistent with Charter and Bylaws, it means KFCA Management cannot appeal BoCC decision, only Members and Citizens (e.g., owners) can.  KFCA lacks authority to change Charter and Bylaws, which require special voting by owners for changes.

142. Corporate law and practice require BoT decisions be properly submitted to the Board, the Board must vote, the decision and the votes properly recorded in the minutes with a justification or explanation.  Executive or confidential discussions must be summarized in minutes of meeting, and all decisions must be recorded in the minutes of meeting.

143. In the KFCA official records or minutes of BoT meetings, there are no records of each of the decisions made about Owner and his columns. Without adequate records in the minutes, the decisions adverse to owner are invalid.

144. BoT held meeting or hearing in January, 2020, and decided in March, 2020, to overrule (reverse) the BoCC and demand that Owner replace the columns on his roof. The hearing and its decision violated due process and KFCA administrative procedures. There are no accurate

minutes of these decisions. There is no evidence of compliance with due process and requirements for hearings in AR#4.

145. President Jackson wrote to Owner stating that Owner violated Charter §3-104 (not replacing damaged columns), asked Owner reinstall columns. See Letter April 2020. #O16. Jackson's letter omits material facts that Owner has the right to install or not install the railings.

146.  In response to Jackson's letter, Owner requested KFCA do the installation (and maintenance), or waive requirement, or otherwise comply with FHA.

147.  Charter authorizes KFCA to enter Owner's lot and make repairs (without Owner approval). Owner requested that if KFCA wants Owner approval for KFCA to inspect his roof, KFCA must provide a written agreement that waives Owner's liability and the contractors are legitimate, with workman's compensation, etc. In 2020 -2022, KFCA decided not to provide a written agreement to inspect the roof and/or reinstall columns. Instead, KFCA chose to file a complaint with CCOC, a county agency.

**Disability Discrimination Housing requirements and implications for KFCA; discriminatory effects of KFCA housing practices, RPPS (rules, etc.)**

148. KFCA demands have direct discriminatory effects/ impact on disabled Owner because they force him to take time, physical and mental resources to comply with KFCA, as well as risking his and his family's fragile health to maintain the decorative columns without structural purpose. KFCA demands reduce Owner's physical and mental abilities. After working for KFCA demands, he is too tired to move, to think, to write, is in pain, is bleeding more, undergoes significant stress, and cannot do critical tasks in his life. The adverse effects are greater on Owner because of his poor health (disability).

149. Modifying KFCA rules enforcement either by waiving balcony requirement, or having KFCA install and maintain them, is a reasonable accommodation necessary to reduce onerous

maintenance that harms Owner, and prevents full use and/or enjoyment of his house.

150. When a KFCA RPPS stops Owner from full use and/or enjoyment, removing that RPPS is necessary for full use and/or enjoyment. Columns prevent Owner from full use/ enjoyment because they take substantial time and labor, and make his health worse (among other adverse effects). Removing columns is necessary to provide and increase use and enjoyment. Alternatives include removal of columns; changing the house appearance to NOT have columns even if they were installed before, not install columns even if KFCA requires them, replacing columns with planters, KFCA installs and maintains columns, etc.

151. 24 CFR §100.203(a) gives handicapped individuals the right to modify their homes to better enjoy them. It supersedes KFCA rules. It allows Owner to stay at his home instead of requiring the government to subsidize a stay at retirement communities.

152. KFCA and other persons "**DHP**" are requirements, known as codes, covenants, activities, procedures, rules, policies, practices, services (KFCA "**RPPS**"), mostly Charter §3-102, §3-104, prohibiting changes in the visual appearance of the exteriors of structures and Lots without approval, and improper enforcement. (See O#27). KFCA RPPS requires that Owner maintain the exterior of his house (building and landscape) without changes, e.g., looking like new. KFCA does not approve nor allow changes (even though paid by Owner), and demands that Owner correct changes that occur because of weather, growth of plants, etc.

153. In contrast to discrimination by race, where a party may ignore race in its decisions, disability discrimination laws include an affirmative duty to consider disability, consider the adverse impacts of disability, and implement RPPS to ameliorate its adverse consequences (e.g., reduced physical and mental resources, reduced time in life, need more time for health care, reduced stamina, etc.). Defendants must reduce discrimination by choosing among

alternative actions the one with less discriminatory effect, and/or allow modifications or accommodations requested by Owner, instead of filing frivolous or burdensome administrative complaints, sending letters threatening penalties, requiring hearings, etc.

154. KFCA RRPS for columns and other exterior appearances reduces Owner's enjoy of his home and his quality of life. It harms Owner's property and health. Unnecessary fake balcony causes structural hazards due to water leaks and movement; *mitigation or maintenance tasks require time and labor that go beyond a reasonable standard of home maintenance*.

155. KFCA rules enforcement deny housing opportunities because they require onerous maintenance for unnecessary aesthetics, demand substantial physical and mental resources (e.g., labor, time) that Owner cannot provide because of his disability, prohibit reasonable modifications necessary for Owner's use and enjoyment of his house. See Exh #O6, #O7.

156. KFCA RPPS demanding no changes to the exterior of a house without KFCA approval has a disproportionately adverse effect on disabled Owner. See 24 CFR §100.500(b)(2). It requires Owner spend time and labor to keep his house looking the way KFCA likes it, and causes him pain, bleeding, organ damage, and other physiological disorders.

157. Before and after the BoCC rejected the KFCA demands for lack of adequate evidence, KFCA did not withdraw its demands, did not comply with FHA as requested by Owner. Since 2019, when KFCA make a comprehensive, huge list of demands for exterior maintenance, KFCA continued to make those demands via emails to Owner and standards for exterior maintenance created or approved by KFCA. KFCA required continuous compliance, every day.

158. Every day plants, trees grow, paint fades, exterior changes. Every day KFCA may decide Owner violates KFCA appearance "standards", send demand notices, schedule hearings, start litigation *for the same demands made in 2019*, unless Owner provides substantial

physical and mental resources (e.g., time, labor, money) to satisfy KFCA arbitrary aesthetics.

159. The exterior aesthetics maintenance is demanded by KFCA, which creates the "standards" for appearances. KFCA maintains buildings and landscape, far greater than Owners. KFCA has many contractors that do the work constantly around KFCA. Doing the maintenance in Owner's home (e.g., pruning trees or seeding lawn) would take a few hours. If legitimate, KFCA can bill Owner. Owner offered to pay. KFCA doing the work saves Owner substantial physical and mental resources and gets appearances the way KFCA wants them. These are reasonable accommodations, reduce discriminatory effects, are easy to implement. KFCA rejected them and instead chose to harass Owner with frequent hearings and litigation, at a cost to KFCA far exceeding the cost of the accommodations requested.

160. Owner cannot invest in critical improvements to use and enjoy his house such as an elevator, wider doors, upgrade the kitchen and baths, change colors of walls, large TV, fruit trees, and many changes to increase use and enjoyment of his house, because he needs to provide time, labor to KFCA, and making changes unique to his needs, will not increase the value according to the amounts spent, if he must move soon. He also gave up on maintaining a vegetable garden and making changes to his landscape (e.g., build deck, etc.) because it means onerous maintenance or KFCA prohibited it. Moving out is impractical because finding a similar home cost over $1M more than current value of Owner's house.

161. Experience proved that KFCA is frequently NOT satisfied with Owner's maintenance and insists that the exterior of Owner's house should look according to their arbitrary, subjective views. KFCA finds the plants do not look neat, nice, they touch walls, they are too wide or too tall, trees are too tall, etc., (even if similar trees are allowed in other areas). Because KFCA demands are vague, Owner cannot comply with them.

162. Because KFCA knows what it wants, it knows how to do it, it has substantial staff that spends considerable time on similar tasks for common areas of KFCA, it is easy and best for KFCA to do the repairs and maintenance it deems essential to comply with its KFCA RPPS. It takes far less time for KFCA to coordinate and hire the contractors to do the repair and maintenance than the time and money it takes to conduct hearings, pay lawyers, architects, managers, to litigate or coerce Owner to do the work with threats of litigation and penalties.

163. Charter authorizes KFCA to do the repairs and maintenance. It provides an easement to enter Owner's lot without approval. It provides a means to bill Owner.

164. The alternative policies of waiving requirements, or allowing Owner to make modifications to his house as he likes, or KFCA do the repairs and maintenance, are equally or more effective manner to accomplish KFCA purposes with less discrimination, without imposing materially greater costs or burdens on KFCA.

165. Since 2019, KFCA demanded hundreds of hours of time, physical and mental labor for frequent aesthetic maintenance, with adverse effects on Owner due to his disabilities, e.g., increasing his pain and harm. See, e.g., 24 CFR §100.500(b)(4).

166. Doing the frequent onerous maintenance required by KFCA causes Owner to experience urinary bleeding, clots, obstruction, substantial pain in bladder, abdomen and muscles, muscle weaknesses, painful spasms, Owner gets headaches, reduced O2, abnormal heart rate, cannot sleep well at night, he is tired during the day and cannot read, write, think, cannot take care of his health needs and the health and education of his children.

167. As a direct result and consequence of KFCA RPPS, Owner spent huge amounts of time, labor, and continues to do so, to either comply (when feasible) or oppose KFCA RPPS, some of which are absurd or unconscionable or impractical. See e.g., 24 CFR §100.500(b)(5).

168. KFCA justifications are that it is enforcing its architectural and/or landscape standards and/or its code or rules. However, KFCA RPPS do not advance the valid interests of KFCA explicitly stated in its founding documents. KFCA does not have evidence of a direct link and how KFCA RPPS comply with KFCA founding documents and benefit owner. Thus, KFCA RPPS are arbitrary, artificial, and unnecessary. See e.g., 24 CFR §100.500(c)(2)

169. Because of KFCA RPPS, Owner's health deteriorated substantially since 2019, his children's health deteriorated, his children's education deteriorated, Owner's life span declined. Owner cannot do the maintenance demanded by KFCA and cannot sell and move out.

170. Congress removed physical and cognitive barriers to full enjoyment, meaning what people usually do in their homes (study, read, watch TV, play games, eat), which, in the context of an HOA, brings the enjoyment of a private home closer to private homes outside the HOA, consistent with the law everywhere, not allowing HOAs to restrict unnecessarily or improperly the use and/or enjoyment of private homes by disabled individuals.

**RAM requested by Owner is reasonable**

171. Owner wanted to make modifications to exterior, at his expense. His modifications are reasonable, feasible, common in private homes, do not harm, consistent with the purpose of KFCA (to allow modifications that benefit owner).

172. Owner requested KFCA reduce discrimination, discriminatory impact, provide RAM, comply with 24 CFR §100.7, other public laws. Providing the RAM requested by Owner saves time and money to management, lawyer's fees, etc.; it does not alter the nature of the KFCA's operations (e.g., maintain common areas, pool) which have continued for years without a fake balcony in Owner's house. KFCA refused.

**RAM requested by Owner is necessary for use and/or enjoyment of his house**

173. Disabled Owner has less discretionary time or time available for complying with HOA requirements, doing maintenance in his house, than a healthy person. Supervising contractors (stressful, time consuming, requiring movement) causes Owner substantial physical pain, and lasting disruption of physical and mental health (e.g., loss of sleep, ability to concentrate) due to his condition. The requested RAM redresses injuries that otherwise would prevent the disabled Owner from receiving the same use/ enjoyment from the property as a non-disabled person would receive. RAM eliminate unnecessary maintenance that cause greater adverse effects on Owner because of his disability. Example: inspecting the columns require moving up and down more than 20 times. Healthy persons can do this task without pain; disabled Owner cannot because it causes substantial pain, bleeding, shortness of breath, etc.

174. A healthy person has substantial time in life and can quickly inspect and maintain columns. Owner's disability requires substantial time for medical care and increases the time required for other common activities (because of pain, moving slowly, having to stop frequently to go to the bathroom, etc.) Because of Owner's impairments, compared with a healthy person, Owner has reduced ability to install, maintain columns, prevent water leaks, which require physical and mental resources (e.g., thinking about it, planning, looking for alternatives, worrying about leaks, etc.). Due to disability, what would not harm another person to go on the roof for several hours, causes pain and physical harm to owner as well as being physically dangerous. It takes him substantial time to do inspections.

175. Frequent maintenance of columns, standing on the roof inspecting tiny cracks in caulk, going up and down more than 20 times to inspect about 30+ different sides of 9 columns for potential water leaks and provide preventive maintenance, worsens owners' physical and mental health, causes physical pain, urge to urinate frequently, interferes with thinking, sleep,

eating, increases diarrhea, causes bleeding, clot formation, pain that lasts days, urgency to use the bathroom, headaches, etc. Without columns, Owner does not suffer, has reduced pain, bleeding, headaches, sleeps better, can more fully use and enjoy his house.

176. Roof design requires column support (e.g., nails. #O24-26) pierce the roof. No Columns prevents water leaks. Having KFCA provide the maintenance will affirmatively enhance the disabled plaintiff's quality of life, by ameliorating the effects of the disability, namely he will not damage his health frequently to inspect and repair columns after rains, strong winds, snow, have more time, physical and mental resources for himself and family.

**RAM requested by Owner ameliorates disability effects**

177. Owner is an MD, PhD with over 1,000 hours of Continuing Medical Education, thousands of hours attending medical conferences and studying medical articles, over 30 years of education, training and clinical experience in laboratory medicine (measuring biomarkers), 30+ years evaluating and treating patients with inflammatory bowel disease (**IBD**), abnormal lipids, cardiovascular disease (**CVD**). He taught physicians how to optimally diagnose biochemical disorders; wrote articles in peer reviewed journals about nutrition, IBD, lipids, CVD. He has unique, extensive expertise in his health conditions and those of his children.

178. The KFCA RPPS is the direct cause of adverse discriminatory effect; if Owner does not do work demanded by KFCA, then Owner does not suffer their adverse consequences. KFCA demands reduce Owner's discretionary time, time left after essential health care, eating, sleeping, and other critical life activities. Each RAM requested saves time and physical effort, or contributes to joy, increase use and/or enjoyment of a house.

**A reasonable accommodation requested by Owner**

179. Not installing and maintaining columns is a reasonable accommodation necessary to

afford Owner equal opportunity to use and enjoy a dwelling by removing the onerous maintenance, physical labor that Owner cannot provide due to his health and family.

180. The requested **accommodation** is indispensable or essential to equal opportunity to use and enjoy his house. Column maintenance reduces the limited time that disabled Owner has (because of his disability) to spend with his health, lifestyle, children, watch TV, writing, etc.

### KFCA Covenants and/or RPPS

181. The KFCA requirement for no exterior changes is arbitrary, capricious because changes occur every day. It is impossible to objectively, measure exterior changes. Plants grow, paint changes color, etc. KFCA management decides, on subjective reasons, when exterior changes are violations. Because Owner has one of the largest houses with most plants, he receives dozens of notices of alleged violations.

182. KFCA must use reasonable RPPS that benefit Owner (not arbitrary, or capricious ones). This requires a cost/risk/benefit analysis of consequences of an exterior change to the Owner and his home. Factors such as danger to the public or other Owners must be considered and compared with costs and benefits to owners. KFCA does not conduct this analysis and simply alleges exterior changes violate KFCA rules.

183. Over the years, different KFCA persons interpreted matters differently. What was allowed one year became a violation in another year. KFCA enforced these rules against Owner differently than other houses or common areas, mandating close to zero weeds, zero soil without grass or cover, cut trees short, etc., frequently requiring mandated work every week because Owner's house is large and has more plants than other houses.

184. Each KFCA manager has different understanding of how to enforce the rules. The BoT had different resolutions with different criteria which differed from the interpretation of KFCA

BoCC (which interprets rules!). It is impossible to have an objective understanding.

185. During many conversations with KFCA managers and trustees, Owner heard many different interpretations. KFCA manager, BoCC and BoT disagree on whether the columns must be reinstalled or not; they disagree on the facts about the effect of the columns on the property, aesthetics, disagree on the looks of landscape.

186. In 2019, BoCC rejected most of the interpretations (alleged violations) by KFCA about landscape, structures, painting, shape of plants, etc. (dozens of alleged violations) due to lack of evidence. This proves that KFCA cannot agree with itself, trustees disagree with BoCC, which is part of their own HOA management and procedures.

187. It is impossible for Owner to know, when he purchased his house, how KFCA would interpret the changes in the exterior of his house UNLESS they were interpreted in accordance with Charter purpose, namely that changes are not a violation when they benefit Owner, and do not cause specific harm (not speculations) to others.

**KFCA did not follow its procedures to prosecute claim against Owner about columns Compliance with Corporate and HOA State laws**

188.  The decision by KFCA BoT to mandate Owner to install columns involved, at least, the following separate decisions or chain of steps. Each step requires compliance with KFCA procedures and corporate law. Failure at one step breaks the chain, means failure for the entire sequence: Allow KFCA management to file an appeal with the BoT (critical because it did not comply with KFCA covenants). Accept the appeal. Schedule a hearing. Conduct a hearing. Decide. Reverse BoCC (which requires special findings of fact). Instruct President Jackson to write a letter to Owner about decision. Written minutes of these decisions are inadequate and do not meet statutory and KFCA requirements. The decisions are invalid or may not exist.

189. BoT discussed Owner with KFCA management and KFCA lawyers. The purpose of

these discussions, outcome, decisions, must be reflected in public minutes. They were not.

**Harassment and/or retaliation Interference with FHA**

190. Defendants knew Owner was handicapped and had very limited time in life. They knew Owner could not perform the maintenance mandated by Defendants on his house nor comply with administrative procedures. They knew Owner wanted to modify his house to improve full use and/or enjoyment. Defendants reviewed requests for compliance with FHA and/or modifying KFCA RPPS, architectural barriers, or requirements that created physical and mental demands (e.g., administrative proceedings, time, physical work).

191. KFCA created a hostile environment by subjecting Owner's house to frequent inspections, identifying alleged violations of exterior appearances, sending demand letters and conducting hearings, demanding Owner spend hundreds of hours correcting alleged violations (most found by KFCA BoCC to have no legitimate evidence or justification), forcing Owner to spend hundreds of hours in administrative proceedings (e.g. attend 3 extensive hearings about alleged violations of home exterior, months of litigation in a county administrative agency and state courts), rejecting Owner's requests for RAM. These actions reduced Owner's physical and mental resources (e.g., stamina, time to read, write), interfered with housing opportunities.

192. KFCA is a large HOA, maintains 2 pools and many buildings. It has armies of employees, contractors. It is in the business of repair and maintenance of buildings and huge landscapes. It could easily manage Owner's exterior appearances demanded by KFCA.

193. KFCA compelled Owner to spend time and labor (physical and mental resources) on subjective, aesthetic exterior appearances, architectural barriers to his use and/or enjoyment, knowing they interfere with his purpose in life, his health care, children's life, cause reductions in life span, and delay this federal complaint for civil rights violations.

194.  Despite an unfavorable decision by KFCA BoCC internal administrative entity, KFCA filed a county Complaint to reduce physical/ mental resources from Owner by defending administrative proceedings instead of pursuing federal complaint about FHA.

195.  For KFCA demands, KFCA could provide RAM, waive unnecessary repairs/ maintenance, allow Owner's modification, or do the work to correct alleged violations. Example: KFCA complained about Owner's yard, alleged weeds, spots without grass (even though many houses and common areas were in worse condition). KFCA spends a few hours per year maintaining areas around Owner's house, larger than his yard. KFCA could have done Owner's yard for less time and money than to send complaint letters, hold hearings, etc.

**KFCA Filed a complaint with CCOC, part of MoCo, local government in MD, which did not afford due process, violated US constitution and federal laws**

196. KFCA filed a complaint with CCOC agency, part of MoCo, local government in MD, demanding Owner replace railings on his porch. CCOC reinterpreted KFCA complaint to mean reinstall columns on roof. The CCOC law, hearing, decision are invalid. It violates 42 USC §3615 because it supports KFCA's DHP herein described, including ignoring disability when implementing KFCA Charter. CCOC refused to explain procedures to present evidence, allocate time for evidence, did not provide adequate opportunity to present evidence (e.g., gave 3 minutes to Owner to end evidence without prior notice, while allowed KFCA all the time it needed), did not provide adequate notice of the relief requested, did not afford due process.

197. On July 9, 2021, CCOC issued a Decision and Order, signed by Fleischer, Panel Chair. The order states as follows (facts alleged by KFCA, CCOC at #O20):

"1. All pending motions filed by Respondent . . .[Owner] are DENIED as moot.

2. Respondent . . . [Owner] shall, at his own expense, within 60 days following the date of this Decision and Order, take one of the following two actions at his election:
   He must submit a new design review application to Complainant King Farm Citizens

Assembly, Inc. for reinstalling the columns and railings on his roof overhang. He is free to include in his application any feasible method of reinstallation, including one that does not involve piercing the TPO covering the overhang. He must negotiate with Complainant in good faith to resolve any changes or objections Complainant may have with the application and then proceed diligently to reinstall the columns and railings in accordance with the application as approved; or He must commence and diligently pursue reinstallation of the columns and railings on his roof overhang in the same manner as originally installed."

198.  CCOC order creates two options for Owner: (a) Prepare a New Design Review Application (**DRA**) with alternative designs to install columns (CCOC cannot and does not prohibit Owner and KFCA from agreeing to something else or complying with FHA), or (b) reinstall columns as they were. Owner filed a new DRA, requested from KFCA no columns or planters as a reasonable, necessary modification or accommodation to comply with FHA.

199.  The CCOC decision neither authorizes nor requires KFCA to violate FHA. If it did, the CCOC decision violates 42 USC §3617 and/or 42 USC §3615, and is invalid. [13] The duty of KFCA and persons to comply with FHA is the same with or without CCOC decision.

200.  Defendants cannot coerce, intimidate, threaten, or interfere with Owner's right to file a civil rights complaint in federal court. The following KFCA actions are inconsistent with 42 USC §3617, or 24 CFR §100.400, or affirmative duty to reduce discrimination, e.g., 24 CFR §100.7, or interferes with rights to file complaint in federal court: (a) refusal to provide name and address of each defendant, even though they must provide their name and address as part of the public KFCA records, and force Owner to spend substantial resources to find them; (b) file frivolous motion in State Court to compel Owner to waste time; (c) demand extensive justifications for modifications to his house under HUD regulation 203(a), justifications not required by law, which take huge amounts of time to prepare; (d) use incorrect interpretation of

---

[13]  It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . ., any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. 42 USC §3617. 24 CFR §100.400(b), (c)(l) and (c)(2) (2012).

the law to require long explanations from Owner to justify his reasonable and necessary modifications; ( e) Overwhelm Owner with paperwork by refusing to respond promptly (requiring more inquiries) or stating Owner's explanations are not adequate; (f) instead of agreeing to modifications or accommodations, KFCA demanded responses to complex allegations of violations, 3 complex hearings and further litigation.

201. Since 2018, KFCA alleged that Owner violated KFCA rules every day that the columns were not replaced. KFCA wrote Owner letters and made oral demands to replace the columns, as well as administrative litigation (e.g., 3 hearings and multiple communications), complaint with a county administrative agency. KFCA activities required over 1,000 hours of Owner's time to respond and oppose KFCA's demands.

202. Each day that Owner did not want columns in his roof, and KFCA required them under alternative demands, each day that KFCA fails to comply with FHA, or prohibits owner from implementing a modification, is a separate act of unlawful discrimination, an FHA violation that causes substantial harm to Owner.

203. Every day Owner had to spend physical and mental resources to prepare to install the columns and respond to KFCA demands and/or spend time in hearings, litigation. KFCA coercive actions, caused substantial stress, inability to think and sleep, physical pain, urge to urinate (causing pain) and other physical and mental problems, deprived Owner of use and/or enjoyment of his house, time in life which cannot be recovered due to his age and short life expectancy, loss of time and labor to defend civil rights.

204. KFCA hires armies of workers, contractors, lawyers, staff, to manage the paperwork, make copies, mail documents, coordinate matters, etc. Each of the persons profit, they make a living and get paid from litigation. All this is supported in part by Owner's KFCA dues. They

cause onerous litigation burden upon disabled Owner. Defendants have an obligation to implement procedures that reduce discrimination and discriminatory effects.

205. In contrast, Owner must pay for everything. The task of managing huge litigation disputes is extraordinary. It violates the purpose and letter of FHA, e.g., §3615, §3617, to use fake, invalid claims to power or authority, to coerce or intimidate Owner to provide money, time, services for the benefit of KFCA or persons (e.g., KFCA President).

206. KFCA had 'actual knowledge' of discrimination by their subordinates and associated persons, and exhibited 'deliberate indifference' to that discrimination. KFCA, President, Trustees, manager, ADT, received copies of documents. KFCA had a duty to respond promptly, to requests for compliance with FHA and ADA.

207. KFCA forces the Owner to install and maintain the columns though coercion, intimidation, penalties, threats. State laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. [14] FHA 42 USC §3615 preempts any law which permits a DHP. [15]

208. KFCA intended each alleged violation to be a separate daily violation and treated each violation separately. Each rule KFCA enforced, and each activity, had daily consequences.

**Owner did not violate, he complied with Charter**

209. Charter §3-107 PROHIBITS Owner from keeping columns that damage Owner's house. The columns leaked water and damaged roof. This is detrimental to Owner's property. A house damaged by water leaks is worth less.

---

[14] See *Astralis Condo. Ass'n v. Sec., U.S. Dep't Hous. and Urban Dev.*, 620 F.3d 62, 64 (1st Cir.2010). From *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-19 (11th Cir.2008).
[15] 42 US §3615. https://www.law.cornell.edu/uscode/text/42/3615. "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."

210. KFCA §3-107 requires Owner to remove columns and not put columns. Without columns, the risk of water leaks caused by columns is ZERO. With columns, the risk of water leaks is NOT zero. No columns, no holes, no water leaks, no harm.

211. Removing and not installing the columns prevents further damage to Owner's property and his well-being (e.g., he will not spend substantial time outside, removing water, ice, snow and preventing water leaks, risking a dangerous fall off the roof or a ladder). Keeping the columns damages Owner's property, violates Charter.

212. Owner has attempted resolution of these matters and has exercised good faith efforts to seek voluntary compliance with the ADA and FHA, without success. All conditions precedent to the filing of this Complaint have occurred or been performed.

**KFCA, BoT, President violated KFCA administrative procedures**

213. The BoT minutes do not provide a summary of the evidence at the hearing to demand columns on Owner's roof (Jan, 2020), do not provide a justification for BoT reversal of BoCC decision, do not provide the evidence required by AR#4 4.4 to reverse BoCC (#O27).

> "The Board of Trustees shall review the matter on both the law and the evidence. It will not set aside the decision of the BOCC on the evidence unless clearly erroneous, and it will give due regard to the opportunity of the BOCC to judge the credibility of the witnesses."

214. The BoT did not and could not give due regard to judge the credibility of the witnesses because there were no witnesses at the BoT hearing, there was no transcript, there was no evidence from the BoCC witnesses. Thus, BoT could not evaluate the credibility of witnesses at the BoT or BoCC hearing. Further, Management Appeals to BoT violate Charter.

**Coercion or intimidation by "vigilantes"**

215. N. Paul, during about 2 years relevant to this complaint, was a Trustee of KFCA. She used her email to comment about Owner's activities and alleged violations of KFCA rules and

opinions she had about him. She asked most of the questions at the BoT hearing of Jan, 2020,

that reversed the BOCC decision and decided that Owner must install columns on his roof.

216. Email from Paul (a trustee) to Owner Feb, 2020. "You are mad that you did things to your property you weren't supposed to do and got caught." Owner wrote: Because you are a trustee, your statement that "did things to your property you weren't supposed to do and got caught" indicates wrongdoing and is harmful to me, my well-being. Please explain with all the needed detail so I can correct; if you cannot justify it properly, please let me know. Ms. Paul did not respond.

217. The email reflected comments Paul made several times, that Owner was a wrongdoer, a

frequent violator of KFCA rules, and he should be punished because his house did not look

nice. However, the BoCC rejected ALL claims by KFCA, so the wrongdoer is KFCA.

218. Many "vigilantes" knew about the alleged violations, insulted Owner at his house,

threw garbage, chemicals. Over the years, vigilantes (not identified) told Owner that he must

comply with KFCA demands or move out. Unknown persons cut Owner's car tires several

times, threw large rock with great force destroying a strong double window and sending glass

over a wide area, barely missing people in the house. There were death threats, damage to

different parts of car or house. Owner reported to police several times. Nothing happened.

219. Owner offered the police chief of Rockville to use $10,000 as reward to find the

wrongdoers, which he said was more than enough, that he would work out the details with

Owner. Despite multiple attempts to follow up (by Owner), the Police Chief did not follow up.

220.  In 2021 a cyber stalker sent threatening emails to Owner, threatened to file fake or

frivolous complaints about Owner with government entities, alleged government lawyers

ignored Owner's complaints. An unknown person filed a frivolous complaint with the City of

Rockville which sent 2 individuals to extensively investigate Owner's lot. In 2021 volume of

harassing email and phone calls increased about 10x. Multiple calls from someone who claims

to be Owner's son or grandson, from DEA, IRS, government agencies, etc., malware emails,

etc., consistent with someone reporting Owner's phone and email for harassment, about same time as Owner indicated specific plan to file civil rights complaint. The phone calls and emails overwhelm Owner because they are mixed with valid emails and phone calls (see Exh #O2).

**KFCA refused Owner's request for reasonable modification to move a horizontal shed to his porch, build a shed, a stone patio, and a Trellis**

221. KFCA rules require approval for any outside change that can be seen from the street. Owner's house is in a corner, so practically every side from the house can be seen from the street. Before Owner purchased his house in 2001, he asked about enforcement on his house. He was told changes would be approved unless they were unreasonable. However, recently rule enforcement is strict and most Owners' requests for modifications are denied. This has changed over time and is subject to the vagaries of the people in power at the KFCA at a given time.

222. Owner requested the modifications of having a brick patio in his back yard, a small storage shed, a small horizontal storage unit on his front porch for garden items, and a trellis for grape and climbing plants.

223. Owner modified his house and put bricks on part of his back yard. Apparently KFCA approved them only if there was a base of stone and sand under them. Owner put them on soil.

224. In 2013 KFCA demanded that Owner remove a brick patio in the back of his house. KFCA sent demand letters and held hearings, imposing a penalty of $500 and huge daily penalties unless Owner immediately (in cold weather) removed the bricks and planted grass. Owner again explained his disability, provided medical records, and requested RAM and less discriminatory activity of keeping his patio bricks. KFCA alleged anti-discrimination law and FHA did not apply, and ignored Owner's requests for RAM and less discriminatory action. KFCA said it does not need to comply with Owner's requests.

225. The bricks are barely visible from the street. Many houses and paths in KFCA have

bricks or similar stones laying directly on the ground. Bricks make it easier to walk in the back, important to access the back of the house safely when it is wet, there is ice, snow.

226. When it rains or snows, the lawn becomes very wet and muddy. It is dangerous, slippery to walk on the ground, which is necessary to move garbage cans, check downspouts, etc. The bricks in the back reduce the risk of falling. Without bricks, it is more difficult and painful for owner to walk on the mud and water than it would be for a healthy adult.

227. KFCA sent demands and prosecuted Owner for having a patio, forcing him, while his son was hospitalized and later requiring 24-hour medical treatment for months, to remove bricks from a patio in his back yard, and replace grass during cold weather.

228. The garage door faces the back of the house. Due to theft, Owner must keep the door closed and locked. Owner's large yard requires many tools, lawnmower (several), shovels (many), snow removal devices, saws, cutters, bags of seeds, plant food, etc., required to perform necessary maintenance. It takes substantial time to open garage door, take tools out, lock door, and walk where tools or garden items are needed. A shed requested in the back of the house is reasonable and necessary because it reduces movement, pain, benefits owner.

229.  Owner requested a horizontal storage container on his porch to have easy access, save time, labor, and alleviate physical pain. The storage is barely visible from the street, covered by plants, and allows lawn chemicals, and tools to be stored in the front.

230. Without these modifications, Owner must spend substantial more physical effort and time to retrieve and store garden items in the garage or house (far from where he needs them, the lot is large).  Owner's disability makes each of these activities more difficult than to healthy Owners; the modifications make them far less difficult, cause less pain, less time and labor.

231. The modifications ameliorate the adverse effects of disability, offers Owner more equal

opportunity to use and/or enjoy house.

232. KFCA did not provide legitimate evidence the modifications were not reasonable or not necessary or otherwise did not meet FHA and/or ADA requirements. Instead, KFCA justified because KFCA rules authorized KFCA to deny modifications (even though Charter encouraged and allowed modifications), and KFCA did not consider disability.

**2021 New Design Review Application (DRA) to install columns on roof or alternatives**

233. Without columns, the new roof is one single membrane sheet uninterrupted from house wall to edge. It is impossible to secure columns through membrane into wood infrastructure without making holes. Even if sealed well, the columns move, holes expand with temperature, caulk cracks, water accumulates around heavy columns (which make depressions in soft roof). Contractors refuse to guarantee that installing columns will not make holes (it is not difficult to install columns, what takes time is the frequent maintenance to prevent water leaks).

234. Every day since at least 2019, KFCA refused to allow Owner NOT to reinstall columns and sought to compel Owner to reinstall them. After July 9, 2021, KFCA offered Owner two options: reinstall columns as they were, or submit a new application for changes.

235. On and after September 7, 2021, Owner submitted to KFCA, manager Ruff, Trustees, President, ADT, several documents. A new design review application (**DRA)** with alternative designs for his roof, new request not to have the columns as **RAM**, or less discriminatory action, necessary to fully use and/or enjoy his house, a right under FHA and ADA.

236. These events create new KFCA administrative procedures (preparing application, review by architect and committees, appeal to Trustees, etc.), notification of neighbors, etc. Instead of approving and allowing Owner's modification request (i.e., no columns), Manager Ruff and KFCA Architect demanded that Owner expand his application with more diagrams

and explanations.  KFCA required meetings with architect and architectural committee (ADT) to review options to install columns and alternatives. ADT rejected option of no columns. Requiring columns substantially increases Owner's damages, interferes with Owner's life (due to continuing maintenance requirements), creates hazards from structural damage, and the Owner falling during the frequent maintenance.

237. To avoid penalties due to delays, Owner prepared columns for installing them on the flat roof (e.g., remove old nails, sand, paint, repair damaged wood) following one of alternative new designs reviewed and/or approved by KFCA architect, manager, Trustees and President.

238. KFCA process to review ADT applications asks detailed architectural specifications and drawings not required by FHA. KFCA does not ask evidence required by FHA, but Owner provided it. See Owner's affidavit #O2.

**KFCA responses or justification to Owner's request for compliance with FHA, requests for RAM; KFCA refused to consider Owner's disability in its enforcement of RPPS**

239. HOA requires Owner apply to KFCA architectural committee and Trustees every time he wants to modify the exterior of his house to better use or enjoy his home. The application requires extensive explanations, justification, consultations with neighbors, etc. In a large house and lot like Owner's, there are weekly changes to the exterior that would require frequent applications for modification, an onerous administrative task.

240. KFCA defenses or responses are that (a) FHA and ADA does not apply to the disputes; (b) KFCA treats every resident equally; (c) Owner did not prove a nexus between his disability and his requests for RAM (KFCA changes rules used to deny or prohibit the modifications wanted by Owner or KFCA makes the maintenance it demands).

241. The following are responses to interrogatories to KFCA from Owner, during administrative proceeding, signed by KFCA: (see exhibits #O18, #O19):

**Interrogatories #1** from Owner, "Describe in detail all activities or responses KFCA conducted or provided in response to Owner's request for compliance with fair housing act FHA and ADA (which includes requests for RAM by Owner) since January 1, 2017".

**KFCA responses #1**: "Subject to and without waiving the foregoing objection, KFCA asserts that the Federal Fair Housing Act ("FFHA") and the Americans with Disabilities Act ("ADA") do not apply to this situation. The ADA applies only to a place of public accommodation and this is a private home. The FFHA does not apply since the Respondent has failed to establish a nexus between his disability or disabilities and his request to modify his home in violation of the KFCA governing documents. Accordingly, KFCA is in compliance with FFHA."

**interrogatories #4**, "Describe in detail your explanation of why KFCA did not discriminate, in any way, against Owner, including disability or family.

**KFCA responses #4** "The violations noted on the Respondent's [homeowner] home were done in due course during property inspections and other Owners were cited for violations as well. At no time did KFCA issue the violation notices or take the subsequent enforcement actions as a result of Respondent's family or disability. KFCA does not maintain information regarding families or disabilities of Citizens [what KFCA calls residents], therefore none of that is considered during the inspection of properties or the subsequent enforcement action. The KFCA Board of Trustees is required to enforce the governing documents.".

242. The decision makers, KFCA management, Trustees, President, architect, took actions consistent with KFCA policy or practice to ignore Owner's handicap. Among other things, Owner was told that FHA did not apply to ADT and BoT decisions, that his disability was irrelevant to the issues in dispute (e.g., alleged violations and required corrections).

243. In implementing their RPPS for exterior maintenance, defendants ignored Owner's disability and RAM, ignored their affirmative duty to assist the disabled Owner and reduce the adverse effects on him of KFCA RRPS (rules, etc.). These discriminatory RPPS were not necessary to comply with KFCA governing documents or to investigate alleged violations.

244. "The BoT met on October 27. 2021. After reviewing the matter (Owner's request), the Board voted to deny the request." "The Board found that you had not provided the nexus between your disability and the requested modification." "In order for you to be entitled to the reasonable modification, you must show that the modification is necessary for you to have an equal opportunity to enjoy your home in the same manner as someone who is not disabled." (KFCA wrote Oct 29, 2021).

245. Owner responded explaining why KFCA justifications are not valid. FHA law 42 US §3604(f)(3)(A) do not require "an equal opportunity to enjoy your home in the same manner as someone who is not disabled" as required by KFCA.  Owner also requests no columns as the least discriminatory alternative under §100.500.

246. Either KFCA enforces its Charter incorrectly (in violation of contract law and/or Charter) or in violation of FHA. Either way, KFCA uses its governing documents to make demands that Owner put a fake balcony on his porch roof, and reject modifications.

247. KFCA creates burdensome administrative proceedings for modifications with adverse consequences for disabled Owner. KFCA uses either complex requests for approval (with detailed architectural descriptions not required by FHA), frequently denied, or complex demand letters for compliance with rules, followed by hearings, or requests for extensive justification, without implementing affirmative duty to reduce discriminatory effects.

248.  For each modification or accommodation Owner requested, Defendants had a choice allowed by governing documents: make life easier for Owner, allow RAM, or provide the maintenance demanded by KFCA (e.g., prune trees or install columns). Instead, KFCA, Trustees, President chose to ignore BoCC decisions, chose to conduct 3 hearings, chose to file complaint with county agency. KFCA interpreted the governing documents to make life more difficult for Owner, to create onerous administrative procedures, to have discriminatory effects, to demand substantial physical and mental resources (e.g., time, labor) knowing they would make Owner sicker, cause physical and mental pain, reduce use and/or enjoyment of his home.

249. Public policy and affirmative duty to implement and enforce FHA require that KFCA rules and Charter be interpreted to reduce discriminatory effects and increase (full) use and/or enjoyment of private homes. Demands by KFCA for aesthetic appearances must be met by

either waiving an aesthetics requirement, or KFCA does the work it requires for compliance.

250. KFCA directors and agents have no immunity from FHA, in part because their act or omissions are material to the claims herein, or they were in bad faith or violation of Charter.

251. "To the extent that you have asked for explanations regarding the Fair Housing Act, the ADA and litigation, we have already responded to your questions on those issues and no additional response shall be given here." KFCA email Jan, 2022.

**The process to allow or deny reasonable modifications is arbitrary, capricious, burdensome**

252. The process used by KFCA to allow or deny reasonable modifications is arbitrary, capricious, burdensome. For each modification, Owner must write a detailed explanation about its purpose, a detailed description, submit to the ADT (architectural committee). The ADT meets, Owner must attend meeting to explain issues. The ADT usually rejects the request with brief subjective, arbitrary explanation. Owner must request reconsideration, then appeal to the Trustees. Each time Owner gets a rejection which rarely explains how Owner can overcome rejection. For example, Owner requested Trellis, Shed. KFCA rejected without indicating which specific modifications were needed for approval. With thousands of alternatives, it is impossible for Owner to submit all.

253. The process of requesting approval of reasonable, necessary modifications requires and uses Owner's physical and mental resources (e.g., time, movement, stress, etc.). He must concentrate on properly writing, presenting and appealing his requests. The process deprives the Owner from essential physical and mental resources needed to take care of his health, his life, his children, use and/or enjoy his home. Allowing reasonable and necessary modifications promptly saves substantial physical and mental resources (e.g., time, labor, physical movement, stress, pain) to Owner (and saves time and money to KFCA).

254. KFCA evaluates Owner's requests for modifications using its arbitrary, capricious

standards for exterior appearance instead of using the FHA requirement of reasonable and necessary. KFCA rules and burdensome administrative procedures make it a violation for Owner to modify his home without KFCA approval (enforced via hearings and litigation). Federal law makes it unlawful to refuse to permit reasonable, necessary modifications, or refuse to make reasonable accommodations.

255. KFCA architect created subjective architectural rules for the exterior look of houses and decided that Owner's house must have a decorative balustrade, columns supporting railings to meet his aesthetics. This requirement was neither written into the Owner's contract to purchase, nor was recorded with KFCA documents as required by law.

256. Owner repeatedly requested either to modify his house not to have columns, or to approve a design application without columns or to waive the architect's rule to have columns. Each time the Architect and/or ADT rejected the request.

257. On December 15, 2021, the ADT met to review several alternatives by Owner regarding columns on his roof. The Architect and the ADT voted to reject Owner's design modification request for no columns. KFCA President and general manager attended the meeting and did not object to the ADT and architect's decision.

258. Owner submitted explanations why the columns are difficult to install, require onerous maintenance, cause water leaks, and made the reasonable, necessary request not to have them to better use and/or enjoy his house and reduce adverse effects of columns on his disability. The Architect and ADT rejected the requests under FHA and/or ADA and/or Charter rules via email Dec 23, 2021, other  (Exh #O26). Architect and ADT denies approval to not install columns (and railings, the decorative balustrade). It states as justification:

"The application makes representations regarding issues of discrimination regarding FHA Fair Housing Amendment Act (and possibly the ADA - Americans with Disabilities Act).

The recommendations included above take no action on these items as they are outside the duties of the King Farm Community Architect and The King Farm Architectural Design Trust. P.6 memo Oct 8, 2021, received by Owner via email Dec 23, 2021."

259. Owner asked ADT to reconsider denial of FHA compliance. He included appropriate explanations, adverse consequences to his health, specific requests for FHA compliance. ADT reconsidered them and denied the requests again. KFCA management was present at an ADT hearing where Owner discussed these issues. ADT and KFCA management wrote to Owner:

*"Reconsideration Basis: Reconsideration is requested with a justification regarding ADA and FHAA. See below regarding ADA and FHAA".* "Recommend DisApproval with Notes" (March 11, 2022). Email from KFCA management, ADT, Architect to Owner. Exh. #O26

260. The architect and members of ADT are persons covered by FHA and ADA, they have an obligation and affirmative duty to comply with FHA and ADA. KFCA justification (e.g., explanation provided by ADT, Architect and KFCA) is not adequate to overcome the right to modify one's house explicit in FHA §100.203(a), §100.204(a), §100.500. Further, knowing the columns had adverse discriminatory effects on Owner, neither ADT nor Architect nor President nor KFCA implemented a less discriminatory decision required by §100.7, §100.500. Persons like Architect, and ADT chair, cannot avoid compliance with disability discrimination laws and regulations by alleging requests for compliance are outside their duties. Otherwise, every person would do it and nullify the law.

**Responsibility of each Defendant**

261. In acting or omitting to act as alleged herein, each Corporation Defendant was acting through its employees, officers, and/or agents and is liable based on the acts and omissions of its employees, officers, and/or agents.

262. Absent judicial redress, Defendants will maintain their discriminatory policies and practices, and the consequent injury to Owner will continue. Owner has been forced to divert

physical and mental resources, e.g., time and labor, to counteract Defendants' conduct. Time is

our most valuable resource. Time allows for better use and enjoyment of one's home and life.

https://www.mdlinx.com/physiciansense/why-and-how-busy-doctors-should-buy-more-time/

263. There is no legal privity among the defendants KFCA, President, Trustees.  Each can

allege that it did not discriminate, and followed orders. KFCA defense could be that it did not

discriminate, KFCA President and Trustees acted outside the scope of their authority. There are

no records (e.g., board minutes) that all their actions were properly authorized. [16]

264.  If the Court finds Defendants violated federal law, then their actions violated Charter

which prohibits violations of federal law. They must all be tried together to save time, money,

facilitate justice and fair resolution of claims. Federal Court has jurisdiction over the relevant

state claims (which can resolve to simplify justice, save time and money, avoid inconsistencies

with federal law, as they involve constitutional rights to due process and property).

265. KFCA requirement that Owner put and maintain columns on his flat roof has

discriminatory effects on Owner and violates 24 CFR §100.500. The requirement for columns

has a disproportionately adverse effect or impact on disabled Owner because it makes his

health condition worse, forces him to spend his very limited physical and mental resources to

satisfy KFCA instead of his health, children, lifestyle (violates 24 CFR §100.500(a)).

266. The demand that Owner installs and maintain columns for appearance is arbitrary,

artificial, and unnecessary to achieve a legitimate objective. Most houses in the neighborhood

do not have fake balcony. The fake balcony harms Owner and do not reduce discriminatory

---

[16]  The interests of KFCA and those of the President and Trustees are opposed. For a house
owner, it would be better if KFCA alleges discrimination is caused by the President or Trustees
acting outside their fiduciary duty and authority. If KFCA loses, and is subject to penalties under
FHA and damages, owners could be liable for assessments. Many disabled individuals could
choose to file an action against KFCA, and it is in its best interest to deny authority. Further, the
President and Trustees should have lawyers different from KFCA.

effects required by §100.7. Any legitimate, nondiscriminatory interests supporting the challenged practice of fake balcony could be served by another practice that has a less discriminatory effect, e.g., waiving the requirement, or the KFCA installing and maintaining it.

267.  Rules about appearances or aesthetics are not legally sufficient justification because the evidence is hypothetical, speculative, subjective. It is impossible to objectively measure the speculative alleged benefits of looking at the columns in Owner's roof.  KFCA's standards are subjective and have been applied differently at different times.  Defendants did not present legally sufficient justifications for their behavior that complied with §100.500(b)(2), §100.7.

268. As a non-profit corporation, KFCA avoids paying taxes which is a federal benefit or taxpayer subsidy. For accommodations to KFCA mandates, it is fair to require KFCA to spend money to allow disabled to stay in their homes, comply with maintaining their homes as KFCA requires, reduce aesthetic requirements to better allow disabled Owners stay in the home of their choice, allow modifications reasonable, necessary to use and/or enjoy their homes. These actions allow Owners to stay in the home of their choice instead of retirement communities, prevents disease and premature deaths, saves government money from payments to retirement homes, fulfills purpose of non-profit status of KFCA, subsidized by taxpayers.

269. Manager Ruff refused Owner the reasonable and necessary modification to his home as he wished (all issues considered by BoCC at its 2019 hearings). Manager Ruff and/or KFCA could easily allow Owner to modify his house as he wanted. Examples include painting only a few spots of the fence that were dirty instead of washing, sanding, painting a fence over 100 ft long; no columns on roof, keeping plants and trees as they were, as Owner liked.

270. By requiring maintenance of the aesthetic architectural barrier, decorative columns, which Owner cannot provide due to his health. KFCA intentionally makes it impossible for

Owner to use and/or enjoy the house of his choice. KFCA creates aesthetic maintenance and administrative barriers for one disabled Owner, under the pretense of equal rules for all.

271. Even if KFCA had valid reasons to deny Owner's modification, the fact that KFCA violate its affirmative duty to consider disability proves KFCA violates FHA. An entity that violates FHA as a matter of policy or practice or procedure must be dissolved or otherwise not allowed to oppose Owner's modification because KFCA creates a huge barrier of requirements and paperwork for Owner to prove its civil rights.

272. US Supreme Court requires removal of "artificial, arbitrary, and unnecessary barriers."[17] The fake balcony is an artificial, aesthetic, arbitrary, unnecessary barrier to use and enjoy Owner's home.

273. Each exhibit attached to this complaint is an accurate copy of its original and exhibits are accurate copies of the exhibits provided to KFCA.

**KFCA is subject to ADA** 42 USC §12181(7)

274.  KFCA obtained 503(c)(4) non-profit status. KFCA alleged to the IRS that its activities benefit the public, the community. KFCA takes Owner's private home and mandates specific architectural and landscape changes without just compensation, to create an exterior appearance approved and required by KFCA. KFCA limits the use of its pools and buildings to residents. In its annual report to the IRS, Form 990, 7/13/21, KFCA (= "Assembly") states:

> "The general purpose of the Assembly is to maintain and preserve the lots, living units, recreational facilities and surrounding grounds for the homeowners of the King Farm community and the general public."

275. KFCA is an "establishment" which provides a "service" for the sale of private homes, enforcing RPPS, exteriors appearance, inspections, etc. KFCA is a "service establishment", a

---

[17] *Texas Dept of Housing and Comm. Affairs v. Inclusive Comm. Project,* 576 U.S. 519 (2015).

public accommodation for purposes of Title III, 42 USC §12181(7)(F).

276. "Resale inspections are conducted by KFCA staff . . .for the purpose of assessing the exterior of the home and lot to ensure compliance with community codes." "The resale certificate provides an overview of the monthly dues, . . . and any violations cited during the resale inspection (i.e., chipping paint, mildew, unkept landscaping, etc.)." "If you are cited for any violations and plan to address the violation(s), we can provide an updated resale certificate." See https://kingfarm.org/resale-of-homes/

§3-106 Disposition of Real Property.  (a) Resales. A Titleholder intending to sell a Lot or Living Unit shall notify the Assembly of his intentions to do so in order that the Assembly may provide him with a resale certificate to provide to prospective purchasers.

277. *KFCA* is involved in selling private homes, *has physical offices, where it deals with sales of properties,* inspects private homes for compliance prior to sale, *prepares and provides a* resale certificate that identifies housing violations. KFCA requires approval to sell which involves review and approval of alleged violations, which incorporates violations into the process of selling. KFCA is a sales establishment covered by 42 USC §12181(7)(E).

278. The resale certificate, inspections, demand notice for correction of alleged violations to owner or future buyer/owner are prepared by KFCA in its office. KFCA provides services, to maintain and preserve living units (e.g., homes), inspect them before sales. This means KFCA is a public accommodation covered by ADA Title III, a sales establishment covered by 42 U.S. Code §12181(7)(E) and/or a "service establishment" covered by 42 U.S. Code §12181(7)(F).

279.  KFCA must comply with ADA and 28 CFR §36.302, provide RAM to resolve the matter of columns on Owner's roof, or else Owner will spend substantial physical and mental resources (e.g., time, money, labor, pain) to comply with KFCA demands.

280. For years, Defendants discussed the application of FHA and ADA to Owner's home (maintenance of its exterior). Defendants provided their responses and refused to expand them or discuss them further. Thus, they are limited by them.

281. 28 CFR §36.302. A public accommodation shall make **reasonable modifications** in policies, practices, or procedures, when the modifications are necessary to afford goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, . . .

**Owner exhausted KFCA administrative procedures and may file complaint in Court**

282. About March 13, 2021, Owner wrote to KFCA a request "FHA Compliance regarding railings and other matters" which stated, in part (#O17):
Please state whether KFCA is still undertaking meaningful review of Owner's complaints under federal laws, or has finished. If it has finished, please state it that way. Please indicate if Owner exhausted administrative remedies or there are specific remedies that Owner needs to exhaust before filing a complaint with federal entities (e.g., HUD, DoJ) for violation of housing laws and/or ADA. If you do not respond by March 22, 2021, I take it to mean I exhausted administrative remedies and KFCA is NOT undertaking meaningful review. It means I can file appropriate complaints."

283. KFCA did not respond, agreeing or implying that Owner exhausted administrative remedies. All Defendants refused to respond appropriately to requests for RAM, requests to implement less discriminatory practices, requests for compliance with FHA, comply with KFCA governing documents. Other than KFCA, no other Defendant provided a justification for its actions, and implicitly adopted KFCA justification or its actions.

284. Owner asked if KFCA requires that Owner exhaust administrative remedies before filing complaint in federal court. The Attorney for KFCA replied "you have asked for our interpretations of the Assembly's governing documents – especially on the exhaustion of remedies questions – and we are not going to respond to those requests", email Sept 21, 2021. Thus, Owner exhausted or complied with any alleged internal KFCA procedures.

285. Defendants' RPPS of failing to provide disability-related RAM, requiring extraneous information about Owner's disabilities, and his need for modifications, and unduly delaying the provision of RAM – independently and taken together –are disability discrimination.

286. Defendants' actions herein constitute: (a) discrimination, in violation of the FHA, 42 U.S.C. §3604 and/or 24 CFR §100.50, §100.65, §100.70, §100.200 et seq, §100.400, §100.500

(practices prohibited, the events herein are directly connected to the sale of Owner's house and enforcement of sale's contract, and use of house, e.g., rules or covenants); (b) a refusal to make RAM in RPPS when such RAM may be necessary and reasonable to use and/or enjoy a dwelling, or better enjoy a dwelling, in violation of the FHA, 42 U.S.C. §3604(f); (c) interference with the rights of Owner in the exercise, or on account of their having exercised or enjoyed, rights protected by the FHA, in violation of 42 USC §3617 by actions such as filing complaints demanding Owner reinstall fake balcony, creating onerous administrative procedure that interfere or delay civil rights.

287. Defendants acted intentionally, willfully, in disregard for the rights of Owner. Defendants' actions constitute a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, or a denial of rights to disabled Owner protected by the FHA. Defendants knew what they did and their consequences.

288. Taking advantage of Owner's disability, limited time in life, KFCA responds ambiguously or inappropriately, refuses to timely explain issues and deadlines, alleges information provided by Owner is inadequate and requests more information (then complains Owner writes too much). It is a reminder of Kafka and bureaucratic delays to avoid FHA compliance. **Example**. In March, 2022, KFCA architect/ ADT rejected Owner's requests for modifications to the roof balcony. The rejections asked for more information. Owner provided more information, attended meeting personally, offered to clarify. At the meeting, ADT said everything was clear, no further clarifications were needed from Owner. Later, ADT wrote rejections because Owner did not provide adequate explanations. KFCA letter cites explanations that do not exist, KFCA provides 10 days to respond. Owner asked KFCA to clarify deadlines and issues, provide missing information. KFCA refused.

289. If discrimination has occurred or is going to occur, Court may award punitive damages, actual damages, equitable relief (e.g., restraining order, injunction), or other appropriate relief, including an order enjoining the defendant(s) from engaging in such practice or ordering such affirmative action as may be appropriate. 42 USC §3613(c).

290. Owner/Plaintiff prepared the Exhibits attached to the complaint. Exhibit #O1 is a table with Exhibit #, title, partial description. The exhibits have evidence supporting the complaint, the affidavit (#O2), the events related to the dispute and the parties. To reduce pages, only selected pages are attached for several exhibits.

**CLAIMS FOR RELIEF**

**Count I. Refused Modification, 24 CFR §100.203(a), §3604(f)(3)(A) for roof columns**

291. The averments listed above are incorporated herein. Defendants violated 24 CFR §100.203(a) and/or 42 USC §3604(f)(3)(A) for any of the reasons herein.

292. Each Defendant refused and/or continues to refuse Owner the reasonable and necessary modification to his home of removing permanently a fake balcony on his flat roof.

293.  Defendants (except Paul) refused the reasonable and necessary modification of roof design submitted by Owner in September, 2021, a design without columns, paid by owner, and refused a design with planters instead of fake balcony, to increase enjoyment of his home.

**Count II. Violations of FHA 24 CFR §100.204(a), §3604(f)(3)(B) for roof columns**

294. The averments listed above are incorporated herein. Defendants violated 24 CFR §100.204(a), and/or 42 USC §3604(f)(3)(B) and/or 28 CFR §36.302 for reasons herein.

295.  Since 2019, each Defendant refused Owner the necessary and reasonable accommodation of waiving requirement for columns, or KFCA install columns as authorized by Charter, to provide equal opportunity to increase use and/or enjoyment of his home.

296.  Defendants refused the reasonable and necessary accommodation of a change in RPPS submitted by Owner in September, 2021, to allow a roof without columns, or a design with planters instead of fake balcony, or KFCA installs a balcony or roofing desired by KFCA.

297. KFCA alleged the ADA does not apply to them, refused to respond to RAM requests, such as waiving the demand for columns or KFCA installing and maintaining them.  Owner requests that the Court determine ADA applies, order accommodations requested (e.g., KFCA accommodate rules to allow changes requested by Owner).

**Count III: Violations of the Fair Housing Act adverse impact/effect for roof columns**

298. The averments listed above are incorporated herein.

299.  Regarding permanent removal of fake balcony before 2020, or new design review application of September 2021, each Defendant refused to reduce discriminatory impact of KFCA rules by demanding owner build a fake balcony, and refused to implement less discriminatory rules, such as waiving the demand for balcony, or KFCA installs and maintains the columns, in violation of 24 CFR §100.500 (Discriminatory effect is prohibited).

**Count IV: Violations of FHA 24 CFR §100.7 for roof columns**

300. The averments listed above are incorporated herein. Defendants violates 24 CFR §100.7 by any actions herein described.

301. Regarding permanent removal of fake balcony before 2020, or new design review application of September 2021, each Defendant refused to reduce discrimination requested by Owner, and/or refused to implement less discriminatory practices, or avoid DHP about columns in Owner's roof (by failure to enforce rules that allow Owner to remove or not put columns or KFCA installs them), or refused RAM (e.g., modifications by Owner or accommodations).

**Count V: Violations of the Fair Housing Act (FHA) §3615 and/or §3617 and/or retaliation when enforcing CCOC orders or creating onerous administrative procedures**

302. The averments listed above are incorporated herein. The following actions by KFCA violate §3615 and/or §3617.

303. Instead of allowing RAM or otherwise implementing less discriminatory RPPS (e.g., allowing no fake balcony or installing it), KFCA filed complaints knowing that administrative proceedings demanded onerous physical and mental resources from Owner to make it difficult to file a complaint with USDC, use and/or enjoy his home and life.

304. KFCA demand to put columns and railings on Owner's roof threatens Owner with penalties, interferes, intimidates with Owner's civil right to file a Complaint in federal court (because it demands substantial time, labor on administrative matters, e.g., letters to HOA, etc.) before Court decides on FHA rights to not put columns.

305. If it violates §3615 and/or §3617, CCOC order is unlawful, invalid and KFCA cannot enforce it. Local governments cannot supersede or impose orders that violate federal laws. The Court may prohibit KFCA from seeking to enforce CCOC order. [18]

306. KFCA enforces CCOC order to put columns on Owner's flat roof before final decision by federal Courts. This order interferes with Owner's rights to pursue housing rights in federal Court, violates FHA §3615 because it permits KFCA DHP (e.g., to ignore Owner's disability when implementing KFCA rules or refusing to allow reasonable, necessary modifications).

307. Owner was coerced, intimidated, threatened by KFCA to submit a new application (not done voluntarily), with plans, diagrams, explanations to KFCA while trying to exercise or enjoy a right granted or protected by FHA to modify his house roof to have no columns so it is

---

[18] Court does not need to void County order. County is not a party now. Court may prohibit KFCA (a party) from enforcing County order. https://media.disabilityrightstx.org/wp-content/uploads/2021/11/10183832/Mask-Mandate-Ban-Lawsuit-Memorandum-of-Opinion-Nov-10-2021.pdf with see similar discussion about prohibitions to require facemask.

easier to maintain without water leaks.

308. KFCA interfered with and/or retaliated against Owner in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by the FHA, in violation of 42 U.S.C. §3617, by filing complaints with its BoT, or government agencies. After Owner asked KFCA to comply with FHA, and allow RAM, KFCA filed complaints which reduced Owner's physical and mental resources, and avoid complying with FHA.

**Count VI: Violations of the Fair Housing Act (FHA) for sheds, patio, trellis**

309. The averments listed above are incorporated herein. Defendants violated 24 CFR §100.203(a) and/or 42 USC §3604(f)(3)(A) and/or 24 CFR §100.7 for any reasons herein, including prohibiting modifications and threatening Owner with penalties for them.

310. Each Defendant refused Owner the reasonable and necessary modification to his home, paid by owner, of a shed, a patio of bricks, a trellis for plants, a horizontal shed for storage in his front porch, to increase enjoyment of his home.

311. Despite requests, as of 2022, KFCA refused to allow said modifications and continue to threaten Owner with penalties and administrative procedures if he modified his house.

**Count VII. KFCA rights to enforce exterior appearances are void, they vested elsewhere when KFCA was forfeited and were not revived**

312. The averments listed above are incorporated herein.

313. KFCA rights to enforce the appearances of home exteriors vested elsewhere, were lost while KFCA was forfeited, and are not revived by reviving the KFCA Corporation. Enforcing KFCA rights uses or takes Owner's property without due process, without approval, without compensation, in violation of US Constitution.

**Count VIII. Intentional discrimination by KFCA in violation of anti-discrimination laws**

314. The averments listed above are incorporated herein.

315. Defendants ignored FHA (saying it does not apply), ignored Owner's disability when evaluating or implementing Charter and actions about Owner's house, which violates affirmative duty to consider disability and implement least discriminatory actions.

**Count IX. Violations of reasonable accommodations or less discriminatory effect for house exterior demands from KFCA**

316. The averments listed above are incorporated herein. Defendants violated FHA, e.g., 24 CFR §100.203(a), and/or §100.204(a), and/or 28 CFR §36.302, and/or their duty to reduce discrimination or discriminatory effects.

317.  Since 2019, regarding KFCA demands for maintenance of exterior (e.g., when KFCA made a long list of demands, see Exhibit #O5), Trustees, President, manager, KFCA, refused to waive KFCA RPPS, and/or provide RAM, and/or KFCA do the mandated maintenance and bill Owner, if appropriate, for those demands. KFCA never withdrew its demands and continues to retain an alleged right to enforce them at any time.

318. **WHEREFORE**, Owner asks the Court to enter ORDERS:

(a)  Defendants' actions violate the FHA and/or ADA and/or its implementing regulations;

(b)  Enjoining each Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing demands that Owner put columns (fake balcony) on his roof, and refusing to permit **reasonable modifications** (**RM**) paid by Owner, **necessary** to afford the Owner full enjoyment of his house.

(c)  Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the Charter sections or codes in a manner that discriminates because of disability in violation of the FHA and/or the ADA;

(d)  Ordering each Defendant to take all affirmative steps to ensure compliance with the FHA and the ADA, including steps to prevent the recurrence of discriminatory conduct and to

eliminate/ reduce the effects of its unlawful housing practices described herein;

(e)  Ordering each Defendant to take affirmative steps to restore the Owner, as nearly as practicable, to the position he would have been in but for the discriminatory conduct;

(f)  Pay all expenses to move to a house like Owner in another location, including the price difference between the cost of the new house like Owner, and Owner's selling price for current house (about $1M), the cost of hiring a company to move each item from Owner's house to a similar location in his new house (about $200+K), modify the new house with the dozens of modifications made by owner over 20 years (e.g., floor to ceiling bookcases in many rooms, multiple storage areas, timers in bathroom fans; bidets, etc.) (more than 2,000 hours of labor); mature fruit trees; dozens of flowering plants, etc., and relocate his family if needed;

(g)  Awarding monetary and compensatory damages, pursuant to the FHA, 42 USC §3614(d)(1)(B), to the Owner, aggrieved person, in an amount that would fully compensate Owner for his injuries caused by the conduct of Defendants alleged herein; awarding monetary damages for loss of income due to lack of physical and mental resources (e.g., time, ability to concentrate, stress) to write books, submit research proposals, lost opportunities to submit request for funding from federal agencies to measure fatty acids and lipids, publish his research.

(h)  Award punitive damages to Plaintiff to punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future; assessing a civil penalty against each Defendant for each separate daily violation (see 42 USC §3614(d)(1)(C)) to vindicate the public interest. Each modification request from owner was reasonable (feasible, easy to implement, cost nothing to HOA, did not alter its purpose, did not harm anyone). It was necessary to improve full use and/or enjoyment of Owner's house because it prevented harm to Owner, saved him time and movement. Each time KFCA denied the

requests and threatened hearings and economic penalties, or KFCA used its business judgement

to decide what to approve or deny based on its subjective idea of aesthetics, and rejected

Owner's requests. Each time KFCA intentionally violated FHA, and has a policy or practice or

purpose to violate FHA, Owner requests daily penalties per violation per person;

(i)   Declare that Defendants' discriminatory policies, practices, and conduct, as alleged

herein, are in violation of the FHA; require KFCA to apply the appropriate requirements for

modifications under 203(a) and accommodations under 204(a);

(j)   Enter an injunction enjoining Defendants and their directors, officers, agents, and

employees from continuing to publish, implement, enforce, or otherwise engage in the illegal

conduct described herein and directing Defendants and their directors, officers, agents, and

employees to take all affirmative steps necessary to remedy the effects of that conduct and to

prevent additional instances of such conduct or similar conduct from occurring in the future;

(k)   Award Plaintiff its reasonable attorneys' fees and costs (42 US §3613(c)(2));

(l)   Prevent KFCA from enforcing CCOC order that Owner reinstall the columns and railings

because KFCA is an entity that ignores disability, KFCA is not authorized to harm disabled

owners, and/or because KFCA violates FHA.

(m)   Declaring that the Defendants' participating in filing a complaint with CCOC violate the

FHA and its implementing regulations (limited to Trustees involved, President KFCA, KFCA);

(n)   Such additional relief as the interests of justice may require.

Under FRCP 11, by signing below, I certify to the best of my knowledge, information, and belief

that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law

or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual

contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case. *Edward Siguel pro se*

Respectfully submitted, February 21, 2022. Edward Siguel, pro se, Plaintiff/ Owner.

501 Crooked Creek Dr., Rockville, MD 20850. Phone = 301 869 0836. Please do not leave a message because the recording does not work. Call later if there is no answer, or send email.

Email = kfhoaccoc@outlook.com (alternative kingfarmoa@hotmail.com).