**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| EDWARD SIGUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KING FARM CITIZENS | ) | |
| ASSEMBLY, INC., et al. | ) | Civil Case No. GLS 22-672 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the Court[1] are the following: (1) "Defendant Bennett Frank McCarthy Architects, Inc. and Laurence Frank's Motion to Dismiss the 1st Amended Complaint," and memorandum in support thereto ("BFMA Motion"), filed by Defendant Bennett Frank McCarthy Architects, Inc. and Laurence Frank (collectively the "BFMA Defendants"). (ECF Nos. 33, 33-1); (2) "King Farm Defendants' Motion to Dismiss the Amended Complaint," and memorandum in support thereto ("King Farm Motion"), filed by Defendants King Farm Citizens Assembly, Inc. ("Defendant KFCA"), and by Donald B. Jackson, Tracy L. Jackson, Nancy Paul, Susan Beckerman, Christopher Leschack, Richard Ricciardi, Matthew Roh, Karen Sicard, Martin P. Green, and Brandi Ruff ("King Farm Individual Defendants"). (ECF Nos. 34, 34-1)[2]; and (3) "Motion to Dismiss of Defendant Ursula Burgess, Esq.," and memorandum in support thereto ("Burgess Motion"), filed by Defendant Ursula Burgess ("Defendant Burgess"). (ECF Nos. 43, 43-1). The Court will refer to all of the aforementioned pleadings collectively as "the Motions."

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 68-70).

[2] At times, where appropriate, the Court will collectively refer to these Defendants as the King Farm Defendants.

Plaintiff Edward Siguel ("Plaintiff") has responded, and the matters have been fully briefed, *see* ECF Nos. 49, 50, 51, 63, 64, 67. Thus, no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motions are **GRANTED IN PART, DENIED IN PART.**

## I.  BACKGROUND

### A.  Procedural Background

On March 21, 2022, Plaintiff filed a Complaint. (ECF No. 1). In his Complaint, Plaintiff asserted the following causes of action: Count I, failure to allow reasonable modifications, in violation of 42 U.S.C. § 3604 *et seq*., the Fair Housing Act ("FHA"); Count II, failure to allow reasonable accommodations, in violation of the FHA and 42 U.S.C. 12101 *et seq*., the Americans with Disabilities Act ("ADA"); Count III, disparate impact, in violation of the FHA; Count IV, disparate impact in violation of the FHA; Count V, retaliation in violation of the FHA; Count VI, failure to allow for reasonable modifications, in violation of the FHA; Count VII declaratory relief related to the King Farm Defendants' ability to enforce their governing documents; Count VIII, disparate impact, in violation of the FHA; and Count IX, failure to allow for reasonable accommodations and/or modifications, in violation of the FHA and the ADA. (*Id.*, ¶¶ 291-317).

On April 8, 2022, the Defendants waived service of process. (ECF No. 10). As such, the deadline for their responsive pleadings became June 7, 2022. (*Id.*). On May 13, 2022, the BFMA Defendants filed a notice of intent to file a motion to dismiss. (ECF No. 14). On May 18, 2022, the Plaintiff filed a letter request to file a motion for summary judgment. (ECF No. 16). On May 20, 2022, Judge Paul W. Grimm issued a Letter Order granting the Plaintiff leave to file an amended complaint and the Defendants leave to file motions to dismiss. (ECF No. 15).

On October 13, 2022, the Plaintiff filed the Amended Complaint. (ECF No. 22). In the Amended Complaint, Plaintiff appears to be advancing the following claims against all Defendants, except as otherwise noted: Count I, violation of the FHA, by failing to allow reasonable modifications;[3] Count II, failure to allow reasonable accommodations, in violation of the FHA and the ADA; Count III, disparate impact, in violation of the FHA; Count IV, disparate impact, in violation of the FHA; Count V, retaliation in violation of the FHA; Count VI, failure to allow for reasonable for reasonable modifications, in violation of the FHA; Count VII declaratory relief related to the King Farm Defendants' ability to enforce their governing documents; Count VIII, intentional discrimination, in violation of the FHA; Count IX, failure to allow for reasonable accommodations and/or modifications, in violation of the FHA and the ADA; and Count X, which appears to be involve allegations of trafficking, involuntary servitude, and forced labor, in violation of 15 U.S.C. §§ 1589, 1590[4] (*Id.*, *see, e.g.,* ¶¶ 342-377). Plaintiff also added Defendant Burgess and additional factual allegations, which are described more fully below.

On November 10, 2022, Defendant Burgess filed a letter request to file a motion to dismiss, which the Court granted. (ECF Nos. 31, 38). On November 14, 2022, the BFMA Defendants filed the BFMA Motion. (ECF Nos. 33, 33-1). On the same day, the King Farm Defendants filed the King Farm Motion. (ECF Nos. 34, 34-1). On December 14, 2022, Defendant Burgess filed the Burgess Motion. (ECF Nos. 43, 43-1). Thereafter, the case was reassigned to the Hon. Deborah L. Boardman for all further proceedings. (ECF No. 44). On January 3, 2023, Plaintiff filed a motion for an extension of time to respond to the pending motions to dismiss, which Judge Boardman granted. (ECF Nos. 45, 46).

---

[3]Plaintiff is not pursuing this claim against King Farm Individual Defendants Green and Paul. (ECF No. 22, ¶ 344).
[4]The Plaintiff also refers to 15 U.S.C. § 1581, which does not exist.

On January 27, 2023, Plaintiff filed oppositions to each of the motions to dismiss. (ECF No. 49, "Opposition to Burgess Motion;" ECF No. 50, "Opposition to BFMA Motion;" ECF No. 51, "Opposition to King Farm Motion"). On February 23, 2023, Defendant Burgess filed a Reply. (ECF No. 63, "Burgess Reply"). On February 24, 2023, the King Farm Defendants filed a Reply. (ECF No. 64, "King Farm Reply). On February 27, 2023, the BFMA Defendants filed a Reply. (ECF No. 67, "BFMA Reply").

On March 10, 2023, Plaintiff filed a motion for leave to file a surreply, which the Defendants opposed. (ECF Nos. 71, 73-75).

On April 2, 2023, Plaintiff filed two separate letter requests to file motions for summary judgment. (ECF Nos. 77, 78).[5] On May 21, 2023, Plaintiff filed a motion for leave to supplement his oppositions to the Defendants' motion(s) to dismiss, which Defendant Burgess opposed. (ECF Nos. 79, 80, 83).

### B.  Factual Background[6] [7]

Plaintiff, Edward Siguel, is a disabled individual that has experienced physical disability for over forty years. (ECF No. 22, "Amended Complaint," ¶ 41). Plaintiff suffers from a variety of conditions, that cause numerous adverse symptoms such as physical pain, fatigue, muscular weakness, the accumulation of bladder blood with movement, and "mental disruptions." (*Id.*, ¶¶ 39-40). Due to these symptoms, Plaintiff is "substantially restricted" to his home.[8] (*Id.*, ¶ 42). He

---

[5] The Court will resolve the letter requests related to the motions for summary judgment by separate order.

[6] Unless otherwise noted, the facts are taken from the Amended Complaint, ECF No. 22. The facts are construed in the light most favorable to Plaintiff. *See Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023).

[7] Plaintiff's Amended Complaint is, regrettably, confusing and frequently incomprehensible. This clearly violates the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Regardless of this fact, the Court did a careful review of the Amended Complaint and exercised best efforts to discern and identify the factual allegations and causes of action that Plaintiff is attempting to advance. In this regard, the Court generously and liberally construed Plaintiff's pleadings. However, the Court did not "act as an advocate" or "fashion claims" for Plaintiff. *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. ELH-20-0423, 2021 WL 4772918, at *8 (D. Md. Oct. 13, 2021) (internal citations omitted). Indeed, it would be improper to do so and would put an impermissible "strain [on] judicial resources." *Id.*

[8] In their motions to dismiss, the parties do not dispute that Plaintiff is disabled. (*See* ECF Nos. 33-1; 34-1; 43-1).

needs access to a readily available bathroom. (*Id.*). Plaintiff often uses his home for studying, thinking, caring for his children, and walking through his garden. (*Id.*, ¶¶ 42-43).

In 2001, Plaintiff purchased his single-family-home. (*Id.*, ¶ 126). Plaintiff's home is part of the King Farm Citizens Assembly ("KFCA") community, which includes single-family homes and townhouses. (*Id.*, ¶ 22).

Defendant KFCA is a homeowners' association ("HOA") and, as is relevant here, has a President, Board of Trustees, a Board of Code Compliance, one or more managers, an Architectural Design Trust and an architect. (*Id.*). The Architectural Design Trust and architect require "design review applications" in order to "approved change to the exterior of houses." (*Id.*). As is relevant here, the following King Farm Individual Defendants served as Trustees: Donald B. Jackson, Tracy L. Jackson, Nancy Paul, Susan Beckerman, Christopher Leschack, Richard Ricciardi, and Matthew Roh. (*Id.*, ¶ 23). Mr. Jackson also served as HOA President at one point in time, as did King Farm Individual Defendant Mr. Green. (*Id.*, ¶¶ 23, 27). King Farm Individual Defendant Karen Sicard was part of the Architectural Design Trust, and Defendant Laurence Frank worked for BFMA as an architect. (*Id.*, ¶ 23). King Farm Individual Defendant Brandi Ruff was a KFCA General Manager, who "decided [Plaintiff's] structural, landscape requests, mandated maintenance, and rejected modifications." (*Id.*, ¶ 25). King Farm Individual Defendant Burgess was an attorney for Defendant KFCA. (*Id.*, ¶ 28).

The HOA requires titleholders within the HOA to uphold obligations set forth in the HOA or KFCA Charter ("the Charter"). (*Id.*, ¶ 117). Pursuant to the Charter, a homeowner generally cannot make changes to the visual appearances to the exterior of structures. (*Id.*, ¶ 114; *see also* ECF No. 33-4, the Charter, § 3-102[9]). Specifically, the Charter states the following:

---

[9] For the Court's analysis as to why it may appropriately consider the Charter when resolving the motions to dismiss, *see* Section II.C., *infra*.

> Changes in the visual appearance of the exteriors of structures and the Lots on which they are situated has been secured in writing from the King Farm Architectural Design Trust. Changes in landscape elements that involve additions, removal, or material changes in the appearance of trees, shrubs, fences, or hard surfaces and materials shall also require written approval of the King Farm Architectural Design Trust. To expedite processing of approvals for the convenience of Titleholders, the King Farm Architectural Design Trust may, in lieu of individual notices of approval in writing, issue notice of the acceptability of a kind of proposed change that does not require formal application to the King Farm Architectural Design Trust. Such notices shall be based upon the Design Standards and Guidelines.

(ECF No. 33-4, the Charter, § 3-102).

However, such changes may be made upon approval by the King Farm Architectural Design Trust, which is a HOA regulatory body that "aids the community in maintaining the visual integrity of the [c]ommunity." (ECF No. 33-4, the Charter, § 4-101). In addition, when a structure is damaged, the Charter requires that a homeowner make the repairs necessary to restore the prior appearance within ninety days. (Amended Complaint, ¶ 104; *see also* ECF No. 33-4, the Charter, § 3-104). Here, the Charter provides the following:

> In the event of damage to a Living Unit or other structure which is clearly visible from the exterior, the Titleholder of such Living Unit or other structure shall be obliged to repair or reconstruct the Living Unit or other structure in accordance with its appearance prior to such damage unless the King Farm Architectural Design Trust has agreed to the contrary. Such repair or reconstruction shall be accomplished within ninety days of the damage unless the King Farm Architectural Design Trust grants a waiver based upon a finding of hardship. Should a Titleholder not conform to the provisions of this § 3-104, the Board of Trustees is entitled to accomplish necessary repairs or reconstruction according to its best judgment, and levy an assessment upon the Titleholder for the costs involved.

(ECF No. 33-4, the Charter, § 3-104).

The home was originally built to Plaintiff's specifications and in accordance with HOA requirements. (*Id.*, ¶¶ 127-30, 135-36). The original design included an "open front porch," with columns that supported a flat roof. (*Id.*, ¶ 103). The flat roof was made of wood and a "rubber like thin soft material." (*Id.*). On the flat roof extending over the porch, there were columns that

supported "long (over 30 ft) heavy" railings. (*Id.*, ¶ 104). The columns were "nailed/screwed" into the flat roof. (*Id.*). The Plaintiff refers to this structure—the flat roof with columns and railings sitting on top—as a "fake balcony." (*Id.*, ¶ 37).

Due to weather conditions, the columns on the roof were susceptible to damage and difficult to maintain. (*Id.*, ¶ 104). Snow and ice accumulated against the columns which would result in water leaks. (*Id.*, ¶ 104). To prevent water leaks, Plaintiff would need to remove the accumulated water and snow quickly, which resulted in physical pain and organ damage. (*Id.* ¶¶ 104-05). Also, strong winds often blow toward Plaintiff's home, which results in damage to the columns on the roof. (*Id.*, ¶ 106). As a result, the water would enter the "infrastructure under the roof" and cause structural damage. (*Id.*). Because of the repeated damage, Plaintiff repaired the "fake balcony" on many occasions, at the request of the HOA. (Amended Complaint, ¶¶ 31, 225).

In or about 2019, Plaintiff removed the columns on the roof in order to repair the damaged roof. (Amended Complaint, ¶ 107). Plaintiff did not replace the columns on the roof because Plaintiff did not want to damage the roof by "put[ting] nails/screws [into the roof] to hold columns." (*Id.*, ¶ 107). HOA representatives reviewed the roof damage and authorized Plaintiff to replace the flat roof. (*Id.*, ¶ 109). However, the HOA required that Plaintiff reinstall the columns on the flat roof after the repairs were complete. (*Id.*, ¶ 109-10). In response, Plaintiff submitted requests to the HOA, seeking permission to not reinstall the columns. (Amended Complaint, ¶ 80). Plaintiff submitted various alternatives to requiring him to reinstall the columns such as: (1) preserving the flat roof without replacing the columns; (2) the HOA could reinstall the columns; (3) the HOA could provide three contractors to do the work; (4) tall plants could be grown to obstruct the flat roof; and (5) a planter could be placed on the roof. (Amended Complaint, ¶ 85-

90). The HOA denied these requests and instructed Plaintiff to repair the "fake balcony." (*Id.*, ¶¶ 91-93).

Plaintiff also made other requests to the HOA, all of which were denied. These requests include: (1) the ability to build a brick patio on top of soil in Plaintiff's backyard; (2) the construction of a shed in Plaintiff's backyard; (3) the installation of a "horizontal shed" on Plaintiff's front porch; (4) the installation of a plant trellis. (*Id.*, ¶¶ 3, 9, 79, 158, 239-40, 246).

In addition to denying all of Plaintiff's above-detailed requests, the HOA also issued violation notices, and either did impose—or threatened to impose—fines related to modifications that Plaintiff made to his home, e.g., the removal of the columns and placing horizontal shed on front porch. (Amended Complaint, ¶¶ 3, 6, 54, 261, 317, 375).

BFMA Defendant Frank, as an agent of KFCA, "made decisions on [Plaintiff's] request for changes to his property." Moreover, the Architectural Design Trust and Mr. Frank "had authority to recommend or allow [the] modifications requested by Plaintiff," which were rejected. (*Id.*, ¶ 23). Each time that Mr. Frank "made a recommendation to KFCA" none of his recommendations nor those of the Architectural Design Trust were "rejected." (*Id.*, ¶ 24).

According to the Plaintiff, Defendant Burgess "filed a complaint" on behalf of Defendant KFCA against Plaintiff with the Commission on Common Ownership Communities, "demanding that [Plaintiff] repair/replace columns and railings on the 1st floor porch." (*Id.*, ¶ 28). Ms. Burgess also "later during a hearing amended to reinstall fake balcony on 2nd floor porch roof(sic)," and Burgess "provided recommendations regarding communications between [Plaintiff] and KFCA and other Defendants." (*Id.*, ¶ 28)

Furthermore, beginning in 2019, the HOA made several demands related to the maintenance of Plaintiff's lawn, bushes, and home exterior. (Amended Complaint, ¶ 371; *see also*

Exhibit #O5).[10] The HOA asserted that Plaintiff was failing to maintain his yard in a "neat" fashion. Plaintiff contested the HOA's assertion and argued that he liked the yard the way it was and that it was "nice" to him. (Amended Complaint, ¶¶ 149, 151). The HOA continues to make the demands regarding Plaintiff's maintenance of his yard and home exterior. (Amended Complaint, ¶ 371).

## II.   LEGAL STANDARDS

### A.  Surreply

Whether a court should permit such a filing is solely within its discretion. *See* Local Rule 105.2(a) (D. Md. 2023). In general, a court will not permit a party to file a surreply unless the party otherwise would not have an opportunity to contest an issue that the non-moving party had failed to present before filing a reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014); *see also Hodge v. Giant of Maryland, LLC*, Civ. No. PWG-21-554, 2022 WL 4080317, at *3 (D. Md. Sept. 6, 2022) (surreply is highly disfavored in this District).

### B.  Motion to Dismiss-12(b)(6)

A Rule 12(b)(6) motion challenges the sufficiency of the facts set forth in a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). When resolving a 12(b)(6) motion, a court accepts as true the well-pleaded allegations in a complaint. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021). When ruling on such a motion, then, a court "does not resolve the contests surrounding the facts [or] the merits of a claim." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Rather, at this stage, a court considers the complaint as a whole

---

[10] For the Court's analysis as to why it may appropriately consider Exhibit #05 when resolving the motions to dismiss, *see* Section II.C., *infra*.

and construes the facts advanced as true, viewing them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must allege sufficient facts to establish each element of a claim asserted. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md. 2013), *aff'd sub nom., Goss v. Bank of Am., N.A.*, 546 F. App'x 165 (4th Cir. 2013). In addition, a complaint must satisfy the pleading standard set forth in Fed. R. Civ. P. 8(a) and contain facts "showing" entitlement to relief. *Twombly*, 550 U.S. at 555-56 (complaint must set forth enough facts as to suggest a "cognizable cause of action"). In other words, a complaint must do more than formulaically recite "the elements of a cause of action," or must do more than make "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, Inc., 591 F.3d 250, 258 (4th Cir. 2009). A court "must be able to draw the reasonable inference [from the well-pleaded facts] that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Relatedly, a complaint fails to plausibly allege entitlement to relief where, in contravention of Fed. R. Civ. P. 8(a), the complaint is confusing, rambling, vague, and ambiguous. *See Jianqing Wu v. TrustPoint Int'l*, Civ. No. PWG-15-1924, 2015 WL 13091378, at *1 (D. Md. Oct. 5, 2015) (citing *Wallach v. City of Pagedale*, 359 F.2d 57, 58 (8th Cir. 1966) (dismissal appropriate where allegations are "[C]onfusing, ambiguous, redundant, vague and, in some respects, unintelligible…."); *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977) (dismissing because the "[complaint is] a confused and rambling narrative of charges and conclusions concerning

numerous persons, organizations and agencies" and "contain[ed] an untidy assortment of claims that [were] neither plainly nor concisely stated…..").

### C.  Consideration of Documents Outside of Pleadings

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court generally limits its review to the allegations in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). However, a court *may* consider additional documents outside of the pleading and not convert it to a summary judgment motion, only if the documents are explicitly incorporated into a complaint by reference. *Goines*, 822 F.3d at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Alternatively, a court may exercise its discretion and "consider a document submitted. . . that was not attached to or expressly incorporated [by reference] in a complaint, so long as the document was integral to the complaint, and there is no dispute about the document's authenticity." *Goines, supra* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.* 484 F.3d 700, 705 (4th Cir. 2007)). When the court so considers the documents, it does not run afoul of Fed. R. Civ. P. 12(d). *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Accordingly, in this case, the Court will exercise its discretion and consider the Charter and Exhibit #O5, because they are integral to the Amended Complaint, i.e., documents upon which Plaintiff's claim is based. *See Goines*, 822 F.3d at 166; *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (analyzing the ability of a court to consider documents integral to a complaint).

III.   **DISCUSSION**

   **A. Surreply**

Plaintiff has filed a motion for leave to file a surreply, claiming that the Defendants raised new arguments in their Replies, which demand his response and prevent the Court from needing to conduct additional "extensive research." (ECF No. 71, p. 1). Plaintiff has also filed a motion for leave to file supplemental authority, in which he cites to a 2023 U.S. Supreme Court case that he alleges supports his claims. (ECF No. 79). The Court will exercise its discretion and treat both requests as requests to file surreply pleadings.

The Court, relying upon the rationale of *Clear Channel*, *supra*, declines to permit Plaintiff to file his surreply pleadings for several reasons. First, the Court does not find that the Defendants raised novel arguments in their respective Reply pleadings. However, to the extent that the Defendants raise arguments in their Reply pleadings that are not identical to those raised in the Motions, those arguments were raised in response to arguments made by Plaintiff in his Oppositions—e.g., the Court finds that Defendants' argument related to the lack of intent to establish an FHA retaliation claim is responsive to Plaintiff's assertion that "Defendants' nondiscriminatory reasons for such conduct are pre-textual, or invalid." (*See* Opposition to King Farm Motion, p. 22). Therefore, a surreply is not warranted. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom*. E.E.O.C. v. Freeman, 778 F.3d 463 (4th Cir. 2015) ("Where 'the arguments made by defendants in their reply brief are merely responses to new arguments made by plaintiffs in their response,' a sur-reply is not appropriate") (citing *Aguilar v. LR Coin Laudromat*, 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012)).

Second, the Court has reviewed the case law presented in ECF No. 79 and finds that it does not respond to a novel argument raised by the Defendants, nor, frankly, is it relevant to the instant dispute.

In sum, Plaintiff's requests to file surreply pleadings, ECF Nos. 71, 79, are denied.

### B.  Defendants' Arguments

#### 1.  *All Defendants: Arguments Related to Counts I-VI, VIII, and IX*

In support of their respective motions to dismiss, the Defendants argue that Plaintiff fails to state a claim under the FHA with respect to the following accommodation and/or modification requests that the Court will categorize as: (a) the "Balcony Requests;" (b) the "Yard/Storage Requests;" and (c) the "Mandated Maintenance Requests." (King Farm Motion, pp. 10-17; BFMA Motion, pp. 23-31; Burgess Motion, pp. 14-15).

Regarding the Balcony Requests, Plaintiff requests that the "fake balcony" be: (i) permanently removed (and any requirement in the Charter related to the installation of the "fake balcony" be waived); (ii) redesigned; or (iii) maintained by the King Farm Defendants. Regarding the "Yard/Storage Requests," Plaintiff requests that he be allowed to install: (i) a patio of bricks over soil; (ii) a small horizontal shed on his front porch; (iii) a trellis for plants; and (iv) a shed in the back of the house. Regarding the "Mandated Maintenance Requests," Plaintiff requests that: (i) the King Farm Defendants perform the maintenance to Plaintiff's yard that they assert Plaintiff is failing to complete; or (ii) Defendant KFCA waive the requirements related to the maintenance to Plaintiff's yard. (King Farm Motion, pp. 10-17; BFMA Motion, pp. 23-31; Burgess Motion, pp. 14-15).

For each of the aforementioned requests, Defendants contend that they are neither "reasonable" nor "necessary," as those terms are defined and understood in the FHA. Therefore, the Defendants contend that Counts I-VI, VIII, and IX must be dismissed.

2. *All Defendants: Arguments Related to Counts III, IV, V, VIII, and X*

The Defendants also advance three additional arguments in support of dismissal of Counts III, IV, V, VIII, and X.

First, that Plaintiff's discrimination claims (Counts III, IV, and VIII) must be dismissed because Plaintiff fails to establish that there was a discriminatory purpose underpinning their actions. Second, that Plaintiff's retaliation claim (Count V) must be dismissed because Plaintiff failed to allege that he engaged in "protected activity," and has failed to establish that they acted with discriminatory intent. Third, that Plaintiff's forced labor claim (Count X), must be dismissed because Plaintiff fails to allege any facts that demonstrate that Defendants abused the legal process, used force, or otherwise engaged in a scheme or plan to force Plaintiff to engage in labor. (King Farm Motion, pp. 9-18; BFMA Motion, pp. 17-20, 22-31, 32-35; Burgess Motion, p. 6-12, 14).

3. *King Farm Defendants: Arguments Related to All Counts*

The King Farm Defendants separately advance two other arguments in support of dismissal of many facets of Amended Complaint pending against them. First, Count VII must be dismissed against all of them, because KFCA is a valid corporation, and it can legally enforce its governing documents. Second, all claims in the Amended Complaint against the King Farm Individual Defendants must be dismissed because Plaintiff fails to allege anything beyond "labels and conclusions," with respect to the King Farm Individual Defendants. (King Farm Motion, pp. 6, 18-21).

4. *BFMA Defendants*

The BFMA Defendants separately advance two other arguments in support of dismissal of many counts in the Amended Complaint. First, that Plaintiff's ADA claims (Count II and Count IX) must be dismissed because the ADA does not apply to the King Farm Citizens Assembly. Second, that the BFMA Defendants' role in the King Farm community is advisory, so it does not have the authority to approve modification or accommodation requests. As a result, the BFMA Defendants contend that they cannot be held liable under any FHA counts of the Amended Complaint because they are not a "decisionmaker." (BFMA Motion, pp. 22, 33-33).

5. *Defendant Burgess*

Defendant Burgess separately contends that all claims against her must be dismissed as she solely acted in her authority as outside counsel for the King Farm Defendants and is entitled to qualified privilege. (Burgess Motion, pp. 4-6).

**C. Plaintiff's Arguments**

Plaintiff counters with several arguments. First, that the requested accommodations and modifications are reasonable and necessary to allow Plaintiff to "fully" enjoy his home. Second, that his discrimination claims are plausibly alleged because he has set forth facts showing disparate impact upon him from the Defendants' actions. Third, that he has plausibly alleged a prima facie retaliation claim by setting forth sufficient facts related to the Defendants' improper enforcement of the Charter. Fourth, that his forced labor claim is plausibly alleged, because it is undisputed that Plaintiff provided "involuntary labor." (Opposition to Burgess Motion, pp. 1-4; Opposition to King Farm Motion, pp. 2-12; Opposition to BFMA Motion, pp. 3-13).

Next, regarding the separate arguments advanced by the various Defendants, Plaintiff counters with three contentions. First, regarding the KFCA Defendant, KFCA is a "service

establishment" under the ADA, which means that the ADA applies to the instant dispute. Second, regarding the BFMA Defendants, they are agents of Defendant KFCA and, therefore, can be held liable under the FHA. Third, regarding Defendant Burgess, she is an agent of Defendant KFCA; thus, she can be held liable under the FHA. Fourth, regarding Defendant Burgess, she engaged in fraud and/or committed a malicious, tortious act. (*See* Opposition to Burgess Motion, pp. 3-4; Opposition to BFMA Motion, pp. 28-29; Opposition to King Farm Motion, pp. 30-31).

### D.  Evaluation of Certain Claims, Counts, and Defendants

Having reviewed the Amended Complaint in its entirety, and the exhibits previously mentioned, and construing the facts set forth therein in the light most favorable to Plaintiff, the Court finds that, as a matter of law, it must dismiss certain claims, counts, and Defendants and keep Defendant BFMA in this lawsuit.

### 1. Counts II, IX: ADA Claims

The ADA claims found in Counts II and IX must be dismissed, because the ADA does not apply to the instant dispute. In this case, the dispute involves a private residence and a HOA, (Amended Complaint, ¶¶ 5, 32), not a "public accommodation." *See Coots v. Tankersley*, Civ. No. JCB-20-617, 2021 WL 3617841, at *4 (E.D. Tex. June 25, 2021) (dismissing ADA claim against homeowners' association because "[p]laintiffs are renting a private residence … nothing about the home indicates that it is leased or operated as a 'place of public accommodation' [as required by the ADA] … nothing about the leased property in question is alleged to be 'community' property not solely used by the residents"); *see also Edwards v. Lakewood Cmty. Ass'n*, Civ. No. JJT-18-1934, 2018 WL 4953263, at *2 (D. Az. Oct. 12, 2018).

### 2. Count IV

Count IV must be dismissed, because the Plaintiff alleges that Defendants violated 24 C.F.R. § 100.7. (Amended Complaint, ¶ 351). This particular section of the Code of Federal Regulations does not contain a cause of action. Rather, 24 C.F.R. § 100.7 merely defines the scope of liability (direct or vicarious) that is applicable to the FHA, and is not an independent mechanism through which Plaintiff can raise a claim.

### 3. Count VII

Count VII must be dismissed, because Plaintiff fails to provide any statutory or other legal authority under which he seeks relief, s*ee* Amended Complaint, ¶¶ 364-36, and, more generally, fails to adequately plead a cause of action. *See Twombly*, 550 U.S. at 555-56.

To the extent that Plaintiff attempts to raise some type of claim under either the Fourteenth Amendment or Fifth Amendment of the U.S. Constitution, *see, e.g.,* Amended Complaint, ¶ 365 (which contains reference to "due process"), the Court finds that such argument is unpersuasive. King Farm Citizens Assembly, Inc. was revived pursuant to state law in 2000. (Amended Complaint, ¶ 21). Accordingly, "all the assets and rights of the corporation, except those sold or those of which it was otherwise divested while the charter was void, are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter." *See* MD CODE ANN., CORPS & ASS'NS § 3-512. Furthermore, Plaintiff's conclusory assertion that King Farm Citizen Assembly, Inc.'s authority to enforce its governing documents was divested lacks factual or legal support. As a result, as a matter of law, Defendant KFCA has the authority to enforce the Charter and Plaintiff's vaguely-pleaded "due process" claim is without merit. Accordingly, Count VII is dismissed.

*4.Count X*

In the Amended Complaint, Plaintiff pleads that the Defendants subjected him to forced labor when they required him to maintain aesthetic requirements and they "attempted to and did obtain the labor and time of Plaintiff through threats of continued financial hardship, substantial administrative proceedings, abuse of legal process." (Amended Complaint, ¶¶ 374-75). Ostensibly, Plaintiff is alleging that Defendants subjected him to forced labor by requiring him to maintain his home, and, relatedly when they issued fines, held administrative hearings, and filed complaints pertaining to his refusal to comply with the Charter's aesthetic requirements.

Pursuant to 15 U.S.C. §1589(a)(1)-(4), forced labor means:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person;
(3) by means of the abuse or threatened abuse of law or legal process; or
(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint

Plaintiff also cites to 15 U.S.C. §1590, which provides the following:

(a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.
(b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

Even when construing the Amended Complaint in the Plaintiff's favor, as a matter of law, Count X must be dismissed, because the Plaintiff fails to allege **any** facts that could plausibly establish a forced labor claim under 15 U.S.C. §§ 1589, 1590. *See Twombly*, 550 U.S. at 555-56.

### 5. Counts I-IV, VI-X: King Farm Individual Defendants

The Court finds that all claims against the King Farm Individual Defendants (Donald B. Jackson, Tracy L. Jackson, Susan Beckerman, Christopher Leschack, Richard Ricciardi, Matthew Roh, Karen Sicard, Brandi Ruff, Martin P. Green and Nancy Paul) must be dismissed. Here, a review of Plaintiff's sprawling Amended Complaint reflects that he fails to cogently plead specific factual allegations against them that plausibly demonstrate that Plaintiff is entitled to relief. Put another way, Plaintiff's claims against the King Farm Individual Defendants do not satisfy the pleading standard set forth in *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 (complaint must do more than make "naked assertion[s] devoid of further factual enhancement").

In addition, after carefully sifting through the Amended Complaint, the Court finds that, even when construing the articulated facts in his favor, Plaintiff fails to make specific allegations with respect to the King Farm Individual Defendants related to the sheds.[11]

### 6. Defendant Burgess: Counts I-IV, VI-X

Finally, the Court finds that all claims against Defendant Burgess must be dismissed as she is entitled to qualified privilege.

It is well recognized in this District that a "non-client third party generally cannot attack an attorney for the actions [she] takes on behalf of [her] clients" unless there is a showing of "fraud or collusion." *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *21 (D. Md. Aug. 8, 2011); *Pradhan v. Al-Sabah*, 299 F. Supp. 2d 493, 496 (D. Md.

---

[11] As held *infra* the only allegations that survive the Motions involve Plaintiff's requests related to the storage sheds and Defendant KFCA and the BFMA Defendants.

2004); *see also Havilah Real Prop. Servs., LLC v. Early*, 88 A.3d 875, 887 (Ct. Spec. App. Md. 2014).

Here, Plaintiff's allegations against Defendant Burgess are limited to actions that she took on behalf of her client. (Amended Complaint, ¶¶ 28, 245, 269, 332-334, 336-338). In addition, even when construing the facts in Plaintiff's favor, the Court does not find that the limited factual allegations plausibly allege fraud or collusion by Defendant Burgess, nor can fraud or collusion reasonably be inferred from the facts pleaded by the Plaintiff. (*See* Amended Complaint, ¶¶ 28, 245, 269, 332-334, 336-338). Accordingly, Defendant Burgess is entitled to a qualified privilege and Counts I-IV, VI-X must be dismissed.

### 7. Defendant BFMA: Counts I-IV, VI-X

Finally, the Court denies the BFMA motion to dismiss the claims against them on the basis that they merely provide "recommendations." (BFMA Motion, pp. 22, 33-33). Contrary to the BFMA Defendants' argument, an individual or entity need not be a decisionmaker with final authority to be held liable under the FHA. *See Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 141 F. Supp. 3d 1321, 1326 (S.D. Fla. 2015) (agents can be liable where they "personally committed or *contributed* to a Fair Housing Act violation") (emphasis supplied); *Connecticut Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 375 (D. Conn. 2019) (finding board members liable because although no individual board member had final decision-making authority, they "contributed" to the FHA violation).

## E. Reasonable Accommodation/Modifications: Balcony Requests, Yard/Storage Requests, Mandated Maintenance Requests (Counts I, II, VI, IX); Retaliation (Count V)

The Defendants contend that the Plaintiff's FHA claims related to the Balcony Requests, Yard/Storage Requests, and the Mandated Maintenance Requests, which are requests for

modification (Counts I, VI) and for accommodation (Counts II, IX), must be dismissed because they are neither "reasonable" nor "necessary." Specifically, the Defendants assert that Plaintiff's accommodation and modification requests: (a) impose undue financial and administrative burdens on KFCA; (b) homeowner maintenance is a burden on every homeowner for which Plaintiff is not entitled to accommodations and/or modifications; and (c) the requested accommodations/modifications are unrelated to his disability. (King Farm Motion, pp. 10-15; BFMA Motion, pp. 23-31).

The Fair Housing Act's reasonable accommodation and modification provisions are codified in 42 U.S.C. §§ 3604(f)(3)(A) and (f)(3)(B), respectively, and provide the following:

> (3) For purposes of this subsection, discrimination includes--
> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(A),(B). For "accommodation" and "modification" claims, the inquiry principally relates to whether the proposed accommodation or modification is "reasonable" and "necessary." *Bryant Woods Inn, Inc. v. Howard Cnty, Md.*, 124 F.3d 597, 604 (4th Cir. 1997); *see also Gavin v. Spring Ridge Conservancy, Inc.*, 934 F. Supp. 685, 688 (D. Md. 1995).

An accommodation or modification is "reasonable" when it is "both efficacious and proportional to the costs to implement it." *Acosta v. A&G Mgmt. Co., Inc.*, Civ. No. WMN–14–515, 2014 WL 1236918, at *2 (D. Md. 2014) (citing *Matarese v. Archstone Pentagon City*, 761 F.Supp.2d 346, 364 (E.D.Va.2011)). Analyzing this issue often involves determining whether the

accommodation or modification will cause "undue financial and administrative burdens," or substantial "changes, adjustments, or modifications to existing programs…." *Bryant*, 124 F. 3d at 604.

An accommodation or modification is "necessary" when it provides a "direct amelioration of a disability's effect." *Id.* Conversely, if "the proposed accommodation [or modification] provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Acosta*, 2014 WL 1236918, at *2 (internal citation omitted). The law is also clear that "not every practice that creates a general inconvenience or burden on the person with a handicap needs to be modified;" instead, "necessary" accommodations and modifications under the FHA are those that are needed to allow a disabled individual to "use and enjoy" his home. *See Evans v. UDR, Inc.*, 644 F.Supp.2d 675, 680 (E.D.N.C. 2009) (citing *Bryant*, 124 F.3d 603); *see also Gavin*, 934 F. Supp. at 687.

Finally, although there are statutory differences between a reasonable accommodation and a reasonable modification,[12] the instant dispute pertains solely to whether the modifications and accommodations are reasonable and/or necessary.

Determining whether an accommodation or modification is reasonable and necessary is effectively the same in both contexts. *See Gavin*, 934 F. Supp. at 687 ("Congress specifically noted the link between such modifications and/or accommodations as are required under § 3604(f)(3)(A) and (B) their necessity to a handicapped individual's full use and enjoyment of the premises"); *Norman v. Rancho del Lago Cmty. Ass'n*, Civ. No. 19-486, 2021 WL 5167305, at *5 (D. Ariz. Aug. 5, 2021), *report and recommendation adopted*, Civ. No. 19-486, 2021 WL 4272692, at *1

---

[12] For example, for a modification request a plaintiff must demonstrate that he will pay for costs incurred and an accommodation request requires that a plaintiff specifically challenges a "rule, practice, or policy." *See* 42 § 3604(f)(3)(A)-(B).

(D. Ariz. Sept. 21, 2021), *aff'd*, Civ. No. 22-15111, 2023 WL 21461, at *1 (9th Cir. Jan. 3, 2023) ("Because the necessity inquiry is essentially identical for both subsections [of the FHA], the court evaluates them together) (citing *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 540-41 (6th Cir. 2014) (finding the operative elements the same in modification claim as those for a accommodation claim); *United States v. Town of Irmo*, Civ. No. 18-3106, 2020 WL 2322714, at *4 (D.S.C. May 11, 2020) ("[T]he court need not provide a separate analysis for the reasonable modification theory when the reasonable accommodation theory elements are met").

The Court will now turn to analyzing the various accommodation and modification requests in accordance with the principles set forth above.

### 1. Balcony Requests

Defendants assert that the denial of Plaintiff's Balcony Requests do not violate the FHA because: (1) suspending the HOA's aesthetic control is not reasonable because it would constitute a "fundamental alteration" of the HOA program, specifically, the HOA's enforcement of the Charter; (2) requiring the Defendants to maintain Plaintiff's balcony would "impose undue" expenses upon them; and (3) allowing Plaintiff to "modify" his balcony (by permitting him to not reinstall the columns) is not necessary for Plaintiff to fully enjoy his home. (BFMA Motion, pp. 18-20; King Farm Motion, pp. 3-5, 12).

Plaintiff argues that: (1) the Balcony Requests are reasonable, because the costs associated with his three requested modifications/accommodations are low; and (2) the Balcony Requests are necessary modifications/accommodations, because they enable Plaintiff to have full enjoyment of his home and reduce the harm that he experiences when maintaining the "fake balcony." (Opposition to BFMA Motion, pp. 9, 16, 20; Opposition to King Farm Motion, pp. 1, 8).

Construing the facts in the light most favorable to the Plaintiff, the Court finds that the Balcony Requests, as pleaded, do not allow the Court to infer that they are "necessary" as defined by the FHA. As held above, a critical aspect of determining whether a particular accommodation/modification is necessary involves assessing whether the modification or accommodation "directly ameliorates" the effects of a disability. This inquiry requires a court to evaluate whether there is a causal nexus between the proposed accommodation/modification and alleviating the effects of a disability. Furthermore, as held in *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018), in which the Third Circuit conducted a thorough, textual analysis of the FHA, "necessity" is a high bar to clear. In *Vorchheimer*, the court held as follows:

> *"Necessary" means required, indispensable, essential.* "Necessary" is a "word[ ] of limitation." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 327 (4th Cir. 2004). As an adjective, it means "[i]ndispensable, requisite, essential, needful; that cannot be done without," or "absolutely required." 10 Oxford English Dictionary 275-76 (2d ed. 1989)).
> …
> The statute applies "when such accommodations may be necessary," but "may" does not change our analysis … In this statute, "may" signals not a low probability of necessity, but rather the conditional mood. The condition, when met, makes the accommodation necessary, as in the phrase "as the case may be." "[W]hen such accommodations may be necessary" in § 3604(f)(3)(B) is another way of saying "whenever they are necessary" or "as far as they are necessary."
>
> In short, the Act's necessity element requires that an accommodation be *essential, not just preferable.*
> …
> Here, the Act tells us what to look for: an "accommodation[ ] ... [that] may be necessary to afford [the disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The text pegs the necessity to the goal of providing the particular tenant with equal housing opportunity. "[T]he object of the statute's necessity requirement is a level playing field in housing for the disabled." *Cinnamon Hills Youth Crisis Ctr. v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012). "Think of the blind woman who obtains an exemption from a 'no pets' policy for her seeing eye dog, or the paraplegic granted special permission to live on a first floor apartment because he cannot climb the stairs." *Id*. The blind woman's need is a way to navigate to and around her apartment. The paraplegic's need is a

way to get to his apartment. Once we identify the particular tenant's need, we can gauge what is necessary to afford that tenant equal housing opportunity.

*Vorchheimer*, 903 F.3d at 105-108 (emphasis supplied).

Here, the Court finds that the accommodation/modifications that Plaintiff pleads may be "preferable," but they are not "essential" and, therefore, are not "necessary." Simply put, this is not an instance where the proposed accommodation/modifications will "directly ameliorate" the effects of disability, e.g., pain/bleeding with movement. The causal relationship between the proposed accommodation/modifications, e.g., removal of columns, is a far stretch from the examples outlined in *Vorchheimer*, wherein a person who cannot see requests a seeing eye dog or a person who has trouble moving requests an apartment location that requires less movement. The Charter's aesthetic requirement related to the columns is not directly related to the effects of Plaintiff's disability. Plaintiff is not required to *personally* maintain the columns (and Plaintiff makes no such allegations), which means that adhering to the standards in the Charter regarding the maintenance of the columns does not have a direct causal nexus to his disability.

The sections of the Charter that pertain to Plaintiff's "fake balcony" claims are Section 3-102 and 3-104, which provide the following, respectively:

§ 3-102 Visual Changes to Exteriors of Real Property
Changes in the visual appearance of the exteriors of structures and the Lots on which they are situated may not be made until approval has been secured in writing from the King Farm Architectural Design Trust. Changes in landscape elements that involve additions, removal, or material changes in the appearance of trees, shrubs, fences, or hard surfaces and materials shall also require written approval of the King Farm Architectural Design Trust. To expedite processing of approvals for the convenience of Titleholders, the King Farm Architectural Design Trust may, in lieu of individual notices of approval in writing, issue notice of the acceptability of a kind of proposed change that does not require formal application to the King Farm Architectural Design Trust. Such notices shall be based upon the Design Standards and Guidelines.
…

§ 3-104 Required Actions Upon Damage to Real Property

25

In the event of damage to a Living Unit or other structure which is clearly visible from the exterior, the Titleholder of such Living Unit or other structure shall be obliged to repair or reconstruct the Living Unit or other structure in accordance with its appearance prior to such damage unless the King Farm Architectural Design Trust has agreed to the contrary. Such repair or reconstruction shall be accomplished within ninety days of the damage unless the King Farm Architectural Design Trust grants a waiver based upon a finding of hardship. Should a Titleholder not conform to the provisions of this § 3-104, the Board of Trustees is entitled to accomplish necessary repairs or reconstruction according to its best judgment, and levy an assessment upon the Titleholder for the costs involved.

(ECF No. 33-4, the Charter, §§ 3-102, 104).

Notably absent from either provision is language in which the HOA requires Plaintiff to personally perform the labor that may arise due to damage to his property. Instead, it merely, in general terms, requires that properties be maintained in accordance with certain aesthetic requirements. Consequentially, Plaintiff, the same as any other resident in the HOA may delegate the work necessary to maintain the "fake balcony." Indeed, in Plaintiff's Amended Complaint, he specifically alleges that he attempted to hire a contractor for work related to the columns. However, he elected to not move forward with such contractor because he would not "guarantee his work." (Amended Complaint, ¶ 107). The Defendants did not bar him from hiring a contractor and his decision to not move forward with a contractor was his and his alone. However, Plaintiff's proffered reason for not moving forward with a contractor, economic concerns about contractors not guaranteeing their work, bears no relationship to his disability and does not invoke the protection of the FHA. *See Bryant*, 124 F.3d at 604 ("The FHA does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person *with respect to matters unrelated to the handicap*").

Therefore, in the absence of any direct connection between Plaintiff's disability and the requirement that his property adhere to the HOA's aesthetic requirements, the Court finds that Plaintiff's requested accommodation/modifications are not "necessary" to address Plaintiff's

disability as he does not need to perform the work himself and can simply hire a contractor. *See Vorchheimer*, 903 F.3d at 112 (dismissing claim where the plaintiff "pleaded four alternatives on offer that, on their face, satisfied those [medical] needs … because the Act guarantees her only a "reasonable accommodation" that satisfies her needs, not the particular accommodation that she wanted"). Accordingly, even when viewing the facts in the light most favorable to Plaintiff, the Court finds that the Balcony Requests are not necessary and the Motions are granted with respect to the same.[13] Therefore, Counts I and II are dismissed.

Relatedly, the Court dismisses Count V, which is an allegation of retaliation under the FHA.

The retaliation claim specifically involves Plaintiff's alleged "reasonable accommodations/modifications" related to the "fake balcony," i.e., what are collectively identified as the "Balcony Requests." Although seeking a reasonable accommodation/modification is a "protected activity" under the FHA, Plaintiff's retaliation claim must fail, because the Court has already found that the Balcony Requests are not necessary accommodations/modifications. Accordingly, there is no protected activity under the FHA, and the claims must be denied. *See Harsy v. Mid-Am. Apartment Communities, Inc*., Civ. No. 17-87, 2017 WL 2728034, at *6 (E.D. Va. June 22, 2017) ("In this case, the alleged protected activity was the request for an "accommodation" which, as discussed above, is not cognizable under the FHA. Therefore, there is no protected activity upon which to retaliate, and Count II must fail"); s*ee also Philippeaux v. Apartment Inv. & Mgmt. Co*., 598 F. App'x 640, 645 (11th Cir. 2015) ("Because [the plaintiff] fails to allege that he engaged in statutorily protected activity, he failed to state a claim for retaliation").

---

[13] Here, because the Court finds that the Balcony Requests are not "necessary," it need not make findings with respect to their "reasonableness." Per the above-cited case law, FHA accommodations/modifications must be *both* reasonable and necessary to enjoyment of the home.

Furthermore, the Court finds that Plaintiff's vague and unclear factual assertions fail to plausibly demonstrate a causal nexus between a request for a reasonable accommodation/modification and any alleged retaliatory actions. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (there must be a causal connection between the protected activity and the asserted adverse action). Relatedly, Plaintiff does not clearly plead a sequential timeline of events related to his Balcony Requests and any alleged retaliatory actions. This deficiency is particularly problematic, because the law is clear that temporal proximity—the only avenue through which, on these facts, Plaintiff could plausibly allege a causal nexus—necessarily requires some clarity when it comes to the timeline of alleged events. *See Jianqing Wu*, 2015 WL 13091378, at *1 (dismissal appropriate where complaint makes vague, confusing allegations); *Wallach*, 359 F.2d at 58 (same); *Brown*, 75 F.R.D. at 499 (D.D.C. 1977) (same); *see also cf. Lewis-Davis*, 2021 WL 4772918, at *8 (the court cannot fashion claims on *pro se* plaintiff's behalf).

Accordingly, the Motions are granted with respect to Count V.

### 2. Mandated Maintenance Requests

Next, when construing the facts in Plaintiff's favor, the Court finds that Plaintiff's Mandated Maintenance Requests are "preferable" accommodation requests, not necessary ones.

Here, Plaintiff's Mandated Maintenance Requests are  not necessary, because Plaintiff does not allege that the Charter **requires him** to personally maintain his property. In addition, Plaintiff alleges that when "[Plaintiff] uses his own contractors, the work is frequently not good enough." (*Id.*, ¶ 85). This fact, even when construed in Plaintiff's favor, does not change the Court's finding that the requested accommodation is unnecessary. In effect, Plaintiff, by asserting that he would use a contractor if the work was good enough, is claiming that he must receive an accommodation

of his personal predilection of who he deems to be a suitable contractor. As analyzed *supra*, consistent with *Bryant*, 124 F.3d at 604, Plaintiff's inability to find a contractor to his liking is not a necessary disability-based accommodation warranted under the law.[14] Thus, the Motions are granted with respect to this issue. Accordingly, Count IX is dismissed.

### 3. Yard/Storage Requests

The Defendants argue that Plaintiff's accommodation or modification requests, which are collectively referred to as the Yard/Storage Requests, must be dismissed. In particular, all Defendants aver that these accommodations/modifications are not "necessary" to Plaintiff's enjoyment and use of the premises. (King Farm Motion, p. 14; BFMA Motion, p. 28). Plaintiff maintains that the various Yard/Storage requests are necessary because they improve his safety and make it easier for him to enjoy his home. (ECF No. 50-1, pp. 32-33; ECF No. 51-1, pp. 7-9). The Court will analyze each of these Yard/Storage Requests seriatim.

### a. Brick Patio Built On Top of Soil

Construing all of the facts plead in the Amended Complaint in the Plaintiff's favor, the Court finds that the reasonable inference to be drawn therefrom is that this modification/accommodation request to install a brick patio over soil is not necessary. The Defendants are not denying Plaintiff the ability to have a brick patio. Instead, Plaintiff alleges that Defendants will not allow him to have a brick patio if he chooses to build it on top of soil rather than on top of "concrete" or "sand." (Amended Complaint, ¶ 240). In essence, then, Plaintiff's claim appears to be that the requirement that he place a brick patio on top of soil (rather than on top of concrete or sand) is necessary and somehow provides a "direct amelioration" of the effects of his disability. The Court finds this allegation unpersuasive, because the material upon which

---

[14] Here, too, because the Court finds that the Mandated Maintenance Requests are not "necessary," it need not make findings with respect to their "reasonableness." *Bryant*, 124 F. 3d at 603.

Plaintiff's patio sits bears no logical relationship to Plaintiff's disabilities or the pain/bleeding he faces when moving. In short, Plaintiff may "prefer" to have a patio that sits atop soil, but such a request bears no logical relationship to alleviating Plaintiff's disability. As such, even when viewing the facts in the light most favorable to Plaintiff, the Motions are granted with respect to this requested modification.

Accordingly, Count VI, as it pertains to the above listed modification, is dismissed.

b.  Trellis

Relatedly, even when construing the facts as pleaded in Plaintiff's favor, the Court finds that this requested accommodation to install a trellis is not necessary, as it bears no logical relationship to ameliorating the disabling effects of Plaintiff's conditions. Plaintiff argues that maintaining a trellis is "essential to use or enjoy" his house, however he fails to adequately plead how a trellis will help address the disabling effects of his condition and improve his ability to use and enjoy his home. Accordingly, the Motions are granted with respect to this requested modification. Count VI, as it pertains to the above listed modification, is dismissed.

c.  Storage Sheds

The Court finds that, regarding the storage sheds, Plaintiff does adequately plead facts to support plausible FHA claims of failure to accommodate or failure to modify committed by Defendant KFCA and the BFMA Defendants. In the Amended Complaint, Plaintiff pleads that he requested to pay for storage sheds which he needs for storing his gardening tools, which, in turn, will reduce movement associated with gathering his tools. However, Plaintiff asserts that the Defendants denied the requests without "legitimate" explanation and threatened him with "penalties and administrative procedures." (Amended Complaint, ¶¶ 250, 362-63).

As detailed, *infra*, Defendants argue that the sheds are not necessary because Plaintiff merely wants to build the sheds for his "convenience." (*See* BFMA Reply, pp. 19-22). Plaintiff counters that "the sheds are needed to reduce movement and time to get tools, seeds, mulch, etc. needed to maintain the garden." (Opposition to BFMA Motion, pp. 33-34).

As a preliminary matter, the Court finds that as a matter of law, the requests to build the two storage sheds are "reasonable" pursuant to the FHA, because they will not constitute a "fundamental alteration" to the terms in the Charter that all KFCA citizens must abide by, nor will they impose an undue expense on the Defendants. *See Bryant*, 124 F. 3d at 604. In fact, in accordance with 42 U.S.C. § 3604(f)(3)(A), Plaintiff avers that he will pay for the sheds. (Amended Complaint, ¶ 362).

Next, as it relates to the argument that Plaintiff's storage shed requests are not necessary because they are only for Plaintiff's "convenience," the Court finds such argument unavailing. In support of their argument, Defendants rely on *Gavin v. Spring Ridge Conservancy, Inc.*, 934 F. Supp. 685, 688 (D. Md. 1995). In *Gavin*, the court held that the plaintiff's request to have an oversized shed on his property, in violation of community guidelines was unnecessary. The court specifically held the following:

> What has been, and remains, missing from this case from the beginning is the lack of any factual support whatsoever for the proposition that the storage shed, as constructed, constitutes an accommodation or modification that is necessary to Mr. Gavin's full use and enjoyment of the premises. Nowhere has the plaintiff shown that a shed of a size within the guidelines would not have been sufficient to house each and every item of "excess medical supplies," plus his motorized scooter.

*Gavin*, 934 F. Supp. at 688. In essence, Defendants argue that *Gavin* stands for the proposition that "Plaintiff's subjective 'enjoyment' of his property is not a right the FHA protects." (BFMA Reply, p. 21). However, upon close review of *Gavin*, the Court finds that its holding is far more limited than the Defendants suggest. The *Gavin* court denied the plaintiff's request for an oversized shed

because he failed to provide evidence—*at the summary judgment stage*—linking the size of the shed and the ability to address his disability (emphasis supplied). *Gavin,* 934 F. Supp. at 688-90.

In the instant case, Plaintiff does adequately plead a causal, direct connection between the storage shed requests and his disability. In short, Plaintiff is alleging that he currently must store his tools for gardening in his garage and he must walk a long distance from the garage to the place where he will garden. (Amended Complaint, ¶¶ 240, 246). Plaintiff plausibly alleges that his disability causes pain and bleeding with movement and the requested storage sheds will reduce movement. (Amended Complaint, ¶¶ 246-48). Therefore, when viewing the facts in the light most favorable to Plaintiff, the connection between the requested modifications and the disability—in contrast to those related to the "fake balcony" or the brick patio over soil—is direct.

However, the Court must still resolve a fundamental question: does the FHA grant a disabled individual the ability to request accommodations/modifications related to "recreational activities?" The answer to this question is essential because, although Plaintiff does plead a direct causal connection between the installation of the storage sheds and his disability, the requested modification is essentially one that enables Plaintiff to engage in recreation, e.g., gardening. As held above, Defendants rely on *Gavin* to support their argument that the FHA provides narrow protection to individuals that does not include "subjective enjoyment," i.e., recreation and other non-essential enjoyment of the home. The Court finds that the *Gavin* court ruled on the basis of insufficient evidence. The *Gavin* court did not hold that where an accommodation/modification provides a direct ameliorative effect to a disability, such accommodation/modification is not "necessary" simply because it relates to a recreational activity such as gardening. *See Gavin*, 934 F. Supp. at 688.

The Court further finds that the Fourth Circuit has not directly addressed whether an FHA violation can be predicated on whether an individual is denied an accommodation/modification that relates primarily to recreational activity. As such, the Court looks to sister circuits in order to rule.

In *Anderson v. City of Blue Ash*, 798 F.3d 338, 360-62 (6th Cir. 2015), the Sixth Circuit considered whether plaintiff's request to keep a miniature horse in her home was reasonable and necessary. The plaintiff asserted, in pertinent part, that the miniature horse was necessary to enable her to be able to have "independent recreation and exercise" in her back yard. The defendant argued that such accommodation was not necessary because the plaintiff did not "need" the miniature horse to continue living in the home. The federal appeals court held that although plaintiff's accommodation was not "necessary" for plaintiff to continue living in the home, it was necessary for equal opportunity to enjoy a particular use of her house—independent recreation and exercise in her backyard. In particular, the court held that the accommodation, for the purpose of engaging in recreation in her back yard was necessary because the FHA "requires accommodations that are necessary for the same enjoyment of a dwelling that a non-disabled person would receive." *Id.* at 361. The right to accommodations/modifications is not limited to "those accommodations that the disabled individual cannot function without or for which no alternative is available away from the dwelling." *Id.*

The Third Circuit has also explicitly held that FHA violations can be predicated on the denial of accommodations/modifications related to a disabled individual engaging in recreation. *Vorchheimer*, 903 F.3d at 109 (finding that accommodations are not "necessary" only in the limited circumstance that such accommodations "are absolutely necessary for the disabled individual's treatment or basic ability to function"). The Eleventh Circuit has also weighed in on a

similar issue related to recreation. *See cf. Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1288–89 (11th Cir. 2014) (Puppy necessary for the plaintiff to work from home, even though the plaintiff could continue to live in the house without the puppy).

Thus, the Court finds that Plaintiff's request to have storage sheds that are closer—for the purpose of ameliorating the pain and bleeding he experiences with movement—is not precluded simply because it is related to Plaintiff's desire to engage in recreational activity. Accordingly, when viewing the facts in the light most favorable to Plaintiff, the Motions are denied with respect to this issue. Count VI, to the extent that it pertains to the above modification requests, remains.

**F. Discrimination Claims (Counts III, VIII)**

The Defendants argue that Plaintiff's discrimination claims in Count III and Count VIII must be dismissed because Plaintiff fails to properly allege the requisite "discriminatory purpose" to plausibly allege discrimination claims. (BFMA Motion, p. 31; King Farm Motion, p. 15). Plaintiff contends that "discriminatory intent or motive is not required for the claims in dispute." (Opposition to King Farm Motion, pp. 9-10).

To state a claim for discrimination pursuant to the FHA, a plaintiff may pursue theories based on disparate treatment or disparate impact. *Glenn v. Wells Fargo Bank, N.A.*, Civ. No. DKC-15-3058, 2016 WL 3570274, at *6 (D. Md. July 1, 2016); *Robinson v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., MD*, No. RDB-07-1903, 2008 WL 2484936, at *9 (D. Md. June 19, 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)).

Under a disparate treatment theory, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was treated differently from others; and (3) the defendant had a discriminatory "intent" or "motive." *Grier v. United States Dep't of Hous. & Urb. Dev.*, Civ. No. PWG 21-CV-2165, 2022 WL 16923870, at *3 (D. Md. Nov. 14, 2022); *Adams v. Cameron*, Civ.

No. CV TDC-20-3739, 2021 WL 5280978, at *4 (D. Md. Nov. 12, 2021). For a disparate impact claim, however, a plaintiff must plausibly allege that a challenged practice has a "'disproportionately adverse effect on [a protected group] and [is] otherwise unjustified by a legitimate rationale." *CASA de Maryland, Inc. v. Arbor Realty Tr., Inc*., Civ. No. DKC-21-1778, 2022 WL 4080320, at *8 (D. Md. Sept. 6, 2022).

To state an FHA claim under a disparate-impact theory of liability, the plaintiff is required to demonstrate that the challenged practices have a "'disproportionately adverse effect on [a protected group]'" *Id.* Put another way, the plaintiff must: (1) identify a particular policy or practice; and (2) plausibly allege "that a specific policy caused a significant disparate effect on a protected group." *Bailey v. PHH Mortg. Corp*., Civ. No. GJH-20-2577, 2021 WL 4478700, at *8 (D. Md. Sept. 30, 2021); *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 366 (E.D. Va. 2011).

Having reviewed Plaintiff's Amended Complaint carefully, the Court finds that Plaintiff's claims related to discrimination are extremely vague, conclusory, and fail to communicate the exact nature of the discrimination that he alleges to have suffered. (*See* Amended Complaint, ¶¶ 349-50, 368-69). The claims contained in Count III and Count VIII generally allege violations of the FHA, but Plaintiff fails to clearly articulate whether such claims are for disparate treatment or disparate impact. (Amended Complaint, ¶¶ 349-50, 368-69). It is only by reviewing his Opposition that the Court infers that Plaintiff is attempting to allege disparate impact claims in his Amended Complaint, which do not require a showing of discriminatory intent. The Court arrives at such finding based on Plaintiff's assertion that "discriminatory intent or motive is not required for the claims in dispute." (Opposition to King Farm Motion, pp. 9-10). As such, the Court will analyze Count III and Count VIII as disparate impact claims.

The Court finds that, in the Amended Complaint, Plaintiff does identify a specific policy or practice that he alleges results in a disparate, discriminatory impact, namely the Charter. However, the Court finds that Plaintiff fails to plausibly allege that the Charter "caused a significant disparate effect on a protected group." *See Bailey*, 2021 WL 4478700, at *8.

Specifically, the Court finds that for both Count III and Count VIII, the Plaintiff's allegations of disparate impact go no further than conclusory allegations about how the Charter negatively impacted *him*. Nowhere are there broader allegations about how the Charter has a disproportionate impact on a *protected group*—in this case disabled individuals. Put another way, Plaintiff fails to allege that the challenged policy, the Charter, disproportionately impacts disabled individuals as a *group*. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 425–26 (4th Cir. 2018) (analyzing disparate impact claims and detailing how such claims are linked to disparities between protected *groups*, e.g., disabled individuals, and nonprotected groups).

In fact, Plaintiff makes no allegations in the Amended Complaint regarding how the Charter generally impacts disabled individuals. Plaintiff's limited and conclusory allegations about disparate impact are insufficient even at this procedural posture, when viewing the facts in the light most favorable to Plaintiff, to plausibly allege a disparate impact claim. *Bailey v. PHH Mortg. Corp.*, No. GJH-20-2577, 2021 WL 4478700, at *8 (D. Md. Sept. 30, 2021) (dismissing disparate impact claim where plaintiff merely alleged "disparate impact on African-Americans"); *Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-3799, 2015 WL 1438196, at *4 (D. Md. Mar. 27, 2015); *see also Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 711–12 (D. Md. 2014) (dismissing FHA claim where plaintiff alleged that policy "had a significant and pervasive adverse impact on black homeowners" because it failed to show the policy caused "significant disparate impact" on that group of people).

Accordingly, even when viewing the facts in the light most favorable to Plaintiff the Court grants the Motions with respect to Count III and Count VIII.

## IV.    CONCLUSION

For the foregoing reasons, the Motion**s** are **GRANTED IN PART, DENIED IN PART**. The Motions are **GRANTED** with respect to the following, **against all Defendants**:

(1) Count I;

(2) Count II;

(3) Count III;

(4) Count IV;

(5) Count V;

(6) Count VI related to the:

       (i) the Balcony Requests;

       (ii) the Yard/Storage Requests pertaining to the brick patio over soil; and

       (iii) the trellis;

(7) Count VII;

(8) Count VIII;

(9) Count IX; and

(10) Count X

The Motions are **GRANTED** with respect to the following, **against the King Farm Individual Defendants, and Defendant Burgess**:

(1) Count VI, those requests specifically related to the modification(s) of the storage sheds on Plaintiff's front porch and in the back of Plaintiff's house.

The Motions are **DENIED** with respect to the following, **as to Defendant KFCA and the BFMA Defendants**:

    (1)  Count VI, those requests specifically related to the modification(s) of the storage sheds on Plaintiff's front porch and in the back of Plaintiff's house.

Plaintiff and the KFCA Defendant and the BFMA Defendants shall meet and confer and provide a Joint Proposed Scheduling Order to the Court as directed in the Order issued today.

A separate Order will follow.


Dated: October 12, 2023                                                   _____/s/_____

                                                        The Honorable Gina L. Simms
                                                        United States Magistrate Judge