**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

|  |  |  |
|---|---|---|
| EDWARD SIGUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Case No. GLS-22-672 |
| KING FARM CITIZENS | ) | |
| ASSEMBLY, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

On March 21, 2022, Plaintiff filed a complaint against the following Defendants: King Farm Citizens Assembly, Inc.; its current and former trustees Tracy L. Jackson, Nancy Paul, Susan Beckerman, Christopher Leschack, Richard Ricciardi, Matthew Roh, Donald B. Jackson (also president), Karen Sicard (architectural design trust member), and Brandi Ruff (KFCA general manager) ("King Farm Individual Defendants"); and Laurence Frank and Bennett Frank McCarthy Architects, Inc. ("Defendant Frank" and "Defendant BFMA," respectively or collectively "BFMA Defendants"). (ECF No. 1). Subsequently, Plaintiff was granted leave to file an amended complaint. (ECF No. 15). In the First Amended Complaint, Plaintiff added two individuals, Martin P. Green, former president of KFCA and KFCA's attorney, Ursula Burgess, Esq. (ECF No. 22).

Pending now is a "Motion Requesting Stay to Avoid Decorative Balcony and Other Matters" filed by *pro se* Plaintiff, Edward Siguel ("Plaintiff" or "Mr. Siguel"). (ECF No. 218, "Motion"). Attached to the motion are a memorandum and several exhibits. (ECF No. 218-1, "Memorandum;" ECF Nos. 218-2 through 218-13). Defendant King Farm Citizens Assembly, Inc.

("KFCA") filed an Opposition and exhibits in support thereto. (ECF Nos. 220, 220-1). Plaintiff has filed a reply. (ECF No. 221).

For the reasons set forth herein, the Court denies the motion.

## I. BACKGROUND

### A. Instant Case

The relevant procedural history in this case is set forth in Section I.A.2. As articulated later, all defendants filed motions to dismiss. For purposes of resolving Plaintiff's pending motion, recitation of the facts alleged in the First Amended Complaint is required.

### 1. *Factual Allegations - First Amended Complaint: 2019-2022*[1]

Plaintiff, Edward Siguel, is a disabled individual that has experienced physical disability for over forty years. (ECF No. 22, "Amended Complaint," ¶ 41). Plaintiff suffers from a variety of conditions, that cause numerous adverse symptoms such as physical pain, fatigue, muscular weakness, the accumulation of bladder blood with movement, and "mental disruptions." (*Id.*, ¶¶ 39-40). Due to these symptoms, Plaintiff is "substantially restricted" to his home. (*Id.*, ¶ 42). He needs access to a readily available bathroom. (*Id.*). Plaintiff often uses his home for studying, thinking, caring for his children, and walking through his garden. (*Id.*, ¶¶ 42-43).

In 2001, Plaintiff purchased his single-family-home. (*Id.*, ¶ 126). Plaintiff's home is part of the King Farm Citizens Assembly ("KFCA") community, which includes single-family homes and townhouses. (*Id.*, ¶ 22).

---

[1] Plaintiff's Amended Complaint was, regrettably, confusing and frequently incomprehensible. This clearly violates the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Regardless of this fact, the Court did its best to carefully review the Amended Complaint, and exercised best efforts to discern and identify the factual allegations and causes of action that Plaintiff was attempting to advance. In this regard, the Court generously and liberally construed Plaintiff's pleading. However, the Court did not "act as an advocate" or "fashion claims" for Plaintiff. *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. ELH-20-0423, 2021 WL 4772918, at *8 (D. Md. Oct. 13, 2021) (internal citations omitted). Indeed, it would have been improper to do so and would have put an impermissible "strain [on] judicial resources." *Id.*

Defendant KFCA is a homeowners' association ("HOA") and, as is relevant here, has a President, Board of Trustees, a Board of Code Compliance, one or more managers, an Architectural Design Trust and an architect. (*Id.*). The Architectural Design Trust and architect require "design review applications" in order to "approved change to the exterior of houses." (*Id.*). As is relevant here, the following King Farm Individual Defendants served as Trustees: Donald B. Jackson, Tracy L. Jackson, Nancy Paul, Susan Beckerman, Christopher Leschack, Richard Ricciardi, and Matthew Roh. (*Id.*, ¶ 23). Mr. Jackson also served as HOA President at one point in time, as did King Farm Individual Defendant Mr. Green. (*Id.*, ¶¶ 23, 27). King Farm Individual Defendant Karen Sicard was part of the Architectural Design Trust, and Defendant Laurence Frank worked for BFMA as an architect. (*Id.*, ¶ 23). King Farm Individual Defendant Brandi Ruff was a KFCA General Manager, who "decided [Plaintiff's] structural, landscape requests, mandated maintenance, and rejected modifications." (*Id.*, ¶ 25). King Farm Individual Defendant Burgess was an attorney for Defendant KFCA. (*Id.*, ¶ 28).

The HOA requires titleholders within the HOA to uphold obligations set forth in the HOA or KFCA Charter ("the Charter"). (*Id.*, ¶ 117). Pursuant to the Charter, a homeowner generally cannot make changes to the visual appearances to the exterior of structures. (*Id.*, ¶ 114; *see also* ECF No. 33-4, the Charter, § 3-102[2]). Specifically, the Charter states the following:

> Changes in the visual appearance of the exteriors of structures and the Lots on which they are situated may not be made until approval has been secured in writing from the King Farm Architectural Design Trust. Changes in landscape elements that involve additions, removal, or material changes in the appearance of trees, shrubs, fences, or hard surfaces and materials shall also require written approval of the King Farm Architectural Design Trust. To expedite processing of approvals for the convenience of Titleholders, the King Farm Architectural Design Trust may, in lieu of individual notices of approval in writing, issue notice of the acceptability of a

---

[2] For the Court's analysis as to why it considered the Charter when resolving the motions to dismiss, *see* ECF No. 84, p. 11.

> kind of proposed change that does not require formal application to
> the King Farm Architectural Design Trust. Such notices shall be
> based upon the Design Standards and Guidelines.

(ECF No. 33-4, the Charter, § 3-102).

However, such changes may be made upon approval by the King Farm Architectural Design Trust, which is a HOA regulatory body that "aids the community in maintaining the visual integrity of the [c]ommunity." (ECF No. 33-4, the Charter, § 4-101). In addition, when a structure is damaged, the Charter requires that a homeowner make the repairs necessary to restore the prior appearance within ninety days. (Amended Complaint, ¶ 104; *see also* ECF No. 33-4, the Charter, § 3-104). Here, the Charter provides the following:

> In the event of damage to a Living Unit or other structure which is
> clearly visible from the exterior, the Titleholder of such Living Unit
> or other structure shall be obliged to repair or reconstruct the Living
> Unit or other structure in accordance with its appearance prior to
> such damage unless the King Farm Architectural Design Trust has
> agreed to the contrary. Such repair or reconstruction shall be
> accomplished within ninety days of the damage unless the King
> Farm Architectural Design Trust grants a waiver based upon a
> finding of hardship. Should a Titleholder not conform to the
> provisions of this § 3-104, the Board of Trustees is entitled to
> accomplish necessary repairs or reconstruction according to its best
> judgment, and levy an assessment upon the Titleholder for the costs
> involved.

(ECF No. 33-4, the Charter, § 3-104).

The home was originally built to Plaintiff's specifications and in accordance with HOA requirements. (*Id.*, ¶¶ 127-30, 135-36). The original design included an "open front porch," with columns that supported a flat roof. (*Id.*, ¶ 103). The flat roof was made of wood and a "rubber like thin soft material." (*Id.*). On the flat roof extending over the porch, there were columns that supported "long (over 30 ft) heavy" railings. (*Id.*, ¶ 104). The columns were "nailed/screwed" into

the flat roof. (*Id.*). The Plaintiff refers to this structure—the flat roof with columns and railings sitting on top—as a "fake balcony." (*Id.*, ¶ 37).

Due to weather conditions, the columns on the roof were susceptible to damage and difficult to maintain. (*Id.*, ¶ 104). Snow and ice accumulated against the columns which would result in water leaks. (*Id.*, ¶ 104). To prevent water leaks, Plaintiff would need to remove the accumulated water and snow quickly, which resulted in physical pain and organ damage. (*Id.* ¶¶ 104-05). Also, strong winds often blow toward Plaintiff's home, which results in damage to the columns on the roof. (*Id.*, ¶ 106). As a result, the water would enter the "infrastructure under the roof" and cause structural damage. (*Id.*). Because of the repeated damage, Plaintiff repaired the "fake balcony" on many occasions, at the request of the HOA. (Amended Complaint, ¶¶ 31, 225).

In or about 2019, Plaintiff removed the columns on the roof in order to repair the damaged roof. (Amended Complaint, ¶ 107). Plaintiff did not replace the columns on the roof because Plaintiff did not want to damage the roof by "put[ting] nails/screws [into the roof] to hold columns." (*Id.*, ¶ 107). HOA representatives reviewed the roof damage and authorized Plaintiff to replace the flat roof. (*Id.*, ¶ 109). However, the HOA required that Plaintiff reinstall the columns on the flat roof after the repairs were complete. (*Id.*, ¶¶ 109-10). In response, Plaintiff submitted requests to the HOA, seeking permission to not reinstall the columns. (Amended Complaint, ¶ 80). Plaintiff submitted various alternatives to requiring him to reinstall the columns such as: (1) preserving the flat roof without replacing the columns; (2) the HOA could reinstall the columns; (3) the HOA could provide three contractors to do the work; (4) tall plants could be grown to obstruct the flat roof; and (5) a planter could be placed on the roof. (Amended Complaint, ¶ 85-90). The HOA denied these requests and instructed Plaintiff to repair the "fake balcony." (*Id.*, ¶¶ 91-93).

Plaintiff also made other requests to the HOA, all of which were denied. These requests include: (1) the ability to build a brick patio on top of soil in Plaintiff's backyard; (2) the construction of a shed in Plaintiff's backyard; (3) the installation of a "horizontal shed" on Plaintiff's front porch; (4) the installation of a plant trellis. (*Id.*, ¶¶ 3, 9, 79, 158, 239-40, 246).

In addition to denying all of Plaintiff's above-detailed requests, the HOA also issued violation notices, and either did impose--or threatened to impose--fines related to modifications that Plaintiff made to his home, e.g., the removal of the columns and placing horizontal shed on front porch. (Amended Complaint, ¶¶ 3, 6, 54, 261, 317, 375).

BFMA Defendant Frank, as an agent of KFCA, "made decisions on [Plaintiff's] request for changes to his property." Moreover, the Architectural Design Trust and Mr. Frank "had authority to recommend or allow [the] modifications requested by Plaintiff," which were rejected. (*Id.*, ¶ 23). Each time that Mr. Frank "made a recommendation to KFCA" none of his recommendations nor those of the Architectural Design Trust were "rejected." (*Id.*, ¶ 24).

According to the Plaintiff, Defendant Burgess "filed a complaint" on behalf of Defendant KFCA against Plaintiff with the Commission on Common Ownership Communities(CCOC), "demanding that [Plaintiff] repair/replace columns and railings on the 1st floor porch." (*Id.*, ¶ 28). In addition, "later during a hearing [Ms. Burgess] amended to reinstall fake balcony on 2nd floor porch roof(sic)," and Burgess "provided recommendations regarding communications between [Plaintiff] and KFCA and other Defendants." (*Id.*, ¶ 28)

As of the date that the First Amended Complaint was filed, the HOA continued to make the demands regarding Plaintiff's maintenance of his home exterior. (Amended Complaint, ¶ 371).

In sum, the First Amended Complaint alleges wrongdoing by the Defendants **only** between in or about 2019 until in or about October 2022, and requested accommodations related to an area

on top of his open front porch that had a flat roof extending over it, which, at one time, had columns and railings sitting on top of it. Regarding this issue, Plaintiff initially used the phrase "fake balcony" and later uses the words "balustrade/railing" when describing the issues.

### 2. *Procedural History: 2022-2025*

The extensive procedural history in this case is set forth in great detail in two prior memorandum opinions authored by the Court. (ECF Nos. 84, 119). For the purposes of resolving the pending motion, recitation of some of that history is required here.

On October 13, 2022, Plaintiff filed the First Amended Complaint. Plaintiff appeared to advance the following claims against all Defendants, except as otherwise noted: Count I, failure to allow reasonable modifications, in violation of 42 U.S.C. § 3604 *et seq*., the Fair Housing Act ("FHA")[3]; Count II, failure to allow reasonable accommodations, in violation of the FHA and 42 U.S.C. 12101 *et seq*., the Americans with Disabilities Act ("ADA"); Count III, disparate impact, in violation of the FHA; Count IV, disparate impact, in violation of the FHA; Count V, retaliation in violation of the FHA; Count VI, failure to allow for reasonable for reasonable modifications, in violation of the FHA; Count VII declaratory relief, under "42 U.S.C. § 3601 et seq., 42 U.S.C. § 3602(i), and 42 U.S.C. § 3613," related to the King Farm Defendants' ability to enforce their governing documents; Count VIII, intentional discrimination, in violation of the FHA; Count IX, failure to allow for reasonable accommodations and/or modifications, in violation of the FHA and the ADA; and Count X, which appears to be involve allegations of trafficking, involuntary servitude, and forced labor, in violation of 15 U.S.C. §§ 1589, 1590[4]. (ECF No. 22, *see, e.g.,* ¶¶ 342-377).

---

[3] Plaintiff did not pursue this claim against King Farm Individual Defendants Green and Paul. (ECF No. 22, ¶ 344).
[4] The Plaintiff also referred to 15 U.S.C. § 1581, which does not exist.

All Defendants filed motions to dismiss the First Amended Complaint, which Plaintiff opposed. (ECF Nos. 33, 34, 39, 43, 49, 50, 51, 63, 64, 67). By memorandum opinion and order dated October 12, 2023, the Court granted in part, denied in part the motions to dismiss. Dismissed from the instant action were all of the King Farm Individual Defendants and Defendant Burgess, and virtually all claims against Defendants Frank, KFCA, and BFMA. (ECF Nos. 84, 85). What remained in the action was Count VI against Defendant KFCA and the BFMA Defendants, specifically pertaining to the accommodation/modification requests related to the storage sheds on Plaintiff's front porch and in the back of Plaintiff's house. (*Id.*).

Subsequently, in or about October 2023 - December 2023, Plaintiff and Defendants Frank and BFMA moved for reconsideration of the Court's orders. (ECF Nos. 93-95, 99, 102, 109, 110, 113-117). The Court issued a memorandum opinion and order denying all motions for reconsideration on July 3, 2024. (ECF Nos. 119-122).

On July 9, 2024, Plaintiff sought leave to file a Second Amended Complaint, which Plaintiff briefed and the Defendants opposed via various filings in August 2024 - September 2024. (ECF Nos. 126, 137, 138, 140, 143, 150). In the motion, Plaintiff sought to reallege the claims regarding the balustrade that had already been dismissed. (ECF No. 126). During a hearing on September 27, 2024, the Court issued its ruling, denying Plaintiff's request to file a Second Amended Complaint. (ECF Nos. 155, 166).

Thereafter, the Court entered a Scheduling Order, which set December 16, 2024 as the deadline for the close of discovery. (ECF No. 124). The operative scheduling order was amended two more times, first in October 2024 and then in May 2025, upon request of the parties. (ECF Nos. 158, 159, 162, 168, 174, 175). The Second Amended Scheduling Order, which was the final order, made clear that discovery was to close on August 22, 2025. (ECF No. 175). Between in or

about October 2024 - August 2025, the parties engaged in discovery, and the Court resolved several discovery disputes. (ECF No. 174).

On August 6, 2025, approximately 16 days before discovery was to end, Plaintiff asked the Court to reconsider its October 12, 2023 dismissal of his claims related to the balcony's columns and railings (hereinafter referred to as "balustrade"). (ECF No. 191). In support of that request, Plaintiff cited to *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, a 2025 Fourth Circuit opinion. (*Id.*). In his request, Plaintiff contended that there had been a change in the FHA law on what constitutes a "necessary" accommodation. (*Id.*). The Court ordered responses from the Defendants, which they timely filed. (ECF Nos. 194, 198, 199).

Per the operative Scheduling Order, discovery closed in this case on August 22, 2025. (ECF No. 175).[5]

Thereafter, the Court scheduled a case management conference, which was cancelled per the request of one of the parties. (ECF Nos. 201-203). When the conference finally occurred, the Court deferred ruling on the pending reconsideration motion so that the parties could attend mediation. (ECF No. 209). Mediation is currently scheduled for March 9, 2026. (ECF No. 219).

On December 16, 2025, Plaintiff sought leave to file a motion to stay enforcement of KFCA's requirement that he re-install the railings and columns, to which  KFCA responded. (ECF Nos. 213, 214, 216). On December 23, 2025, the Court set a schedule for briefing by the parties. (ECF No. 217).

---

[5] A discovery dispute remains pending this Court's consideration, which the Court deferred ruling on until after the parties attend a mediation session on March 6, 2026. *See* ECF Nos. 197, 206.

### 3. *Procedural History 2026*

On January 8, 2026, Plaintiff timely filed "Motion Requesting Stay to Avoid Decorative Balcony and Other Matters" and a "Memorandum in Support of an Injunction to Stay/Stop KFCA Demands." (ECF Nos. 218, "Motion;" 218-1, "Memorandum").

In the Motion and Memorandum, Plaintiff advances several requests for relief. First, relying upon 42 U.S.C. § 3613, Plaintiff asks the Court to enter a "permanent or temporary injunction, temporary restraining order or other order to enforce the FHA." Second, Plaintiff cites to Fed. R. Civ. P. 65, arguing that the Court has the power to enter a temporary restraining order against CCOC "if the CCOC continues its actions, or find CCOC acts in concert with or assists KFCA to evade federal law or Court Orders." Third, Plaintiff cites to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and asks the Court to "clarify existing legal rights, duties or relationships between the parties." Fourth, relying upon 42 U.S.C. § 3615, Plaintiff asks the Court to declare that by trying to force him to reinstall the balustrade, KFCA's actions violate the FHA. (Motion, p. 2; Memorandum, pp. 3, 19-21).[6]

To support his arguments, Plaintiff relies upon *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, 144 F.4th 522 (4th Cir. 2025) ("*Gibson Island Corp.*"). According to Plaintiff, the *Gibson Island Corp.* opinion redefines what constitutes a "reasonable and necessary" accommodation under the FHA, and his request to not re-install the balustrade fits squarely under what *Gibson Island Corp.* prescribes. Thus, he contends that he has met his burden to satisfy the legal requirements necessary for issuance of a preliminary injunction. (Motion, pp. 1-23).

Defendant timely filed its Opposition. (ECF No. 220). Plaintiff filed a reply. (ECF No. 221).

---

[6] All page numbers cited to are the CM/ECF numbers at the top of the pages.

4.  *Factual Allegations Advanced in 2026 Filings*

    a.  <u>Exhibits</u>

Plaintiff attached exhibits to the Memorandum. Plaintiff's exhibits are described as follows: (1) "Exhibit PO18," which appears to be a September 2, 2025 document that he authored related to the balustrade. Plaintiff characterizes this exhibit as an "FHA Request [that] All KFCA actions must be consistent with and comply with public laws"; (2) "Exhibit PO19," which appears to be a September 17, 2025 document that he authored related to the balustrade. Plaintiff describes this document as "[stating] issues and my justifications/explanations" and describes threats and attempts at coercion by KFCA; (3) "Exhibit PO22A," dated October 30, 2024, which is Defendant KFCA's objections and responses to Plaintiff's first set of interrogatories in this case, specifically answers to Interrogatories Nos. 10-13; (4) "Exhibit PO22B," no date provided, which is Defendant KFCA's objections and responses to Plaintiff's first request for production of documents (RFPDs), specifically RFPD Nos. 6-9; (5) "Exhibit PO23A," dated April 14, 2025, which is Defendant BFMA's answers and objections to Plaintiff's "owner set of interrogatories," specifically answers to Interrogatories Nos. 1-7, 12-13; (6) "Exhibit PO23B," no date provided, which is Defendant BFMA's responses and objections to Plaintiff's RFPDs Nos. 5-6; (7) "Exhibit PO27," dated January 27, 2023, which Plaintiff calls "Affidavit Owner January 2023 KFCA elections;" (8) "Exhibit PO29," no date provided, which is Defendant Frank's answers and objections to Plaintiff's "owner set of interrogatories" in this case,  specifically answers to Interrogatories Nos. 1-2, 5-7; (9) "Exhibit PO30," no date provided, which is Defendant Frank's answers to Plaintiff's RPFD Nos. 5-8; (10) "Exh. S1," a document called "Commission on Common Ownership Communities Complaint Form," signed by Ursula K. Burgess, dated, December 11, 2020; (11) "Exh. S2," consists of two different documents: (a) a September 25, 2025 "Request for

Enforcement" form, letterhead says "Montgomery County, Maryland Department of Housing and Community Affairs (DHCA), Commission on Common Ownership Communities," signed by Ursula K. Burgess, Esq.; (b) Order from the Supreme Court of Maryland, dated September 25, 2024, in *In the Matter of Edward Siguel*, Petition No. 169, September Term, 2024 (No. 238, Sept. Term, 2022, Appellate Court of Maryland), (Cir. Ct. No. 486895V), affirming the denial by the Appellate Court of Maryland of Mr. Siguel's petition for writ of certiorari; and (12) "Exh. S3," "Uniform Civil Citation," dated December 4, 2025,  issued by DHCA to Mr. Siguel, that refers to an "attached affidavit" (no such document is attached by Plaintiff) and says that Mr. Siguel is charged with "failure to comply with Decision and Order (10B-13-J)," and instructs him that he "may pay a $500.00 fine by December 24, 2025, or elect to stand trial by sending a written request to the Office of the County Attorney."  (ECF Nos. 218-2 through 218-13).

Defendant KFCA's exhibits are described as follows: (1) a "Decision and Order" issued by the Commission on Common Ownership Communities ("CCOC") for Montgomery County, Md., Case No. 2021-042, dated July 9, 2021. (ECF No. 220-1, pp. 1-15); (2) an "Order Affirming Agency Decision," issued by Hon. Christopher C. Fogleman, Associate Judge, Circuit Court for Montgomery County, Md., on March 22, 2022, in *Edward Siguel v. King Farm Citizens Assembly, Inc.,*, Case No. 486895V, which refers to the July 9, 2021 CCOC decision and order (ECF No. 220-1, p. 16); and (3) a copy of the September 25, 2024 Order issued by the Supreme Court of Maryland in *In the Matter of Edward Siguel*, affirming the Appellate Court of Maryland's denial of Mr. Siguel's petition for writ of certiorari. (ECF No. 220-1, p. 17).

b.  Undisputed Facts

Neither side has objected to the other side's version of certain facts related to CCOC. Indeed, reviewing their filings, the parties seem to agree on some basic facts, which are essential

to the Court's ultimate decision related to the balustrade. *See, e.g.,* ECF Nos. 22, 218, 218-1, 218-11 through 218-13, 220, 220-1).

As best as the Court can understand it,[7] on December 11, 2020, Ursula Burgess, Esq., on behalf of KFCA, filed a complaint against Mr. Siguel with the CCOC. The complaint was filed because there was an area on top of his open front porch that had a flat roof extending over it, which had columns and railings sitting on top of it that Mr. Siguel removed without KFCA's authorization or approval. (ECF No. 220-1, p. 17; *see also* First Amended Complaint, ¶¶ 28, 37). In the December 11, 2020 Complaint Form, KFCA stated "we would like Mr. Siguel to apply for and subsequently replace the porch railings on his home which comply with the Assembly's requirements." (ECF No. 218-11, p. 3). Although referenced in the Complaint Form, there is no document called "Summary of Complaint" attached. (*Id.*).

There were hearings before a CCOC panel that occurred after the Complaint Form was filed and before the CCOC issued its decision on July 9, 2021. In brief, Mr. Siguel was ordered by CCOC to reinstall the columns and railings in the way in which they were originally there, having found that he needed to submit a new design application to KFCA. (ECF No. 220-1, p. 14; *see also* First Amended Complaint, ¶¶ 27-28).

Thereafter, Mr. Siguel filed a petition for judicial review of CCOC's decision and order in the Circuit Court for Montgomery County, challenging the CCOC's findings of facts and conclusions of law. (ECF No. 220-1, p. 16). The parties were allowed to brief the issues, and the

---

[7] For the orders from the Supreme Court of Maryland and the Circuit Court of Montgomery County, the Court took judicial notice of them. *See generally Hughes v. Freightliner, LLC*, No. 7:04CV00309, 2006 WL 1842997, at *1 (W.D. Va. June 29, 2006) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)("[A] court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'")); *see also* Fed. R. Evid. 201(b)(2).

court entertained oral argument. (*Id.*). In March 2022, the Honorable Christopher Fogelman issued an order affirming CCOC's decision and order. (*Id.*).

Later, Mr. Siguel appealed Judge Fogelman's decision to the Appellate Court of Maryland, which must have denied his appeal, and then Mr. Siguel filed a petition for certiorari with the Appellate Court, which was denied. (*Id.*). Subsequently, Mr. Siguel sought relief from that order in the Supreme Court of Maryland. (ECF No. 218-12). The Supreme Court of Maryland denied relief on September 25, 2024. (*Id.*).

### c. Additional Factual Allegations Advanced by Mr. Siguel

The Court infers that, by submitting exhibits, Mr. Siguel is asking the Court to construe them as containing facts relevant to resolving the pending motion.

In January 2023, KFCA held elections, seemingly for the Board. (ECF No. 218-8). Mr. Siguel communicated with "KFCA management, KFCA lawyer, and other KFCA residents," and believes that the election records inadequately reflect "how many citizens/residents were able to vote," thereby rendering invalid the KFCA election for President. (*Id.*).

Apparently, on August 25, 2025, Ms. Burgess, on behalf of KFCA, responded to Mr. Siguel's request that KFCA stay any proceedings against him related to the balustrade. KFCA denied his request. (ECF No. 218-2). On September 2, 2025, Mr. Siguel emailed Ursula Burgess, Esq. and "Brandi," "president@kingfarm.org" and "trustees@kingfarm.org" about letters that he sent to them on August 17, 2025 and August 21, 2025. (*Id.*). Those letters reportedly explained to KFCA why their actions related to the balustrade "are inconsistent with the FHA and recent 4th Cir. decision in Gibson case." (*Id.*). Also in the September 2 email, Mr. Siguel makes a series of demands of KFCA, including: that the entity preserve records and that it explain the "adverse consequences(to me), and actions KFCA may or will take, now that it does not stay its actions.

(*Id.*). In the email, Mr. Siguel also demands that "each KFCA administrator, each Trustee, and Lawyer Burgess [compensate him] with $100,000 (plus damages) if their actions violate public laws or KFCA governing documents." (*Id.*). Furthermore, he calls for the dissolution of KFCA. (*Id.*).

On September 17, 2025, Plaintiff emailed Ursula Burgess, Esq. and "president@kingfarm.org" and "trustees@kingfarm.org," stating "this letter is not legal advice, it only states issues and my justifications/explanations. I am not a licensed attorney." (ECF No. 218-3). Mr. Siguel again refers to the August 25, 2025 email from Ms. Burgess, complaining that it "does not explain, state, its justifications(sic), who voted, when, how, to deny the request for a stay." (*Id.*). He then includes other sections: "the denial of my request for a stay in alleged housing violations and actions violates the FHA;" "actions by KFCA administrators violate KFCA founding documents;" "please do not interfere with my housing civil rights;" and "the following actions appear to be coercion or intimidation or interference with my civil rights. Please explain why not, for each one." (*Id.*). He concludes with asking for the current mailing address for KFCA President Scott, and says that he "look[s] forward to your clarifying response on the above issues." (*Id.*).

Finally, the Court is unclear on the relevance of the following exhibits, all of which appear to be generated while discovery was pending in the case now before the Court: (1) Defendant KFCA's objections and responses to Plaintiff's Interrogatories Nos. 10-13; (2) Defendant KFCA's objections and responses to Plaintiff's RFPD Nos. 6-9; (3) Defendant BFMA's answers and objections to Plaintiff's Interrogatories Nos. 1-7, 12-13; (4) Defendant BFMA's responses and objections to Plaintiff's RFPDs Nos. 5-6; (5) Defendant Frank's answers and objections to

Plaintiff's Interrogatories Nos. 1-2, 5-7; (6) Defendant Frank's answers to Plaintiff's RPFD Nos. 5-8.

### B. Other Proceedings Related to the Balcony

Mr. Siguel has also sought relief from KFCA's actions related to the so-called fake balcony or balustrade in other litigation.

#### 1. Federal Court

While his motion for reconsideration related to the *Gibson Island Corp.* case was pending before the Court, on September 23, 2025, Mr. Siguel filed another lawsuit in U.S. District Court-Maryland related to the fake balcony or balustrade.[8] In that action, he sued King Farm Citizens Assembly, Inc., its current president (Paul Scott) and its "Chair of Trustees" (Susan Beckman). (ECF No. 1).[9] That other lawsuit raised similar allegations about his disabilities and alleged that KFCA and the individual defendants violated the law in several ways. (*Id.*). As is relevant for resolution of the pending motion, Mr. Siguel alleged that KFCA and the individual defendants engaged in unlawful housing practices, including violating the FHA by refusing to grant his request for a reasonable and necessary accommodation related to the balustrade. (ECF No. 1, ¶¶ 71-72, 161-165, 170, 180-208). In that new complaint, Mr. Siguel alleges for the first time in any filing in federal court in Maryland that KFCA and the named defendants engaged in additional wrongdoing related to the balustrade in or about 2024-2025. (ECF No. 1, ¶¶ 69-135, 140, 186-208).[10]

The remaining procedural history of this case is set forth in a January 21, 2026 memorandum opinion issued by the district judge in Civ. No. DLB-25-3145. (ECF No. 21).

---

[8] *See Siguel v. King Farm Citizens Assembly, Inc., et al.,* Civ. No. DLB-25-3145. (D. Md.).
[9] In this Section only, the CM/ECF numbers refer to the docket entries in Civ. No. DLB-25-3145.
[10] As set forth above in Section I.A.1., the dates alleged in the case now before this Court range from in or about 2019 to in or about October 2022.

### 2.  Administrative and State Court Litigation

As set forth above in Section I.A.4.b., KFCA filed a complaint against Mr. Siguel in front of the CCOC. In addition, Mr. Siguel appealed the CCOC's decision and order to the Circuit Court for Montgomery County, Md., then to the Appellate Court of Maryland, and finally to the Supreme Court of Maryland. (ECF Nos. 218-12; 220-1, pp. 16-17).

## II.    DISCUSSION

As a preliminary matter, the Court recognizes that Plaintiff is *pro se*, and has accorded his motion, memorandum and attachments thereto as liberal a construction as feasible, given the state of his filings.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, that does not mean that Plaintiff's filings do not have to comply with the Federal Rules of Civil Procedure or the law.

### A.  Plaintiff's Arguments

As the Court understands it, in the Motion and Memorandum, Plaintiff advances seven requests for relief.

Plaintiff first asks the Court to order KFCA to permit him, at his expense, to maintain his porch's roof without adding back the columns/railings. Plaintiff asserts that this accommodation/modification request is "authorized by the FHA," as it is necessary in order for him to "safely and fully use and enjoy" his home, "notwithstanding his disability." (Motion, p. 1). In connection with this argument, Plaintiff requests "that the claim for no balcony should be reinstated due to errors of fact and law." (*Id.*, p. 3). In support of this argument, Plaintiff relies upon the Fourth Circuit's decision in *Gibson Island Corp.* (Memorandum, pp. 7-23).

Second, and alternatively, Plaintiff asks the Court to enter an order than enjoins KFCA from "demanding or requiring that he install a balcony pending resolution of the federal claims." (*Id.*). Third, as another alternative, Plaintf asks the Court to order KFCA "and those acting in

concert, to halt enforcement of the order (which requires that he re-install the fake balcony) that [was issued by the CCOC]." while this action is pending in federal court.  (Motion, pp.1, 3)

Fourth, he asks the Court to order KFCA to "withdraw" its complaint,"[11] and to "enjoin KFCA from further participation in, or from filing, new retaliatory complaints or administrative actions based on the balcony facts." (Motion, pp. 1, 4). Fifth, that "pending resolution (sic)," Plaintiff asks the Court to order that "there be no inspections or compliance actions requiring physical movement onto the roof or balcony-related labor." (Motion, p. 4). Plaintiff does not clearly articulate whether he seeks a ruling precluding CCOC from engaging in inspections or performing "compliance actions," or whether he seeks to preclude KFCA from so behaving.

Sixth, Plaintiff asks the Court to "grant appropriate declaratory or summary relief confirming that KFCA's balcony demand violates the FHA, and that KFCA's remedy, if any, must proceed in federal court rather than through local coercion." (Motion, p. 4). Finally, Plaintiff asks the Court to "provide an opinion addressing the controlling facts and law, certify appropriate issues, and allow interlocutory appeal." (Motion, pp. 1-4).

## B.  Defendant KFCA's Arguments

In opposing Plaintiff's motion, Defendant KFCA advances five arguments. First, that Plaintiff is not likely to succeed on the merits because this Court has already dismissed the balcony claims, which "is dispositive of the 'likelihood of success factor.'"  Second, because Plaintiff has already "litigated and lost" claims related to the re-installment of the balcony in state court, the doctrine of *res judicata* prevents Plaintiff from reasserting those claims now. (Opposition, pp. 4-6). Third, Plaintiff improperly seeks relief related to CCOC, which is not a party to this action. Specifically, Plaintiff's request to bind CCOC to any ruling issued by this Court runs afoul of Fed.

---

[11] Although not explicitly stated, the Court infers that this request is for the Court to order KFCA to withdraw its complaint before CCOC.

R. Civ. P. 65(d). (Opposition, pp. 6-7). Fourth, Plaintiff cannot meet his burden of establishing irreparable harm, and granting the preliminary injunction is not in Plaintiff's interest. Finally, Plaintiff's request for declaratory relief under 42 U.S.C. § 3615 is not warranted because the statute "targets conflicting governmental enactments and does not convert neutral, privately adopted community covenants into per se violations, nor does it strike down rules that neither require nor permit discrimination as the FHA defines it." (Opposition, pp. 8-9).

### C. The Law

#### 1. *Preliminary Injunction*

As a preliminary matter, neither party has asked for a hearing. In addition, this Court finds that even though a preliminary injunction motion has been filed, no hearing is necessary given the procedural posture of this case. *See Fundamental Admin. Servs., LLC v. Anderson*, Civ. No. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015) (declining to hold hearing where "the parties' written submissions do not raise a question of fact that must be resolved before the Court may rule on Plaintiff's motion"); *see also* 11A Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2949 (3d ed. 2019) ("[P]reliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless").

Next, the Court is not entirely sure that the law allows Plaintiff to use a preliminary injunction as the vehicle to reopen claims that the Court has already adjudicated. Instead, as set forth below, the Court believes that the appropriate vehicle is a motion for reconsideration.

a.  _Winter_ Standard

The Fourth Circuit has held that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that [a] plaintiff is entitled to such relief." _Perry v. Judd_, 471 F. App'x 219, 223 (4th Cir. 2012)(citing _Winter v. Nat. Res. Def. Council, Inc._, 555 U.S. 7, 22m 129 S. Ct. 365, 172 L.Ed.2d 249(2008)). Put another way, a plaintiff does not automatically have a right to entry of a preliminary injunction. _Winter_, 555 U.S. at 24, 125 S. Ct. 365. Indeed, a trial court enjoys broad discretion is deciding whether to issue a preliminary injunction. _Id._

In order to obtain a preliminary injunction, Plaintiff Siguel must establish the following factors: (1) that [he] is likely to succeed on the merits; (2) that [he] is likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities between the parties tips in favor of Plaintiff; and (4) that entry of an injunction is in the public interest. _Frazer v. Prince George's County_, 86 F.4th 537, 543 (4th Cir. 2023)(citing _Winter_, 555 U.S. at 20). Plaintiff bears the burden of satisfying all four factors in order to obtain a preliminary injunction. _Real Truth About Obama, Inc. v FEC_, 575 F.3d 342, 347 (4th Cir. 2009), _vacated on other grounds_, 559 U.S. 1089, 130 S. Ct. 2371, 176 L.Ed.2d. 764 (2010), _reinstated in relevant part_, 607 F.3d 355 (4th Cir. 2010). Plaintiff must make a "clear showing" that he is entitled to relief. _Winter_, 555 U.S. at 22. Thus, if Mr. Siguel fails to establish any of the aforementioned factors, his preliminary injunction must be denied. _Real Truth_, 575 F.3d at 346.

b.  42 U.S.C. § 3613

Pursuant to 42 U.S.C. § 3613(a)(1)(A), a person may initiate an action in federal court or state court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice. . . to obtain appropriate relief with respect to such discriminatory housing practice." In addition, pursuant to 42 U.S.C. § 3613(c)(1): "in a civil action [initiated under

subsection (a)], if the court finds that a discriminatory housing practice has occurred. . .the court may award to the plaintiff actual and punitive damages. . .and may grant as relief, as the court deems appropriate, any permanent or temporary injunction. . . ."

The Court agrees that this statute permits Plaintiff to file a lawsuit in federal court to challenge a discriminating housing practice. Indeed, Plaintiff has cited to this statute in his First Amended Complaint. The Court also finds, however, that the statute provides that only after a factual finding is made that a discriminatory housing practice has occurred can a court enter a permanent or temporary injunction. Thus, as set forth herein, the Court proceeds with its analysis of the exhibits before it and of the *Winter* factors.

### 2.  *Declaratory Judgment Requests*

Pursuant to the Declaratory Judgment Act, where an "actual controversy within its jurisdiction" exists, "any court of the United States. . .may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A court can exercise jurisdiction in a declaratory judgment action if the following circumstances exist:

> (1) the complaint alleges and actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment;
> (2) the court possess an independent basis for jurisdiction over the parties; and
> (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004).

In the Memorandum, Plaintiff also cites to 42 U.S.C. § 3615. As is relevant here, the statute provides that "nothing in [the FHA] shall be construed as to invalidate or limit any law of a State or political subdivision of a State. . .that grants, guarantees, or protects the same rights as are granted by [the FHA]; but any law of a State. . .that purports to require or permit any action that

would be a discriminatory housing practice under [the FHA] shall to that extent be invalid." 42 U.S.C. § 3615.

In the First Amended Complaint, Plaintiff cites to 28 U.S.C. § 2201(a) and 42 U.S.C. § 3615. (Amended Complaint, ¶¶ 19, 215-220, 225, 354-355). In the Memorandum, Plaintiff first asks the Court to find that "Gibson 4th Cir. supports to reinstate the balcony and all associated claims." (Memorandum, p. 7). Plaintiff relies upon these statutes when asking the Court to declare that Defendant KFCA has violated the FHA by failing to grant his accommodation request.

As set forth herein, to resolve the pending motion, the Court must analyze *Winter.*

### D.  Rulings Related to the Pleading and Submissions

#### 1.  *Plaintiff's Pleading and Preliminary Injunction Motion*

As a preliminary matter, the Court finds that the only complaint before it is the First Amended Complaint, which only pertains to alleged KFCA conduct that occurred between 2019 - October 2022. Put another way, there is no pleading before the Court that sets forth KFCA's alleged misconduct related to the balustrade that occurred in or about 2023 - 2025. Relatedly, to the extent that Plaintiff asks the Court order CCOC to act or not act, there is no pleading before the Court that names CCOC as a party. Instead, Plaintiff, relying upon his assertions in the Motion, appears to be asking the Court to proceed as if it had an amended complaint in which CCOC is a named party and the allegations pertaining to KFCA were clearly pleaded. Because that is not true, the Court cannot so proceed. If Plaintiff seeks to amend his First Amended Complaint by the words that he uses in the preliminary injunction motion, this is improper. In general, a party may not amend his complaint thru its briefing. *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th

Cir. 2017). Thus, the Court finds that to extent that Plaintiff believes that his arguments can take the place of a properly-pleaded complaint, the Court declines to so find.[12]

Next, when filing the Motion and Memorandum, Plaintiff does not attach an affidavit or a declaration of facts that relates to KFCA's conduct that allegedly occurred in or about 2023 - 2025. Instead, Plaintiff repeatedly makes allegations in the Memorandum as if they are facts that support his requested relief. Factual assertions by Plaintiff in the Motion are not evidence. Plaintiff is entitled to a preliminary injunction if he can put forth evidence that he is likely to succeed on the merits of a claim that is actually set forth in a pleading. *Winter* requires a "clear showing," which means that evidence must be submitted. Such evidence usually consists of affidavits, verified complaints or declarations, to support the "extraordinary and drastic remedy." *Winter*, 555 U.S. at 22.

Moreover, in the absence of facts and the legal framework (claims asserted against CCOC in a complaint), the Court does not necessarily have the power to grant the relief that Plaintiff seeks related to CCOC's actions.  Relatedly, it is certainly true that Fed. R. Civ. P. 65(d)(2)(C) provides that a court can enter an order that binds not only the parties but "other persons who are in active concert or participation with [parties]." However, reviewing Plaintiff's submission, Plaintiff has failed to put forth evidence that CCOC is acting in concert with (in effect, colluding with) KFCA, which is required to establish the showing required under the statute. Thus, the Court declines to ask CCOC "to halt enforcement of the order (which requires [Plaintiff to] re-install the fake balcony)," or to cease engaging "in compliance actions." (Motion, p. 4).

---

[12] It is worth noting that after the Court denied Plaintiff leave to file a Second Amended Complaint, and before discovery closed on August 22, 2025, Plaintiff did not seek leave to file a Fed. R. Civ. P. 15(d) motion to supplement the First Amended Complaint to contain additional facts related to KFCA, nor did he seek leave to amend, pursuant to Fed. R. Civ. P. 15(a)(2) and 16(b)(4), to add CCOC as a party.

In light of the above, the Court could have exercised its discretion and denied Plaintiff's requests outright. Instead, the Court focused on whether Plaintiff, even with his deficient pleading and submission, ultimately meets his burden under *Winter*.

### 2. Defendant KFCA's Submission

In the Opposition, Defendant KFCA contends that Plaintiff cannot "reasser[t] these balcony claims that already have been dismissed in a prior lawsuit" because: (a) the factual and legal issues related to the same "were decided fully and finally in the Association's favor;" and (b) Plaintiff's claims raise issues that he could have brought in the litigation before CCOC and in the state court. (Opposition, p. 5).

*Res judicata* is a doctrine that "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in the action." *Reid v. New Century Mortg. Corp.*, Civ No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012)(quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2019))(citation and internal quotation marks omitted).

A defendant can succeed in its assertion if it establishes: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties and their privies, and (3) a subsequent suit based on the same cause of action." *Ohio Valley Envtl. Coal*, *supra*, 556 F.3d at 210 (quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990)).

In connection with its Opposition, Defendant KFCA has put the following exhibits before the Court: (1) a "Decision and Order" issued by the Commission on Common Ownership Communities (CCOC) for Montgomery County, Md., Case No. 2021-042, dated July 9, 2021. (ECF No. 220-1, pp. 1-15); (2) an "Order Affirming Agency Decision," issued by Hon.

Christopher C. Fogleman, Associate Judge, Circuit Court for Montgomery County, Md., on March 22, 2022, in *Edward Siguel v. King Farm Citizens Assembly, Inc.,*, Case No. 486895V, which refers to the July 9, 2021 CCOC decision and order (ECF No. 220-1, p. 16); and (3) a copy of the September 25, 2024 Order issued by the Supreme Court of Maryland in *In the Matter of Edward Siguel*, affirming the Appellate Court of Maryland's denial of Mr. Siguel's petition for writ of certiorari. (ECF No. 220-1, p. 17).

The Court can clearly take judicial notice of the second and third exhibits, as they establish the fact of prior litigation and related filings. *See Hughes, supra*, 2006 WL 1842997, at *1 (citing *Kramer*, 937 F.2d at 774). However, those exhibits do not provide any facts about the issues before the Circuit Court, the Appellate Court of Maryland, and the Supreme Court of Maryland.  Thus, the Court is unable to find that there has been a judgment on the merits in a prior suit resolving all claims that Plaintiff has raised in the instant action.

Regarding the first exhibit, while the existence of it and the fact that there were hearings before the CCOC that Mr. Siguel attended do not appear to be in dispute, on the record before me, it is unclear whether there are disputed issues of fact about what transpired before the CCOC panel.[13] When evaluating the defense of *res judicata*, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defendant raises no disputed issues of fact." *Kalos v. Centennial Sur. Assocs.,* Civ. No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012)(quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)(citation and quotation marks omitted)).

---

[13] Had Defendant KFCA put more evidence in front of the Court, perhaps its ruling would have been different.

Thus, on this record, the Court declines to find that *res judicata* operates to preclude Plaintiff from reasserts claims related to the balustrade that have already been dismissed by the Circuit Court.

### 3. Connection between Preliminary Injunction Factors and Gibson Island Corp.

There is one more predicate step taken by the Court before it engaged in the *Winter* analysis. As the Court sees it, by filing the Motion and Memorandum, Plaintiff is, in effect, seeking a reconsideration of the Court's earlier decision dismissing the balcony-related claims from this case. The Court so finds because Plaintiff relies so heavily upon *Gibson Island Corp.*, believing that it establishes new precedent and supports his belief that the Court erred in dismissing his claims related to the so-called fake balcony. Accordingly, the Court also construes the Motion and Memorandum as a motion for reconsideration based on a change in applicable law.[14]

Evaluating *Gibson Island Corp.* appears to be interconnected to the Court's ability engage in a success-on-the-merits analysis in deciding whether to issue a preliminary injunction. Thus, in the next section, the Court sets forth its understanding of *Gibson Island Corp.* and the FHA law.

As the Court ultimately determines that its decision dismissing the balustrade-related claims was not erroneous, it ceases its *Winter* analysis after that point.

---

[14] Consistent with Fed. R. Civ. P. 54(b), the Court's prior order resolving the Defendants' motions to dismiss is considered an interlocutory order. Rule 54(b) also governs a motion asking the Court to reconsider its interlocutory order granting in part, denying in part Defendants' motions to dismiss. *Deitemyer v. Ryback*, Civ. No. ELH-18-2002, 2019 WL 4393073, at *1 (D. Md. Sept. 12, 2019). The Court understands the law to be that a court can revise an interlocutory order "in the same circumstances in which [a court] may depart from the law of the case, [namely]: (1) a subsequent trial proceeding producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson. v. Bos. Sci. Corp*, 856 F.3d 320, 325 (4th Cir. 2017) (internal quotation marks and alteration omitted). Thus, as is relevant here, reconsideration may be proper when "the law has been changed by a body with greater authority on the issue [presented, such as] a court higher in hierarchy of a single court system, a state court developing law that controls [a] decision by a federal court, an administrative agency that is peculiarly responsible for elaborating a statutory scheme, or the same court sitting en banc." Charles Allen Wright & Arthur Miller, *Federal Practice and Procedure § 4478* (3d ed. June 2024 update)(footnotes omitted).

### E. FHA LAW AND *GIBSON ISLAND CORP. DECISION*

#### 1. *The FHA and Reasonable Accommodations*

In its memorandum opinion issued in October 2023, the Court analyzed the Fair Housing Act's reasonable accommodation provisions. (ECF No. 84, pp. 21-27). That analysis, upon with the Court continues to rely, is set forth immediately below.

In addition, in light of the Motion, the Court has found it necessary to add some additional language regarding the definition of "necessary" from *Bryant Woods Inn, Inc. v. Howard Cnty, Md.*, 124 F.3d 597, 604 (4th Cir. 1997).

The Fair Housing Act's reasonable accommodation and modification provisions are codified in 42 U.S.C. §§ 3604(f)(3)(A) and (f)(3)(B), respectively, and provide the following:

> (3) For purposes of this subsection, discrimination includes--
> (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.
> (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

42 U.S.C. § 3604(f)(3)(A),(B). For "accommodation" and "modification" claims, the inquiry principally relates to whether the proposed accommodation or modification is "reasonable" and "necessary." *Bryant Woods Inn, Inc. v. Howard Cnty, Md.*, 124 F.3d 597, 604 (4th Cir. 1997); *see also Gavin v. Spring Ridge Conservancy, Inc.*, 934 F. Supp. 685, 688 (D. Md. 1995).

An accommodation or modification is "reasonable" when it is "both efficacious and proportional to the costs to implement it." *Acosta v. A&G Mgmt. Co., Inc.*, Civ. No. WMN-14-

515, 2014 WL 1236918, at *2 (D. Md. 2014) (citing *Matarese v. Archstone Pentagon City*, 761 F.

Supp. 2d 346, 364 (E.D.Va. 2011)). Analyzing this issue often involves determining whether the

accommodation or modification will cause "undue financial and administrative burdens," or

substantial "changes, adjustments, or modifications to existing programs…." *Bryant Woods*, 124

F. 3d at 604.

> Moreover, in *Bryant Woods*, the Fourth Circuit opined that:

>> In enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to [ a county's] local zoning code.  And the FHA does not provide a 'blanket waiver of all facially neutral zoning policies and rules, regardless of the facts'. . .which would give the disabled 'carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary. . . .' Seeking to recognize local authorities' ability to regulate land use and without unnecessarily undermining the benign purposes of such neutral regulations, Congress required only that local governments make 'reasonable accommodation' to afford persons with handicaps 'equal opportunity to use and enjoy' housing in those communities.

>> The FHA requires an accommodation for person with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing.

*Bryant Woods*, 124 F.3d at 603(internal citations omitted). Thus, the Court does not read *Bryant*

*Woods* to interpret the FHA to provide a blanket waiver of all facially neutral policies and rules,

regardless of the facts.

> In defining the "necessary" element, the *Bryant Woods* court held:

>> [T]he FHA provision mandating reasonable accommodations which are *necessary* to afford equal opportunity. . .requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's affect, it cannot be said to be necessary.

*Bryant Woods*, 124 F.3d at 604 (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)).

Per *Bryant Woods*, then, an accommodation or modification is "necessary" when it provides a "direct amelioration of a disability's effect." *Id.* Conversely, if "the proposed accommodation [or modification] provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Acosta*, 2014 WL 1236918, at *2 (internal citation omitted).

The law is also clear that "not every practice that creates a general inconvenience or burden on the person with a handicap needs to be modified;" instead, "necessary" accommodations and modifications under the FHA are those that are needed to allow a disabled individual to "use and enjoy" his home. *See Evans v. UDR, Inc.*, 644 F. Supp. 2d 675, 680 (E.D.N.C. 2009) (citing *Bryant Woods*, 124 F.3d 603); *see also Gavin*, 934 F. Supp. at 687.

The Court will now turn to its interpretation of *Gibson Island Corp.*

### 2. *Gibson Island Corp.*

On July 15, 2025, the Fourth Circuit issued its opinion in *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*

#### a. Background

The case involves a dispute between a man named Craig Lussi, a homeowner on Gibson Island, Md., and an entity called Gibson Island Corporation, which is a homeowner's association and governing body for Gibson Island. Beginning in or about 2016, the plaintiff made it known to Gibson Island Corp. that he intended to build an assisted living group home for elderly people with disabilities. The Gibson Island Corp. opposed the project, communicating the same to Mr. Lussi. In 2019, Mr. Lussi tried to purchase property from Gibson Island Corp. to build the facility, but it rejected his offer; Gibson Island Corp. claimed that it could not accept his bid because he had previously threatened to sue it for violating federal and state laws designed to prevent housing discrimination against the disabled. Then, in 2020, Mr. Luisi purchased a home on Gibson Island,

planning to renovate it to be used as an assisted living facility. Gibson Island Corp. vigorously opposed the project. 144 F.4th at 528-30.

Their disagreements first eventuated in a complaint being filed in federal court by Gibson Island Group against Mr. Lussi and his company Group Home on Gibson Island, in which it sought a declaratory judgment that Mr. Lussi could not renovate the home without its approval because the proposed facility violated Gibson Island's business-purpose covenant against commercial use properties. The district court granted declaratory relief to Gibson Island Corp. finding that Lussi and his company had to formally request an exemption to the covenant's provisions before moving forward with renovations. Thereafter, Group Home on Gibson Island, LLC and another company ("plaintiffs") sued Gibson Island Corp. in federal court, alleging that it had violated the FHA's and Maryland's fair housing laws. Specifically, plaintiffs accused Gibson Island Corp. of discriminating against the prospective residents of the assisted living residence because they were disabled, and of retaliating against the plaintiffs, when it denied their request to exempt the facility from the business-purpose covenant so that the group home could open on Gibson Island. Discovery ensued, during which evidence was developed about other conditions that Gibson Island Corp. required the plaintiffs to comply with before the entity would agree to approve of the assisted living facility. 144 F.4th at 530. At the close of discovery, the parties filed cross motions for summary judgment. *Id.*

### b.  The Fourth Circuit's Opinion

As a procedural matter, the case was before the Fourth Circuit on an appeal of the district court's grant of summary judgment in favor of Gibson Island Corporation. The Fourth Circuit's review of the district court's decision was *de novo*, where it evaluated anew the facts and inferences in favor of the party that did not move for summary judgment. Understandably, then, the Fourth

Circuit began its opinion with an extensive recitation of the factual history in the case. 144 F.4th at 528-31. The Fourth Circuit found there had been years of discovery that "produced an extensive record dating back years, with the parties hotly disputing material facts and the inferences to be drawn from them." 144 F.4th at 528. The Fourth Circuit opined that "if a reasonable jury could return a verdict for the non-movant, then a genuine factual dispute exists, and summary judgment is improper." 144 F.4th at 531.

The Fourth Circuit continued its analysis of the plaintiffs' failure to accommodate claims, opining that the burden was on the plaintiffs to establish that their proposed accommodation was "reasonable" and "necessary" to afford the prospective assisted living home residents an equal opportunity to have housing on the Island. 144 F.4th at 532. The Fourth Circuit, citing to *Bryant Woods*, then held that "[a]n accommodation is 'necessary' if there is a 'direct linkage' between the proposed accommodation and the provision of equal opportunities." *Gibson Island Corp*, 144 F.4th at 532 (quoting *Bryant Woods*, 124 F.3d at 604). In the very next sentence of the opinion, the Fourth Circuit opines about what makes an accommodation reasonable. 144 F.4th at 532-33. This Court does not read the opinion to reflect that, when defining "necessary," the Fourth Circuit squarely struck down or overruled that part of the *Bryant Woods* opinion that contains very next phrase: "This [necessity] requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's affect, it cannot be said to be necessary." 144 F.4th at 533.

Next, the Fourth Circuit reviewed the district court's rationale underpinning its decision granting summary judgment in favor of Group Island Corp. on the plaintiffs' reasonable accommodation claims. In performing appellate review, the Fourth Circuit highlighted how the district court had reasoned that the evidentiary record established that removal of the disputed

conditions in order to approve of the assisted living facility "was not 'necessary' to allow for use of the proposed group home by future residents with disabilities." The Fourth Circuit held that the district court had so ruled because "Lussi could not show the required 'direct linkage' between his proposed group home and the provision of an equal housing opportunity for people with disabilities." *Id.* By way of example, the district court held that were plaintiffs to comply with one of the conditions sought by Gibson Island Corp it would not "compromise the enjoyment of [the] property by a disabled resident, making removal of the condition 'unnecessary' as a matter of law." *Id.*

The Fourth Circuit held that the district court erred by "asking the wrong question," and that what mattered is "whether a proposed accommodation is necessary to provide equal housing opportunities," not whether removing Gibson Island Corp.'s proposed conditions were "necessary." *Id.* Next, the Fourth Circuit framed the question as "whether the accommodation actually requested by Lussi-an exception to the business-purpose covenant for his proposed group home was 'necessary' to provide prospective residents an equal opportunity to use and enjoy their housing of choice." *Id.* When so doing the Fourth Circuit again cites to *Bryant Woods*: "analyzing whether requested accommodation to expand group home was 'necessary' in light of other opportunities for disabled persons to live in the same area." *Id.*

Finally, having "ask[ed] the right question," the Fourth Circuit then analyzed the evidence in the record, finding that "on the sprawling record before us, there are two sides to this story, not one, making summary judgment inappropriate." 144 F.4th at 539.

In sum, *Gibson Island Corp.* is a case in different procedural posture than this case; the error occurred there because the district court ultimately evaluated the facts and resolved the disputes of material fact itself, rather than letting them go before a jury. Next, this Court does not

believe that the Fourth Circuit squarely addressed the amelioration issue in *Gibson Island Corp.*

Thus, the Court disagrees with Plaintiff's interpretation that the *Gibson Island Corp.* decision

changed the applicable law on the causation requirement that proposed accommodation must

provide a direct amelioration of a disability's effect.  Instead, the Court finds that the amelioration/

causation requirement in *Bryant Woods* remains good law.

### 3.    Analysis of the Instant Case

Having so concluded that the *Gibson Island Corp.* decision does not change the law, and

having now reconsidered its earlier ruling in light of *Gibson Island Corp.*, the Court again finds

that Plaintiff's claims in the First Amended Complaint related to the balustrade, as pleaded, do not

allow the Court to infer that they are "necessary" as defined by the FHA. (ECF No. 84, pp. 24-27).

If the question is whether the accommodation that Plaintiff requests--not to have to re-install the

balustrade--is "necessary" to provide him with an equal opportunity to use the house of his choice,

then, *Bryant Woods* still requires the Court to consider whether the proposed accommodation

provides "direct amelioration of" the effects of his disability. The focus is not on the arguments

made by Plaintiff in the Motion or the Memorandum, which are not evidence nor the appropriate

way to amend the First Amended Complaint (i.e., they are not procedurally ripe). Instead, the

Court, when reconsidering its earlier ruling, must focus on what Plaintiff pleaded in the First

Amended Complaint. *See, e.g.,* ECF No. 22, ¶¶ 85-89. While Plaintiff may not like KFCA's

Charter and regulations, "not every practice that creates a general inconvenience or burden on the

person with a handicap needs to be modified;" instead, "necessary" accommodations and

modifications under the FHA are those that are needed to allow a disabled individual to "use and

enjoy" his home. *See Evans*, 644 F. Supp. 2d at 680; *see also Gavin*, 934 F. Supp. at 687.

Consequently, Plaintiff cannot establish that he is likely to succeed on the merits--the first prerequisite to establishing the need for the extraordinary remedy of a preliminary injunction.

 None of the exhibits that Plaintiff puts in front of the Court constitute sufficient evidence to demonstrate a likely violation of the civil rights of Plaintiff, who could live in and enjoy his home if it were not for KFCA's Charter and other documents. None of the documents clearly relate to how Plaintiff's proposed accommodation provides direct amelioration of the affects of his disability; they do not help him to establish that his accommodation is necessary. When evaluating the exhibits that Plaintiff attached to the Memorandum, the Court finds several of them to be irrelevant. *See* ECF Nos. 218-4 through 218-10. In addition, two of the exhibits are not declarations or affidavits, but documents authored by Plaintiff (which contain hearsay and appear to contain excerpts from other documents), and frequently contain his characterization of FHA law. *See* ECF Nos. 218-2, 218-3. Moreover, as held above, the remaining three documents, at best, only help to establish facts that are undisputed; namely, that Defendant KFCA sought and obtained a ruling from CCOC requiring him to reinstall the balustrade, which he appealed in state court and failed to prevail. *See* ECF Nos. 218-11 through 218-13. Thus, none of Plaintiff's exhibits aid him in meeting his burden of putting sufficient evidence before the Court such that it can find that he has satisfied the likelihood of success element required by *Winter*, entitling him to the relief that he seeks.

 Because Plaintiff has failed to establish the first *Winter* factor, the Court is required to deny Plaintiff's motion for preliminary injunction. *Real Truth*, 575 F.3d at 346.[15]

---

[15] In the Motion, Plaintiff asks the Court to issue its opinion "addressing the controlling facts and law," and to "certify appropriate issues, and allow interlocutory appeal." (Motion, p. 4). It is unclear to the Court whether Plaintiff is actually saying that, if this Court denies the preliminary injunction motion, he will file an appeal with the Fourth Circuit. It is equally possible that Plaintiff could be a asking the Court to certify under 28 U.S.C. § 1292(b), that the Court believes that, when issuing this order, there is "a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the termination

### III.  CONCLUSION

For the foregoing reasons, the motion to stay/motion for preliminary injunction is

**DENIED.**

A separate Order will follow.

Dated: February 26, 2026                              _____/s/_____
                                                     The Honorable Gina L. Simms
                                                     United States Magistrate Judge

---

of litigation." *See also* Does v. Musk, Civ. No. TDC-25-462, 2026 WL 242062, at *2 (D. Md. Jan. 29, 2026).  The
Court declines to interpret Plaintiff's bareboned request as sufficiently making a request under the statute or the law.